IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

Case No. _____

JORGE ALEJANDRO RODRIGUEZ MORENO;

IVAN R. FREITES C.;

MIGUEL ENRIQUE OTERO CASTILLO;

ANGEL MORENO;

PEDRO O. MORA; and

JESUS A. M. CARRILLO,

*Plaintiffs,*

*v.*

**CITGO PETROLEUM CORPORATION,** a Delaware corporation;

PDV HOLDING, INC., a Delaware corporation;

WORLDWIDE STRATEGIC CONSULTANTS LLC, a Delaware limited liability company;

JUNTA ADMINISTRADORA AD HOC DE PETRÓLEOS DE VENEZUELA (d/b/a PDVSA AD HOC), pleaded in the alternative as (i) a non-sovereign U.S.-recognized corporate-governance body, (ii) an agency or instrumentality of a foreign state under 28 U.S.C. § 1603(b), or (iii) the alter ego of PDVSA under *Bancec / Crystallex II* (see ¶ 51A);

PETRÓLEOS DE VENEZUELA, S.A. (d/b/a PDVSA), an agency or instrumentality of a foreign state under 28 U.S.C. § 1603(b) (see ¶ 52);

SAMUEL WILHELM, an individual;

JULIAN CARDENAS GARCIA, an individual;

FERNANDO VERA, an individual;

CARLOS JORDA, an individual;

CARLOS E. SARDI, an individual;

HORACIO MEDINA, an individual *(Counts I, II, IX, X, XI, and XIV only)*;

JOSE VICENTE CARRASQUERO, an individual *(Counts I, II, IX, X, XI, and XIV only)*; and

ORLANDO VIERA-BLANCO, an individual *(Counts X, XI, and XII only)*,

*Defendants.*

**RELATED** to *Freites et al. v. CITGO Holding, Inc.*, No. 1:23-cv-00989-JLH (D. Del.) (Hall, J.) — *contingent designation; see ¶ 18*

**JURY TRIAL DEMANDED**

**VERIFIED COMPLAINT**

*(Civil RICO, 18 U.S.C. §§ 1962(c)–(d); Civil Rights Conspiracies, 42 U.S.C. §§ 1985(2)–(3), 1986; Torture Victim Protection Act, 28 U.S.C. § 1350 note; Federal Court-Access Interference (Christopher v. Harbury); Delaware Tortious Interference with Prospective Business Relations (primary and aiding-and-abetting); Venezuelan Daños Morales, Código Civil Artículos 1185 and 1196 (primary state-law theory per Fed. R. Civ. P. 44.1))*

Plaintiffs, proceeding *pro se* pending admission of D. Del. counsel of record, for their Verified Complaint against the above-named Defendants, state and allege as follows:

## I. PRELIMINARY STATEMENT

**0-NP. Notice-Pleading Initiating Form; Reservation of Right to Amend as of Course.** This Verified Complaint is filed as a Rule 8(a) notice-pleading initiating form for the sole purpose of commencing this civil action at minimum reproduction and delivery burden. It contains a short and plain statement of the grounds for the Court's jurisdiction (Part II), a short and plain statement of each claim showing that Plaintiffs are entitled to relief (Part V, Counts I through

XIV, each stating the statutory or common-law basis, the Defendants against whom it is asserted, the operative-fact predicate incorporated by reference, the injury, and the relief sought), and a demand for the relief sought (Part VI), as Fed. R. Civ. P. 8(a) requires. The full preclusion-, comity-, and abstention-isolation architecture (Part I), the jurisdiction and venue allegations (Part II), the party allegations (Part III), the Prayer for Relief (Part VI), the Jury Demand (Part VII), and the Verification (Part VIII) are pleaded in full. To minimize reproduction and delivery burden at the initiation stage only, Plaintiffs have stated the Factual Allegations in summary common-fact form (Part IV) and have stated each Count in short-and-plain notice form (Part V) rather than in the element-by-element long form, and have omitted the severance-map appendix. Plaintiffs expressly reserve, and intend to exercise, their right to amend this Verified Complaint once as a matter of course under Fed. R. Civ. P. 15(a)(1) — whether under Rule 15(a)(1)(A) (within 21 days after serving the pleading) or under Rule 15(a)(1)(B) (within 21 days after service of a responsive pleading or of a motion under Rule 12(b), (e), or (f)), as the earlier-applicable subdivision shall provide — to restore the full element-by-element pleading of each Count, the full Factual Allegations, and the severance-map appendix, and to make such further amendments as Rule 15(a)(1) permits. The exhibits referenced herein are incorporated by reference and are filed, or will be filed, in accordance with the Court's procedures. Nothing in this notice-pleading posture limits the legal sufficiency of any Count; each Count gives the Defendants fair notice of the claim and the grounds upon which it rests, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and is asserted subject to the contemplated amendment of course.

**0. Coordinated Prosecution Disclosure**

0A. **Coordinated Prosecution Disclosure.** Plaintiffs are concurrently prosecuting two parallel

civil actions arising from a common factual predicate — the CITGO/PDVSA Sanctions-Evasion and Witness-Suppression Enterprise — in two fora with materially different jurisdictional foundations, legal-authority bases, and operative-fact subsets. The two actions are deliberately and transparently architected to (i) invoke the distinct legal authorities available in each forum; (ii) reach the full range of Defendants whose conduct gives rise to liability, each in the forum where jurisdiction is properly predicated; (iii) preserve Plaintiffs' litigation and enforcement options without double recovery; and (iv) avoid the claim-splitting exposure addressed at *Restatement (Second) of Judgments* § 24 through per-count, per-defendant, per-operative-fact differentiation. *Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S. 322 (1955). This disclosure is made in the interests of candor and to demonstrate Plaintiffs' commitment to disciplined parallel prosecution. *The companion state-court action — styled* Rodriguez M., Freites C., and Otero C. v. Medina et al., *Case No. 2026-CA-004418-O — was filed on April 24, 2026, with the Plaintiffs' First Amended Verified Complaint filed April 27–28, 2026 pursuant to Fla. R. Civ. P. 1.190(a) (as-of-right amendment prior to service of any responsive pleading), in the Circuit Court of the Ninth Judicial Circuit in and for Orange County, Florida, Business Court Division (the "Florida Orange Action"). The Florida Orange Action pleads twelve counts under Florida law against thirty-one Defendants (including three narrow-conditions limited-scope Defendants, one corporate defendant also appearing in this action — CITGO Petroleum Corporation — and Jane/John Does), as more fully detailed at ¶ 16A below.* The defendant-set differentiation, legal-theory differentiation, and operative-fact differentiation are detailed at ¶¶ 16A and 16B below.

### A. Nature of the Action

Rodriguez Moreno et al. v. CITGO Petroleum Corporation et al. — Verified Complaint (Rule 8(a) Notice-Pleading Initiating Version)

1. This action arises from an ongoing, post-May 16, 2025 transnational campaign of federal court-access interference, civil racketeering, witness intimidation, sanctions evasion, and international-human-rights violations directed by the Defendants against Plaintiffs — seven Venezuelan-national labor claimants, dissident journalists, and federal-litigation witnesses — whose testimony and litigation activity threatens the control, governance, and disposition of the United States-located assets of Petróleos de Venezuela, S.A. The Defendants operate through an association-in-fact enterprise — **the CITGO/PDVSA Sanctions-Evasion and Witness-Suppression Enterprise** (the "Enterprise") — whose common purpose is (i) the preservation of Enterprise control over the Delaware-incorporated PDVSA United States corporate chain against legitimate Venezuelan-law labor-rights claimants, including Plaintiffs; (ii) the diversion of blocked Venezuelan sovereign funds through United States-based financial conduits for unauthorized political, litigation-defense, and media-amplification purposes in violation of Executive Order 13884 and the Office of Foreign Assets Control's ("OFAC") implementing regulations at 31 C.F.R. Part 591; and (iii) the neutralization, through witness intimidation, defamation, retaliation, physical-security threat, and federal-forum-access frustration, of individuals whose testimony or litigation activity threatens that control, including Plaintiffs.

1A. **OFAC General License Calendar Acknowledgment.** Plaintiffs file this action with awareness of the operative OFAC general-license framework applicable to Venezuela-related transactions as of the filing date, including but not limited to: (i) General License 5V (March 19, 2026) authorizing certain transactions related to the Petróleos de Venezuela, S.A. 2020 8.5 Percent Bond on or after May 5, 2026; (ii) General License 52 (March 18, 2026) authorizing previously prohibited PDVSA-related transactions under EO 13884; (iii) General Licenses 46B,

47, 48A, 49A, 50A, 51A, 56, and 57 (issued or amended between January 2026 and April 2026) authorizing broad categories of Venezuelan oil, gas, banking, and commercial activity; and (iv) the Foreign Government Deposit Funds framework established by EO 14373 (January 9, 2026). Plaintiffs' action seeks neither to interfere with, alter, accelerate, nor disrupt any OFAC-licensed transaction or any FGDF holding. Plaintiffs' Verified Complaint is targeted exclusively at (a) predicate acts committed during the EO 13884 / 31 C.F.R. Part 591 prohibition period (May 16, 2025–continuing); (b) personal-benefit disbursements not authorized by any general license; (c) witness-suppression conduct that no general license authorizes or could authorize; and (d) traceable assets that are distinct from FGDF (per Prayer ¶ 215.C(iv)). The post-filing-date regulatory developments described herein do not retrospectively legalize the predicate acts, do not abate Plaintiffs' accrued causes of action, and do not affect the Court's jurisdiction over this action.

2. Plaintiffs seek compensatory damages, treble damages, punitive damages, disgorgement, attorney's fees, and declaratory and injunctive relief under: (a) Civil RICO, 18 U.S.C. §§ 1962(c) and (d); (b) the federal witness-intimidation and civil-rights-conspiracy statutes, 42 U.S.C. §§ 1985(2), 1985(3), and 1986; (c) the Torture Victim Protection Act, 28 U.S.C. § 1350 note; (d) the federal court-access conduit theory recognized in *Christopher v. Harbury*, 536 U.S. 403 (2002), pleaded both as a standalone Count IX and, in the alternative, as a remedial framework within Count I under 18 U.S.C. § 1964(a); (e) Delaware common-law tortious interference with prospective business relations; and (f) Venezuelan *daños morales* under Código Civil Artículos 1185 and 1196 as pled pursuant to Fed. R. Civ. P. 44.1.

Rodriguez Moreno et al. v. CITGO Petroleum Corporation et al. — Verified Complaint (Rule 8(a) Notice-Pleading Initiating Version)

### B. The Private-Takeover Framing

3. The conduct challenged in this Complaint is not, and has never been, the conduct of the Bolivarian Republic of Venezuela acting in its sovereign capacity. The individual Defendants have effectively **taken over** Venezuelan state assets held through the CITGO/PDVSA Delaware corporate pyramid and the Fundación Simón Bolívar de CITGO for personal and private non-governmental activities. The paradigmatic example is the approximately $75,000 disbursement from the Fundación Simón Bolívar de CITGO allegedly used for the wedding party of the daughter of Orlando Viera-Blanco (the recipient is identified herein; per ¶¶ 12, 12A, and 61, Viera-Blanco is a narrow-conditions Defendant in this action on Counts X, XI, and XII only), admitted by Defendant Medina in an audio recording publicly disclosed in March 2026. This private-takeover pattern extends across the Vision Americas International LLC ("VAI") closed-loop disbursement architecture, the October 31, 2025 Medina hotel-reimbursement circular payment, and the payment structures that financed the witness-suppression campaigns targeting Plaintiffs.

4. The private-takeover framing is doctrinally foundational. Under *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 614 (1992), the "nature" of the challenged conduct — not its stated "purpose" — controls the commercial-activity analysis under the Foreign Sovereign Immunities Act, 28 U.S.C. § 1605(a)(2). Private-capacity disbursements of state funds for personal benefit (wedding expenses; hotel reimbursements; third-party consulting engagements lacking arm's-length commercial foundation) are conduct in which private parties routinely engage. This framing supports the RICO money-laundering predicates under 18 U.S.C. § 1956(c)(7)(B) (foreign predicate offenses — including Venezuelan Anti-Corruption Law violations) and preserves color-of-law foundations for TVPA and § 1985 claims. Plaintiffs acknowledge that the

TVPA color-of-foreign-law decisions in the Eleventh, D.C., and Second Circuits have most often involved actual military or government officers acting through formal state hierarchies. Plaintiffs plead a doctrinal extension of that color-of-foreign-law principle to officers and directors of the Delaware corporate chain controlled by the Junta Ad Hoc de PDVSA, on the theory that (i) the Junta Ad Hoc is itself a sovereign-appointed organ of the Bolivarian Republic of Venezuela (appointed and ratified by the Asamblea Nacional under Venezuelan constitutional process), and (ii) its derivative control of PDVSA, PDV Holding, and CITGO Petroleum makes the officer-director apparatus of those corporations a *de facto* extension of the sovereign-appointed board's institutional authority for the limited purposes of TVPA color-of-law analysis. The TVPA's textual standard — "actual or apparent authority, or color of law, of any foreign nation," 28 U.S.C. § 1350 note § 2(a) — does not require formal employment by the foreign state; it requires only that the actor exercise authority that flows from the foreign state's institutional apparatus. *See Filártiga v. Peña-Irala*, 630 F.2d 876, 880 (2d Cir. 1980) (foundational Alien Tort Statute decision recognizing that torture under color of official authority violates customary international law; Congress drew on *Filártiga*'s framework when enacting the TVPA in 1992 to codify a federal cause of action for torture and extrajudicial killing under foreign-state authority. Plaintiffs invoke *Filártiga*'s broader institutional-authority principle while acknowledging that *Filártiga* itself involved a paradigmatic state-actor defendant (a national police inspector general) and that Plaintiffs' present extension to corporate officer-Defendants holding authority through a sovereign-appointed parent board represents a doctrinal extension rather than a direct factual application); *cf. Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1265–66 (11th Cir. 2009), *abrogated on other grounds by Mohamad v. Palestinian Authority*, 566 U.S. 449 (2012) (corporate-defendant suability under TVPA) (affirming dismissal of TVPA claims against

corporate defendants where plaintiffs alleged only that paramilitary co-conspirators acted with the "tolerance" of the Colombian government; Plaintiffs distinguish the present case on the ground that the Junta Ad Hoc's authority is **directly conferred** by the Asamblea Nacional under Venezuelan constitutional process — i.e., positive sovereign appointment rather than mere "tolerance" — and the corporate-officer-Defendants' authority derives in unbroken chain from that sovereign appointment); *Doe v. Drummond Co.*, 782 F.3d 576, 607–08 (11th Cir. 2015), *cert. denied*, 577 U.S. 1139 (2016) (recognizing that TVPA indirect-liability theories include agency, conspiracy, and aiding-and-abetting; affirming summary judgment for corporate officer-defendants on TVPA claims where allegations of paramilitary collaboration with the Colombian government were insufficient to satisfy the color-of-foreign-law element; Plaintiffs distinguish the present case on the ground that the corporate-officer-Defendants' authority derives directly from the Junta Ad Hoc's sovereign-appointed governance authority over Venezuelan-state petroleum assets — a direct delegation of state-derived authority, distinct from *Drummond*'s allegations of contractual security arrangements with a paramilitary group merely tolerated by the Colombian state). Plaintiffs further plead that — to the extent any individual Defendant's color-of-foreign-law nexus is determined by the Court to be too attenuated to satisfy the TVPA standard as applied to that specific Defendant — Plaintiffs reserve the right to proceed under 42 U.S.C. § 1985(2) and § 1985(3), Delaware tortious-interference and aiding-and-abetting law, and Venezuelan Código Civil daños morales as alternative legal theories not requiring color-of-foreign-law as an element.

### C. Independence from the Florida Federal Action and the Florida Orange County Action

5. This action is a separate and freestanding civil proceeding. It is not the continuation, reopening, re-pleading, or successor of *Freites C. et al. v. Medina et al.*, No. 1:25-cv-20465-BB

(S.D. Fla.) (the "Florida Federal Action"), which was dismissed by order of the Honorable Beth Bloom on May 16, 2025, and which is currently pending on appeal before the United States Court of Appeals for the Eleventh Circuit as *Freites C. v. Medina*, No. 25-12067-E. It is also not duplicative of any related state-court action that Plaintiffs may file in the Circuit Court of the Ninth Judicial Circuit in and for Orange County, Florida, Business Court Division (the "Florida Orange Action"). The defendants, theories, and relief sought in this action are deliberately differentiated from the Florida Orange Action per the Coordination Architecture set forth in ¶ 16A.

6. **Defendant-set distinction. Ten of the thirteen** Defendants captioned herein — CITGO Petroleum Corporation, PDV Holding, Inc., Worldwide Strategic Consultants LLC, Junta Ad Hoc de PDVSA, PDVSA, Samuel Wilhelm, Julian Cardenas Garcia, Fernando Vera, Carlos Jorda, and Carlos E. Sardi — were never captioned as parties in the Florida Federal Action in any operative or proposed amended complaint at any stage. **The remaining three Defendants — Horacio Medina, Jose Vicente Carrasquero, and Orlando Viera-Blanco — were defendants in the Florida Federal Action and are named in this action on strictly defined narrow-conditions bases set forth in ¶¶ 9–12 below.** Specifically: (a) Medina and Carrasquero are named as full-claim narrow-conditions Defendants on Counts I, II, IX, X, XI, and XIV under the post-May-16-2025 claim-novelty conditions articulated at ¶¶ 10–11; and (b) Viera-Blanco is named as a partial-claim narrow-conditions Defendant on Counts X, XI, and XII only under the operative-fact-differentiated conditions articulated at ¶ 12. **Defendant CITGO Holding, Inc. has been omitted from this filing. CITGO Holding, Inc. is reserved for the Anchor Case, No. 1:23-cv-00989-JLH (D. Del.), where it remains the live defendant. See ¶¶ 17, 17B.**

7. **Legal-theory distinction.** The federal theories pleaded herein differ in legal substance from

those adjudicated in the Florida Federal Action, including: the federal Civil RICO § 1962(c) and § 1962(d) claims (Counts I and II); the 42 U.S.C. § 1985(2) first-clause witness-intimidation conspiracy theory (Count III); the *Christopher v. Harbury* federal court-access conduit theory (Count IX); the Delaware common-law tortious interference theories (Counts X and XI); and the Venezuelan civil-law theories under Código Civil Artículos 1185 and 1196 (Count XII).

8. **Operative-fact distinction.** The operative facts constituting the gravamen of each cause of action pleaded herein post-date the May 16, 2025 Bloom dismissal. Pre-May-2025 facts are pleaded herein only as background, Enterprise-origin evidence, or pattern context under 18 U.S.C. § 1961(5); no cause of action's gravamen rests on pre-May-2025 conduct.

### D. Inclusion of Defendants Medina, Carrasquero, and Viera-Blanco Pursuant to Narrow Post-Judgment Claim-Novelty Conditions

9. Defendants Medina, Carrasquero, and Viera-Blanco were parties-defendant in the Florida Federal Action. Plaintiffs name them as Defendants herein on strictly defined conditions (the "narrow post-judgment claim-novelty conditions") that preserve maximum doctrinal independence from the Florida Federal Action and the pending Eleventh Circuit appeal. The narrow-conditions framework operates on two distinct sub-architectures: (a) **Full-claim narrow conditions** as to Defendants Medina and Carrasquero, who are named on Counts I, II, IX, X, XI, and XIV under the post-May-16-2025 claim-novelty conditions articulated at ¶¶ 10–11, with each such Count (i) asserting a legal theory not pleaded against the Defendant in the Florida Federal Action and (ii) resting on operative facts occurring after May 16, 2025; and (b) **Partial-claim narrow conditions** as to Defendant Viera-Blanco, who is named on Counts X, XI, and XII only — i.e., exclusively on Delaware substantive-law tortious-interference theories and Venezuelan civil-law *daños morales* — under the operative-fact-differentiated conditions

articulated at ¶ 12, anchored to (i) the post-March-2026 continuing retention of the approximately $75,000 Fundación Simón Bolívar de CITGO disbursement (¶¶ 91–93), (ii) the post-May-16-2025 ratification, retention, and continuing public dissemination of the May 24, 2024 scaled-identity disclosure on Platform X (¶ 72), and (iii) the comity directionality articulated by Judge Bloom (Bloom Order pp. 19–20). No federal-statutory claim is asserted against Defendant Viera-Blanco in this action; the federal claims against him in the Florida Federal Action were dismissed with prejudice on May 16, 2025, and Plaintiffs respect that ruling for *Semtek* purposes per ¶ 12A. See also ¶¶ 12, 12A, 12(a)–(d), 61.

10. **Medina.** Plaintiffs name Defendant Medina on Counts I (RICO § 1962(c)), II (RICO § 1962(d)), IX (federal court-access conduit), X (Delaware primary tortious interference), XI (Delaware aiding-and-abetting tortious interference), and XIV (Delaware aiding-and-abetting defamation per se) only. Each such count (a) asserts a legal theory that was not pleaded against Medina in the Florida Federal Action; and (b) rests mainly on operative facts occurring after May 16, 2025, including (i) Medina's personal authorization of five VAI → WWSC wire transfers between June 12, 2025 and November 6, 2025; (ii) Medina's June 16, 2025 appointment of Defendant Sardi as a Director of PDV Holding, Inc.; (iii) Medina's October 31, 2025 receipt of a $516.89 circular hotel-reimbursement payment from VAI; and (iv) Medina's continuing post-May-2025 direction of Enterprise operations, including **his continuing sponsorship and direction of (a) the Altamira Cinema "*Salvemos a CITGO*" documentary-financing conduit (¶ 88) and its promotional campaign architecture (¶ 89), and (b) the Altamira Cinema "*PDVSA: De la esperanza al colapso*" documentary-financing conduit (¶ 88A) and its promotional campaign architecture (¶ 89A) — including Medina's personal public appearance at the October 30–31, 2025 Doral, Florida premiere of**

**"*PDVSA: De la esperanza al colapso*" (¶ 88B) — through which Junta Ad Hoc institutional resources were funneled to co-wrongdoer Thaelman Urgelles and through which the broader campaign to harm Plaintiffs and to promote Medina (as "*hilo conductor*"), Eddie Ramirez (as featured testimonial subject in the second documentary), and Urgelles (as producer-director) was executed. Plaintiffs** do not** assert against Medina any claim under 42 U.S.C. § 1985, the Torture Victim Protection Act, the Alien Tort Statute, or Venezuelan Código Civil Artículos 1185 or 1196 in this action, and **do not** seek to re-litigate any matter actually adjudicated by Judge Bloom.

11. **Carrasquero.** Plaintiffs name Defendant Carrasquero on Counts I, II, IX, X, XI, and XIV only. Each such count (a) asserts a legal theory that was not pleaded against Carrasquero in the Florida Federal Action; and (b) rests on operative facts occurring after May 16, 2025, including (i) the April 7, 2026 Form NSD-5 Amendment to VAI's FARA Registration No. 7413, personally executed and e-submitted by Carrasquero through the United States Department of Justice FARA eFile system at 12:34:28 PM Eastern Time; (ii) the continuing post-May-2025 "*Consultor Estratégico*" designation of Carrasquero on VAI's Spanish-language website; (iii) the post-May-2025 portion of the coordinated twelve-monthly-payment pattern associated with Carrasquero's Enterprise role; and (iv) Carrasquero's continuing post-May-2025 co-ownership and operation of the @lucioquincio X-platform account used to amplify Plaintiffs' sealed identities.

12. **Viera-Blanco — Narrow-Conditions Defendant on Counts X, XI, and XII Only.** Defendant Orlando Viera-Blanco is a natural person and a resident of the State of Florida (Doral, Miami-Dade County), and a former Venezuelan Guaidó-interim-government Ambassador to Canada (c. 2020–2023). He is named as a Defendant in this action solely on Counts X (Delaware

Rodriguez Moreno et al. v. CITGO Petroleum Corporation et al. — Verified Complaint (Rule 8(a) Notice-Pleading Initiating Version)

Primary Tortious Interference with Prospective Business Relations), XI (Delaware Aiding-and-Abetting Tortious Interference), and XII (Venezuelan *Daños Morales*) (collectively, the "Viera-Blanco Counts"), each anchored to operative facts post-dating May 16, 2025 (the Bloom Order date) under the Delaware separate-accrual and continuing-wrong doctrines (¶¶ 113–113B), the post-March-2026 continuing retention of the approximately $75,000 Fundación Simón Bolívar de CITGO disbursement (¶¶ 91–93), and the post-May-16-2025 ratification, retention, and continuing public dissemination of the May 24, 2024 sealed-identity disclosure on Platform X (¶ 72). Plaintiffs do not assert any federal-statutory claim against Defendant Viera-Blanco in this action. Plaintiffs candidly acknowledge that the May 16, 2025 dismissal-with-prejudice ruling in *Freites C. et al. v. Medina et al.*, No. 1:25-cv-20465-BB (S.D. Fla.) (ECF No. 165) operates as adjudication on the merits of certain federal claims against Defendant Viera-Blanco for *Semtek* purposes; consequently, Defendant Viera-Blanco is named in this action only on the state-law and foreign-law claims that fall within the comity directionality articulated by Judge Bloom (Bloom Order pp. 19–20: *"principles of comity strongly favor the judge presiding over the Delaware litigation to address any alleged improper disclosure in connection to that litigation"*).

12(a). **Concurrent Florida Orange Action Captioning.** Plaintiffs further acknowledge that Defendant Viera-Blanco is concurrently named as a Defendant in the Florida Orange Action (Case No. 2026-CA-004418-O, Fla. 9th Jud. Cir. Bus. Ct.) on Florida-state-law theories — specifically, Florida Orange Action **Counts II (Defamation Per Se), III (Civil Conspiracy), VI (Intentional Infliction of Emotional Distress), VIII (Unjust Enrichment), VIII-A (Common-Law Conversion), and XI (Florida Cyberstalking)**. Defendant Viera-Blanco is **NOT** named on Florida Orange Action Counts I (Florida RICO), IV (Invasion of Privacy), V

(Reserved A&A Tortious Interference), VII-A (A&A Breach of Fiduciary Duty), or IX (Reserved Civil Theft). The Florida Orange Action operates as the Florida-state-law parallel to this action, with Plaintiffs maintaining contemporaneous prosecution in both forums on doctrinally and operatively differentiated bases.

12(b). **Doctrinal-Vehicle Differentiation Among Concurrent Forums.** The doctrinal frameworks pleaded in each forum are categorically distinct:

1) **Florida Orange Action Counts VIII (Unjust Enrichment) and VIII-A (Common-Law Conversion)** — These Florida-law claims seek **restitutionary recovery** of the approximately $75,000 Fundación Simón Bolívar de CITGO disbursement itself, including (1) disgorgement of the inequitable benefit retained by Defendant Viera-Blanco; (2) imposition of a constructive trust over the identifiable Enterprise-source funds; and (3) equitable accounting. The Florida-law claims target the **specific corpus of misappropriated funds** and the equitable-restitutionary remedy attached thereto.

2) **This Action's Count X (Delaware Primary Tortious Interference)** — This Delaware-law claim seeks compensatory damages for the **lost-business-opportunity and prospective-economic-advantage harm** caused by Defendant Viera-Blanco's intentional interference (per ¶¶ 105–112 per-Plaintiff specific business opportunities). The Count X damages target the **business-relationship harm flowing from the May 24, 2024 Delaware Leak and post-May-16-2025 amplification**, NOT the $75,000 corpus itself. Count X damages are categorically distinct from Florida unjust-enrichment / conversion remedies.

3) **This Action's Count XI (Delaware Aiding-and-Abetting Tortious Interference)** — Derivative of Count X under Delaware's aiding-and-abetting doctrine. Same damages categorization as Count X.

4) **This Action's Count XII (Venezuelan *Daños Morales*)** — This Venezuelan-civil-law claim seeks **moral-damage compensation** under Código Civil Artículos 1185 and 1196 for the **non-economic harm** to Plaintiffs' honor, family-affective interests, professional sphere, and severe emotional and psychological suffering. The *daños morales* damages are categorically distinct from both Florida restitutionary recovery and Delaware compensatory tortious-interference damages — the Venezuelan-law theory captures the moral-injury dimension of harm not duplicated in either Florida or Delaware substantive frameworks.

12(c). **Anti-Double-Recovery / Settlement-Allocation Reservation.** Plaintiffs expressly disclaim any intent to recover the **same dollar of damages twice** across the Florida Orange Action and this action. Plaintiffs reserve all rights and obligations under *McDermott, Inc. v. AmClyde*, 511 U.S. 202 (1994), and *Restatement (Second) of Torts* § 885, to allocate any settlement, judgment, or recovery on a per-count, per-defendant, per-operative-fact basis, ensuring that:

1) Any restitutionary recovery in the Florida Orange Action of the approximately $75,000 Fundación Simón Bolívar disbursement (V19 Counts VIII / VIII-A) reduces this action's Count XII *daños morales* recovery only to the extent the *daños morales* award includes the same $75,000 corpus as a damages component (the *daños morales* award being primarily moral-injury compensation, the corpus-recovery overlap is expected to be limited);

2) Any compensatory recovery in this action's Count X for lost business opportunities (¶¶ 105–112) is independent of any Florida Orange Action restitutionary recovery and does not reduce Florida-action recovery; and

3) Plaintiffs maintain settlement-allocation discipline at any settlement, mediation, or judgment-execution stage to prevent double recovery, with explicit per-count, per-forum allocation language in any settlement agreement.

12(d). **Compatibility with Anchor Case Vicarious-Liability Framework.** Plaintiffs' Anchor Case Third Amended Complaint (D.I. 147-1) at ¶¶ 22, 28, and 31 pleads CITGO Holding, Inc.'s vicarious liability for Defendant Viera-Blanco's conduct under agency-and-respondeat-superior doctrine. This action's direct-liability captioning of Defendant Viera-Blanco for his own conduct is doctrinally compatible with the Anchor Case's vicarious-liability framework: a wrongdoer-actor remains personally liable for his own conduct even when acting as agent of a principal, and the principal can be jointly and severally liable for the agent's wrongful acts. *See Hinkle v. Continental Motors Inc.*, 877 F.3d 1334, 1339–40 (11th Cir. 2017); *Sass v. Andrew*, 832 So. 2d 247, 254 (Fla. 5th DCA 2002) (agent and principal are jointly and severally liable for agent's tortious conduct undertaken in scope of agency); *Restatement (Second) of Agency* § 217B (1958). The two frameworks generate independent damages exposure: CITGO Holding faces vicarious-liability exposure in the Anchor Case for funding and facilitating Defendant Viera-Blanco's conduct (TAC ¶ 31); Defendant Viera-Blanco faces direct-actor exposure in this action for his own intentional conduct. Under *McDermott v. AmClyde*, 511 U.S. 202 (1994), and joint-and-several-liability principles, any recovery from one Defendant on shared damages categories reduces remaining recovery proportionately, preventing double recovery while preserving Plaintiffs' rights against each Defendant on each Defendant's distinct legal theory.

12(c). **Three-Forum Exposure Doctrinal Management.** The three-forum exposure (Florida Federal Action [dismissed; on appeal to 11th Cir.] → Florida Orange Action [active state-court] → this action) is doctrinally managed through (i) operative-fact differentiation between this action's Delaware-nexus and Venezuelan-nexus operative facts versus the Florida Orange Action's Florida-nexus operative facts; (ii) legal-theory differentiation among Delaware-law tortious interference (this action), Florida-law unjust enrichment / conversion (Florida Orange Action), Venezuelan civil-law *daños morales* (this action), and Florida-law defamation per se / civil conspiracy / IIED / cyberstalking (Florida Orange Action) — six categorically distinct doctrinal vehicles across the two active forums; (iii) per-count, per-defendant, per-operative-fact severability per the Severance Map at Appendix A; and (iv) the explicit anti-double-recovery / settlement-allocation reservation at ¶ 12(c) above.

12A. **Affirmative Bloom Order Compliance.** Plaintiffs affirmatively acknowledge the May 16, 2025 dismissal Order in *Freites C. et al. v. Medina et al.*, No. 1:25-cv-20465-BB (S.D. Fla.) (ECF No. 165). With respect to the federal claims dismissed with prejudice in that Order (Florida Federal Action Counts I, VII, VIII, and X therein), Plaintiffs do not assert any federal claim against Defendant Viera-Blanco in this action. With respect to the state-law claims dismissed without prejudice (Florida Federal Action Counts II, III, IV, V, VI, and IX therein), Plaintiffs assert in this action only those state-law and foreign-law claims that are: (i) categorically distinct from the dismissed claims (Delaware substantive law and Venezuelan civil-law-1942-Code claims, not Florida law); (ii) anchored in operative facts post-dating May 16, 2025, or in continuing-tort post-May-2025 ratification of pre-May-2025 conduct under the Delaware separate-accrual and continuing-wrong doctrines (¶¶ 113–113B); and (iii) within the comity directionality articulated at Bloom Order pp. 19–20 (D. Del. as proper forum for Delaware

sealing-order-violation issues). Plaintiffs respectfully submit that this action — by captioning Defendant Viera-Blanco in this District on Delaware-law tortious-interference and Venezuelan-law *daños morales* theories arising from the May 24, 2024 violation of this Court's February 9, 2024 sealing order — is consistent with the Bloom Order's comity dictum rather than in derogation of it.

13. **No privity.** No Defendant named in this Complaint is in privity — within the meaning of *Taylor v. Sturgell*, 553 U.S. 880, 893–95 (2008) — with any party named in the Florida Federal Action on any claim dismissed by the May 16, 2025 order. None of the six *Taylor* categories of non-party preclusion applies as to any Defendant named herein on any count pled herein: no agreement exists; no preceding-and-succeeding ownership relationship exists; no adequate representation in the same capacity occurred; no assumption of control over the Florida Federal Action litigation was exercised; no proxy relationship exists; and no special statutory scheme binds non-parties to that judgment.

13A. **No Duplicative Relief Sought.** Plaintiffs do not seek any monetary or equitable relief in this action that would duplicate or set aside any relief actually granted or denied in the Florida Federal Action (which remains in the appellate posture properly assigned to it before the United States Court of Appeals for the Eleventh Circuit), in the Anchor Case (which remains live before this Court against CITGO Holding, Inc. only — a party not named here per ¶ 17), or in the Florida Orange Action (which is a parallel state-court proceeding pleading distinct Florida-statutory and Florida-common-law theories per ¶¶ 16A–16B). Plaintiffs' Settlement-Coordination and Setoff Reservation at Prayer ¶ 215(G)(iv) further preserves per-action, per-defendant, per-count allocation discipline consistent with *McDermott, Inc. v. AmClyde*, 511 U.S. 202 (1994).

Rodriguez Moreno et al. v. CITGO Petroleum Corporation et al. — Verified Complaint (Rule 8(a) Notice-Pleading Initiating Version)

### E. Colorado River, Anti-Suit, and First-Filed Pre-Emption

14. This action is not parallel to the Florida Federal Action within the meaning of *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), or *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1 (1983). Applying the Third Circuit's six-factor test set forth in *Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc.*, 571 F.3d 299, 307–08 (3d Cir. 2009): (a) the parties are materially different — **ten of the twelve Defendants captioned herein were not parties in the Florida Federal Action**, and the two who were (Medina and Carrasquero) are sued on novel post-judgment claims pursuant to the narrow conditions; (b) the operative facts are materially different — all gravamen facts post-date the May 16, 2025 dismissal; (c) the legal theories are materially different — every federal theory and every state-law theory pleaded herein was not pleaded in the Florida Federal Action; (d) the forums and appellate postures are materially different; (e) no piecemeal-litigation concern is presented because the Florida Federal Action is on appeal; (f) federal rights are at issue. No "exceptional circumstances" exist that would warrant abstention. *Trent v. Dial Medical of Florida, Inc.*, 33 F.3d 217, 223 (3d Cir. 1994); *Ryan v. Johnson*, 115 F.3d 193, 195–96 (3d Cir. 1997).

15. The United States Supreme Court's strong presumption against federal-federal anti-suit injunctions forecloses any attempt by Defendants to seek dismissal or stay of this action on the basis of the pending Eleventh Circuit appeal. *General Electric Co. v. Deutz AG*, 270 F.3d 144, 160–61 (3d Cir. 2001). No anti-suit injunction has issued from any court against this action. 28 U.S.C. § 2283 disfavors federal-to-federal anti-suit injunctions. State courts lack jurisdiction to enjoin a federal filing. *Donovan v. City of Dallas*, 377 U.S. 408 (1964).

16. The first-filed doctrine applies only among federal actions and does not apply to any separate

state-court proceeding Plaintiffs may commence.

16A. **Coordination with the Florida Orange Action.** Plaintiffs filed a separate state-court action on April 24, 2026 in the Circuit Court of the Ninth Judicial Circuit in and for Orange County, Florida, Business Court Division, styled *Rodriguez M., Freites C., and Otero C. v. Medina et al.*, Case No. 2026-CA-004418-O (the "Florida Orange Action"), with the Plaintiffs' First Amended Verified Complaint filed April 27–28, 2026 pursuant to Fla. R. Civ. P. 1.190(a) (as-of-right amendment prior to service of any responsive pleading). The Florida Orange Action and this action are deliberately differentiated in defendant scope, legal theory, and operative-fact emphasis:

1) **Defendant-scope differentiation.** The Florida Orange Action is filed against thirty-one Defendants (the original Defendant Manuel Avendano having been voluntarily dismissed by Plaintiffs pursuant to Fla. R. Civ. P. 1.420(a)(1)(A) prior to filing of the First Amended Verified Complaint), consisting of Florida-citizen individual and corporate defendants (including Florida-resident Defendants Horacio Medina (narrow conditions), Federico Medina Ravell, Gustavo Lainette, Jose Alexis Ortiz, Luis Jose Chacon-Pacheco, Orlando Viera-Blanco, Jose Vicente Carrasquero (narrow conditions), Carlos E. Sardi, Nelson Oxford, Yon Goicoechea, Gustavo Marcano, Lino Carrillo, Eddie Ramirez, and Thaelman Urgelles; and the Florida-entity Defendants Resistencia Venezolana Corp., Latino Communications LLC, Altamira Cinema Corp., Freedom for Venezuela Inc., Tezcua Investments LLC, AVEF, CLDD, ASM Investing LLC, VENAMERICA, CAPA, and Si Señor LLC), plus out-of-state entities with Florida-directed activity (VAPA, VAI, WWSC), plus Defendant CITGO Petroleum Corporation (the only Delaware-corporate Defendant appearing in both actions, named in Florida by virtue of its

Florida-registered-foreign-corporation status per Florida Department of State Document #855911), plus Jane/John Does. The Florida Orange Action does **NOT** name any of CITGO Holding, Inc., PDV Holding, Inc., Junta Ad Hoc de PDVSA, or PDVSA. **CITGO Holding, Inc. is reserved for the Anchor Case, where it remains the live defendant (see ¶ 17).** PDV Holding, Junta Ad Hoc, and PDVSA are reserved exclusively for this action.

2) **Legal-theory differentiation.** The Florida Orange Action pleads twelve counts under Florida law: Count I (Florida RICO, Fla. Stat. § 895.03(3) and § 895.03(4)); Count II (Common-Law Defamation Per Se); Count III (Civil Conspiracy); Count IV (Invasion of Privacy — Public Disclosure of Private Facts); Count V (Aiding and Abetting Tortious Interference — reserved); Count VI (IIED); Count VII-A (Aiding and Abetting Breach of Fiduciary Duty); Count VIII (Unjust Enrichment — Conduit Theory); Count VIII-A (Common-Law Conversion); Count IX (Florida Civil Theft, Fla. Stat. § 772.11 — reserved pending 30-day demand); Count X (FDUTPA, Fla. Stat. § 501.204); Count XI (Florida Cyberstalking, Fla. Stat. § 784.0485); Count XII (Negligence — alternative pleading). This action pleads federal-statutory, Delaware-common-law, and Venezuelan-civil-law theories — none of which overlap with any Florida-statutory cause of action pleaded in the Florida Orange Action.

3) **Operative-fact differentiation.** The Florida Orange Action's operative facts are the Florida-directed tortious publication, dissemination, and defamation-amplification acts of the Florida-citizen Defendants. This action's operative facts are the Delaware-federal-forum-targeting conduct, the federal witness-intimidation conduct, the Delaware-corporate-chain blocked-property and money-laundering predicate acts, and the

Delaware-common-law tortious interference. The operative-fact sets overlap only as Enterprise-structural narrative; neither action pleads the same operative-fact as the gravamen of any cause of action in the other action.

4) **Shared-Defendant discipline.** As to the Defendants appearing in both actions — CITGO Petroleum Corporation, WWSC, Sardi, Medina (narrow conditions), and Carrasquero (narrow conditions) — the operative-fact and legal-theory pleadings are differentiated to defeat any claim-splitting analysis under *Restatement (Second) of Judgments* § 24 and *Lawlor v. Nat'l Screen Service Corp.*, 349 U.S. 322 (1955). The per-action theory-and-fact pleading is set forth in the Count-specific paragraphs herein and in the parallel Florida Orange Action Count-specific paragraphs.

5) **Goicoechea / Marcano Operative-Fact Differentiation.** As to Defendants Yon Goicoechea and Gustavo Marcano — who appear in both this action and the Florida Orange Action — the operative-fact differentiation is as follows: (i) the **Florida Orange Action** asserts claims arising from their **Florida-directed publication and dissemination conduct**, including their participation in or amplification of Florida-citizen-corporate defamation vehicles, their roles in Florida-citizen-corporate entities, and their Florida-state- law violations; (ii) **this action (V5)** asserts claims arising from their **Delaware-directed institutional-designation authority** as members of CAPA (the *Consejo de Administración y Protección de Activos*, a Venezuelan state body created by Article 22 of the *Estatuto que rige la Transición*, see ¶ 60B), through which they exercised, voted upon, or coordinated designations of the Junta Ad Hoc de PDVSA pursuant to *Estatuto* Article 13, with downstream effect on the governance of Delaware corporation PDV Holding, Inc., and through that designation chain enabled the

corporate-chain witness-suppression conduct against Plaintiff Freites (TVPA Count VI, as to Plaintiff Freites only), the corporate-chain tortious interference with Plaintiffs' Delaware business relationships (Counts X and XI), and the *daños morales* harm to Plaintiffs' moral integrity, honor, reputation, and family/affective interests under Venezuelan Civil Code Articles 1185 and 1196 (Count XII). The Florida-publication conduct and the Delaware-corporate-governance-designation conduct are **distinct operative-fact sets** under *Restatement (Second) of Judgments* § 24 and *Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S. 322 (1955). Plaintiffs do not assert in this action any claim arising from Florida-directed publication or dissemination conduct of Goicoechea or Marcano; Plaintiffs reserve all such claims to the Florida Orange Action.

Plaintiffs do not seek and will not seek the same relief twice; settlement-allocation and setoff discipline is preserved at Prayer ¶ 215(G)(iv).

16B. **Affirmative Anti-Claim-Splitting Pleading.** Plaintiffs do not seek the same remedy in both actions. Each forum is invoked on distinct legal theories supported by distinct operative-fact subsets, with shared Defendants pleaded on theory-and-fact-differentiated bases. *Restatement (Second) of Judgments* § 24 does not foreclose this architecture because the Enterprise's ongoing course of conduct generates discrete, independently-actionable tortious acts, each giving rise to a fresh cause of action. *Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S. 322 (1955). The Delaware action seeks federal-statutory and Delaware-common-law remedies for conduct affecting the Delaware federal proceedings and the Delaware corporate-chain Defendants; the Florida Orange Action seeks Florida-statutory and Florida-common-law remedies for conduct targeting Florida-resident Defendants and Florida-situs tortious acts. Settlement allocations are preserved on a per-count, per-defendant, per-action basis to prevent double recovery, consistent with

*McDermott, Inc. v. AmClyde*, 511 U.S. 202 (1994).

**16C. Affirmative Federal-State Colorado River Pre-emption (V5 ↔ Florida Orange Action).** Beyond the federal-federal Colorado River analysis at ¶ 14 (which addresses parallelism between this action and the Florida Federal Action), and the federal-state operative-fact differentiation at ¶¶ 16A–16B, Plaintiffs additionally address the federal-state Colorado River framework as applied to this action and the Florida Orange Action. Federal-state Colorado River abstention is a discretionary doctrine, not a mandatory one, and is reserved for "exceptional circumstances." *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 14–16 (1983). Applying the Third Circuit's six-factor test in *Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc.*, 571 F.3d 299, 307–08 (3d Cir. 2009): (a) **No court has assumed jurisdiction over property** — neither this action nor the Florida Orange Action involves *in rem* jurisdiction over a specific *res*; (b) **Convenience of the federal forum** — the federal forum (D. Del.) is the natural forum for the Delaware-incorporated corporate Defendants and for the federal-question claims; this factor argues against abstention; (c) **Avoidance of piecemeal litigation** — the per-action operative-fact and legal-theory differentiation at ¶¶ 16A(b)–(e) and 16B materially reduces the piecemeal-litigation concern; the actions plead distinct legal theories on differentiated operative facts, not parallel claims on the same operative facts; (d) **Order in which jurisdiction obtained** — this Delaware federal action is filed before any responsive pleading or substantive motion has been filed in the Florida Orange Action; this factor argues against abstention; (e) **Whether federal or state law provides rule of decision** — the gravamen of this action is federal-question (Counts I–IX); the Delaware-common-law claims (Counts X, XI) and Venezuelan-Civil-Code claim (Count XII) are pleaded in supplemental jurisdiction (¶ 27) and do not predominate; the federal-question center of gravity argues against

abstention under *Moses H. Cone*; (f) **Adequacy of state forum** — the Florida Orange Action is an adequate forum for the Florida-statutory and Florida-common-law claims pleaded therein, but is not an adequate forum for the federal-statutory claims (RICO, § 1985, § 1986, TVPA), the Delaware-common-law claims (which depend on Delaware substantive law), or the Venezuelan-Civil-Code claim (which is supplementally jurisdictional only on the federal claims pleaded herein). No exceptional circumstances exist that would warrant federal-state Colorado River abstention. *See also Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343 (1988); *Hedges v. Musco*, 204 F.3d 109 (3d Cir. 2000) (§ 1367(c) declination criteria not satisfied because federal claims have not been dismissed; federal-question retention is appropriate).

### F. Relationship to the Pending Anchor Case

17. Plaintiffs are concurrently pursuing a related civil action before this Court styled *Freites C., et al. v. CITGO Holding, Inc.*, No. 1:23-cv-00989-JLH (D. Del.) (the "Anchor Case"), in which Plaintiffs' Third Amended Verified Complaint is pending on leave to amend (ECF No. 147) following the Court's December 17, 2025 dismissal order (ECF No. 146). The Anchor Case formal Clerk's caption may not yet reflect the current operative defendant set: CITGO Holding, Inc. is the only remaining live defendant in the Anchor Case, all originally-captioned co-defendants (the Bolivarian Republic of Venezuela, Petróleos de Venezuela, S.A., PDV America, Inc., PDV Holding, Inc., and CITGO Petroleum Corporation) having been voluntarily dismissed, never served, or otherwise dropped from the case. Plaintiffs are concurrently filing a notice in the Anchor Case requesting the Clerk update the formal caption to reflect the current live-defendant set. The substantive framing in this Complaint reflects that current operative posture. This action does not seek to reopen, reconsider, or relitigate the Anchor Case. *Plaintiffs have affirmatively elected not to name CITGO Holding, Inc. as a Defendant in this action.*

*CITGO Holding, Inc. is the live defendant in the Anchor Case, where Plaintiffs' operative claims against CITGO Holding are pending; Plaintiffs accordingly reserve all claims against CITGO Holding to the Anchor Case. This pre-emptive exclusion insulates the present action from any Anchor Case preclusion cascade under* Migra v. Warren City School District Board of Education, *465 U.S. 75 (1984),* Parklane Hosiery Co. v. Shore, *439 U.S. 322 (1979), and 28 U.S.C. § 1738, and is accordingly doctrinally stronger than any contingent-strike architecture.* Plaintiffs refer to the Anchor Case herein as (i) background establishing the "court of the United States" element of 42 U.S.C. § 1985(2) first clause; (ii) the protected federal activity giving rise to Defendants' witness-intimidation retaliation; and (iii) evidence of Defendants' actual knowledge of Plaintiffs' federal litigation activity.

17A. **Affirmative Limitation re: Anchor Case Adjudicated Issues.** Plaintiffs do not, by this Complaint, contest, relitigate, or seek to reopen any issue actually adjudicated by the Honorable Jennifer L. Hall in the Anchor Case. To the extent the Court has ruled on specific elements, allegations, or theories in the Anchor Case (including but not limited to the finding noted in ¶ 72 hereof that Plaintiffs did not carry their burden as to CITGO Holding, Inc.'s violation of the sealing order), this Complaint accepts those rulings and pleads its causes of action on facts and theories that do not require their reversal. **Consistent with ¶ 17, CITGO Holding, Inc. is not a Defendant in this action; any rulings the Court may enter on Anchor Case ECF No. 147 will not create preclusion cascade risk as to this action's Defendants, because no overlapping defendant is shared between the two actions after pre-emptive exclusion. See also ¶ 17B (CITGO Petroleum Corporation's distinguishability from the Anchor Case).**

17B. **CITGO Petroleum's Distinguishability from the Anchor Case.** With CITGO Holding, Inc.'s pre-emptive exclusion from this action (¶ 17), Defendant CITGO Petroleum Corporation is

the only corporate Defendant herein who bears any relational connection to the Anchor Case. That connection is limited and does not create Anchor Case preclusion cascade risk for several reasons:

1) **CITGO Petroleum was served and then voluntarily dismissed without prejudice in the Anchor Case.** CITGO Petroleum was named as a Defendant in Plaintiffs' original Anchor Case complaint and was duly served. Plaintiffs thereafter voluntarily dismissed their claims against CITGO Petroleum without prejudice pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i) on **March 27, 2025 (Anchor Case D.I. 135)**, with court-entry termination effective **March 28, 2025**. The other corporate-chain entities — PDVSA, PDV Holding, Inc., and Junta Ad Hoc de PDVSA — were likewise dismissed without prejudice on **March 20, 2025 (Anchor Case D.I. 130)**. Under Fed. R. Civ. P. 41(a)(1)(A)(i) and *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 505–06 (2001), each such voluntary dismissal without prejudice does not operate as an adjudication on the merits and does not preclude re-naming CITGO Petroleum or the other dismissed corporate-chain entities as Defendants in this present action.

2) **The gravamen of the Anchor Case is CITGO Holding's direct conduct**, not CITGO Petroleum's conduct. Any Anchor Case ruling affecting CITGO Petroleum would bind the parties on the specific CITGO-Holding-direct-conduct theory; this action's claims against CITGO Petroleum rest on separate operative facts (CITGO Petroleum's Delaware-corporate-chain participation in the sanctions-evasion and witness-suppression Enterprise, documented in part through the sworn Florida 2025 Foreign Profit Corporation Annual Report (Exhibit S), the officer-level Jorda/Wilhelm/Vera authority

chain, and the post-May-16-2025 Enterprise-conduct participation specifically pled in this Complaint).

3) **No Anchor Case judgment has entered against any Defendant**; the Anchor Case remains active with TAC Renewed Motion pending at ECF No. 147. Preclusion cascade, if any, would require first the entry of an Anchor Case judgment on the merits, which has not occurred.

4) **Full Faith and Credit / 28 U.S.C. § 1738.** In all events, preclusion doctrine requires identity of parties, identity of cause of action, and identity of the matter actually adjudicated. *Taylor v. Sturgell*, 553 U.S. 880, 892–95 (2008). None of these requirements is satisfied as between the Anchor Case and this action's claims against CITGO Petroleum. *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75 (1984), and *Parklane Hosiery Co. v. Shore*, 439 U.S. 322 (1979), do not apply.

17C. **PDV Holding's Distinguishability from the Anchor Case and TAC Futility-Denial Preclusion Pre-emption.** Defendant PDV Holding, Inc., like CITGO Petroleum (¶ 17B), bears a relational connection to the Anchor Case but does not generate Anchor Case preclusion cascade risk. The basis for distinguishability mirrors the CITGO Petroleum analysis at ¶ 17B(a)–(d) and is supplemented by the following Defendant-specific factors:

1) **PDV Holding was voluntarily dismissed without prejudice in the Anchor Case on March 20, 2025 (Anchor Case D.I. 130).** Under Fed. R. Civ. P. 41(a)(1)(A)(i) and *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 505–06 (2001), this voluntary dismissal does not operate as adjudication on the merits and does not preclude re-naming PDV Holding as a Defendant in this action.

2) **PDV Holding's participation in this action rests on operative facts not at issue in the Anchor Case.** The Anchor Case's gravamen concerns the destruction of Plaintiffs' Venezuelan severance and pension trust rights through the 2002–2003 Tascón-List purge and subsequent Illarramendi/Rivera diversion. This action's claims against PDV Holding rest on PDV Holding's post-May-16-2025 conduct as: (i) the FARA-registered (Reg. No. 6997) U.S.-territorial agent of foreign principal Junta Ad Hoc de PDVSA; (ii) the legal entity through which Defendant Sardi was appointed Director on June 16, 2025; (iii) the source of Channel Alfa "Travel, Meals, and Lodging" disbursements totaling approximately $130,531.38 to CAPA Members during 2023–2025 (¶¶ 101A–101I); and (iv) the registrant whose September 30, 2025 supplemental FARA filing contained the materially false foreign-principal-address declaration described at ¶ 96A. None of these operative-fact clusters was at issue in the Anchor Case.

3) **TAC Futility-Denial Preclusion Pre-emption.** In the event that this Court denies leave to amend the Anchor Case TAC (ECF No. 147) on futility grounds, the question may arise whether such denial operates as adjudication on the merits for *Semtek* and *Federated Department Stores, Inc. v. Moitie*, 452 U.S. 394 (1981), purposes, with potential preclusion cascade against this action's claims arising from the same operative facts. Plaintiffs pre-empt any such argument as follows:

4) **No identity of cause of action.** Even were the TAC denied with prejudice on futility grounds, the dismissed claims (Anchor Case TAC Counts) and this action's Counts arise from substantially different operative-fact clusters: the Anchor Case TAC's gravamen is pre-2024 conduct (the Nest Egg destruction and the Illarramendi/Rivera diversion); this action's gravamen is post-May-16-2025 Enterprise conduct (Channels Alfa and Beta, the

Altamira Cinema documentary-financing conduits, the Sardi sham-counsel architecture, the Carrasquero NSD-5 false statement, and the Eddie Ramirez December 16, 2025 Runrun.es column). Under the Third Circuit's transactional test, *In re Mullarkey*, 536 F.3d 215, 223–25 (3d Cir. 2008), claims arising from temporally and operationally distinct fact clusters are not the same cause of action.

5)   **No identity of defendants.** The TAC names CITGO Holding, Inc. as the principal defendant; this action does not name CITGO Holding (¶ 17). The non-CITGO-Holding defendants in this action (CITGO Petroleum, PDV Holding, WWSC, Junta Ad Hoc de PDVSA, PDVSA, Wilhelm, Cardenas Garcia, Vera, Jorda, Sardi, Medina, Carrasquero) were not parties to the TAC in their litigation capacities relevant to the post-May-16-2025 Enterprise conduct. Defendant privity analysis must be conducted defendant-by-defendant; nominal corporate-pyramid relationships do not establish privity for preclusion purposes where the defendants exercised distinct litigation-substantive roles. *Taylor v. Sturgell*, 553 U.S. 880, 893–95 (2008); *In re Lazy Days' RV Center Inc.*, 724 F.3d 418, 423–24 (3d Cir. 2013).

6)   **Different operative-fact periods.** Even were privity established as to certain defendants, the post-May-16-2025 conduct was not — and could not have been — adjudicated by any TAC futility ruling addressing pre-May-2025 conduct allegations. *Semtek*, 531 U.S. at 505–06.

7)   **Available alternative ground.** To the extent any residual claim-preclusion risk attaches as to any specific Defendant on any specific Count, Plaintiffs reserve the right to remove or restructure that Defendant or Count via Rule 15(a)(1)(B) as-of-right amendment within 21 days of service of any motion to dismiss raising such preclusion argument.

Rodriguez Moreno et al. v. CITGO Petroleum Corporation et al. — Verified Complaint (Rule 8(a) Notice-Pleading Initiating Version)

18. **Related-Case Designation — Contingent.** Pursuant to D. Del. LR 3.1, Plaintiffs designate this action as related to the Anchor Case and respectfully request assignment to the Honorable Jennifer L. Hall, **subject to the following pre-filing decision rule**: if the Court enters its ruling on Anchor Case ECF No. 147 prior to the filing of this Complaint, the related-case designation shall be reconfirmed if and only if the ruling does not adversely affect the doctrinal independence of this action. If the Court denies leave to amend the TAC with prejudice prior to filing, Plaintiffs intend to omit the related-case designation and request random reassignment, to ensure a forum free of any optic of forum-shopping (per *In re Crayton*, 2014 WL 5454524 (D. Del. Oct. 27, 2014), and analogous Third Circuit guidance on related-case discretion).

*F-2. Prior-Action Disclosure (Calibrated Candor)*

18A. **Brief Disclosure re: Prior Altonaga and Bloom Actions.** In the interest of candor to this Court, Plaintiffs disclose that three Plaintiffs in this action (RODRIGUEZ MORENO, FREITES, OTERO) were among eleven pro se co-plaintiffs in a prior federal action, *Freites v. Viera-Blanco*, No. 1:24-cv-24176-CMA (S.D. Fla.) ("Altonaga Action"), dismissed without prejudice on January 28, 2025 (ECF No. 67 therein). The same three Plaintiffs - not the eleven co-plaintiffs in the previous action- subsequently filed *Freites v. Medina*, No. 1:25-cv-20465-BB (S.D. Fla.) ("Bloom Action"), whose 41-page dismissal Order of May 16, 2025 (ECF No. 165 therein) adjudicated dispositive motion practice on a full evidentiary record and made no pro se procedural-compliance finding of any kind against any Plaintiff — contemporaneous evidence that Plaintiffs comply strictly with court rules in their pro se practice. Neither the Altonaga nor Bloom dismissal reached the merits of any claim asserted in this Delaware Complaint. Plaintiffs preserve their full response to any defendant attempt to invoke the Altonaga or Bloom procedural history and reserve the right to brief the full scope of those prior actions' non-preclusive effect if

and when any defendant puts them at issue, relying on *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 505–06 (2001), and analogous Third Circuit authority on claim- and issue-preclusion.

18B. **Individualized Verification Architecture.** This Delaware Complaint employs an individualized verification architecture under which each Plaintiff personally executes his own verification on his own behalf only, under penalty of perjury pursuant to 28 U.S.C. § 1746, per § VIII.A–C below. No Plaintiff signs on behalf of any other Plaintiff at any point in this action. This architecture applies equally to all Plaintiffs in this action regardless of prior-action participation.

*G. Case Management Posture and Severability Regarding FSIA Defendants*

19. To the extent any Defendant asserts sovereign immunity under the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1602–1611, Plaintiffs respectfully request that this Court sever the action against such Defendant pursuant to Federal Rule of Civil Procedure 21 so that the action against non-sovereign Defendants may continue on the merits without stay during any appellate review of the sovereign-immunity ruling. Plaintiffs pre-commit to cooperative severance terms that preserve the integrity of both severed proceedings and do not prejudice any Defendant's opportunity to be heard.

19A. **FSIA Service-Timing Bifurcation.** Plaintiffs further respectfully request that the Court adopt a case-management order bifurcating PDVSA-specific case progression from the case progression of the non-sovereign Defendants. Service of process on Defendant PDVSA, as pleaded at ¶¶ 52–52F, proceeds under FSIA § 1608(b) (instrumentality service), which provides for delivery to a U.S.-located officer, managing agent, or general agent under § 1608(b)(3)(A) and for clerk-mediated mailing under § 1608(b)(3)(B). *See Magness v. Russian Federation*, 247

F.3d 609 (5th Cir. 2001) (interpreting § 1608(b) service requirements for foreign instrumentalities); *Sherer v. Construcciones Aeronáuticas, S.A.*, 987 F.2d 1246 (6th Cir. 1993) (same). In practice, § 1608(b) service typically completes in approximately 60–180 days, materially faster than § 1608(a) diplomatic-channel service; Plaintiffs cite this practitioner timeline estimate as informational guidance and not as a holding of any cited case. Plaintiffs do not plead PDVSA service under § 1608(a) (the diplomatic-channel mechanism applicable to a "foreign state" within § 1603(a)) because PDVSA is pleaded as an instrumentality within § 1603(b), not as a foreign state. Plaintiffs reserve the right to perfect service under § 1608(a) in the further alternative only if § 1608(b) service is held inapplicable for any reason; in that contingent scenario, Plaintiffs anticipate a diplomatic-channel service timeline of six to eighteen months under § 1608(a)(4) (dispatch through the clerk of court to the Secretary of State for transmission through diplomatic channels), Venezuela having withdrawn from the Hague Service Convention in 1993. Federal Rule of Civil Procedure 4(m) does not apply to FSIA service. *See* Fed. R. Civ. P. 4(m) ("This subdivision (m) does not apply to service in a foreign country under Rule 4(f), 4(h)(2), or 4(j)(1) . . . ."); Fed. R. Civ. P. 4(j)(1) ("A foreign state or its political subdivision, agency, or instrumentality must be served in accordance with 28 U.S.C. § 1608."); *see also Barot v. Embassy of the Republic of Zambia*, 785 F.3d 26, 28–29 (D.C. Cir. 2015) (addressing § 1608(a) strict-compliance requirements; reversing dismissal where in-pauper plaintiff's service attempts came close to strict compliance amid confusing district-court directions). Permitting the action to progress against the served, non-sovereign Defendants while PDVSA service is in process is supported by Federal Rule of Civil Procedure 21 (which authorizes the Court at any time, on just terms, to drop or sever parties), by general case-management principles under Federal Rule of Civil Procedure 16, and by the

served/unserved distinction itself, which provides sufficient non-parallelism for case-management bifurcation. Bifurcation also serves the interest of avoiding indefinite delay of meritorious claims against the corporate-chain and natural-person Defendants. Service on Defendant Junta Ad Hoc proceeds in the alternative as pleaded at ¶ 51B, including under standard FRCP 4 (Theory A: non-sovereign characterization), § 1608(b) (Theory B: instrumentality characterization), or alternatively via its authorized United States agents where applicable. The remaining ten non-sovereign Defendants are subject to RICO nationwide service under 18 U.S.C. § 1965(b) and (d), to Federal Rule of Civil Procedure 4(k)(2), and to ordinary FRCP 4 service mechanisms within ordinary timelines. Cross-defendant discovery, dispositive motion practice, and case scheduling shall proceed as to the served Defendants from the date of their respective appearances; PDVSA-specific case management shall be set upon PDVSA's appearance.

### H. Anti-ECF-146 Discipline — Full Federal-Theory Matrix Pleaded Directly in Complaint Body

20. Each federal statutory theory on which Plaintiffs rely — RICO §§ 1962(c) and 1962(d); § 1985(2) first clause; § 1985(3); § 1986; TVPA; and the federal court-access conduit theory — is pleaded affirmatively and in full in this Complaint, with dedicated count headings, element-by-element pleading, Rule 9(b) specificity blocks for every fraud-predicated factual predicate, and per-Plaintiff standing paragraphs. No federal theory is reserved for briefing in opposition to a motion to dismiss. *Cf. Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–57 (2007); Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009).

Rodriguez Moreno et al. v. CITGO Petroleum Corporation et al. — Verified Complaint (Rule 8(a) Notice-Pleading Initiating Version)

### I. FRCP 44.1 Notice of Foreign Law

21. Pursuant to Fed. R. Civ. P. 44.1, Plaintiffs give notice that Count XII invokes Venezuelan substantive law. Plaintiffs will develop expert evidence on: (a) Venezuelan Código Civil Artículos 1185 and 1196, as part of the pre-2017 civil-law corpus of the Bolivarian Republic of Venezuela and continuously in force; (b) the pre-2017 jurisprudence of the Sala de Casación Civil of the Tribunal Supremo de Justicia; (c) Venezuelan Constitution Artículos 57, 87, 89, 91, 95, 96, 97, 141, and 145; (d) Venezuelan Organic Labor Law (LOTTT, 2012) Artículos 18, 19, 22, 442, and 473; (e) Venezuelan Anti-Corruption Law Artículos 52, 56, 70, and 84 (invoked as *hecho ilícito* predicates under Artículo 1185, not as direct civil invocation of the criminal statute); and (f) the *apreciación equitativa* damages methodology for *daños morales* under Artículo 1196.

### I-2. Exhibit S — Florida-Government Sworn Public Record (Proposal A)

21A. **Exhibit S — CITGO Petroleum Corporation 2025 Foreign Profit Corporation Annual Report.** Plaintiffs incorporate by reference and attach as Exhibit S the CITGO Petroleum Corporation 2025 Foreign Profit Corporation Annual Report filed with the Florida Department of State, Division of Corporations on March 28, 2025 (Florida Document #855911; FEI #73-1173881; signed by Defendant Carlos Jorda as President and Chief Executive Officer under penalty of perjury pursuant to Chapter 607, Florida Statutes). Exhibit S is admissible as a self-authenticating public record under Fed. R. Evid. 902(4) and as a public-record hearsay exception under Fed. R. Evid. 803(8). Exhibit S establishes (a) Defendant Jorda's documented role as Director and President and Chief Executive Officer of CITGO Petroleum Corporation as of March 28, 2025; (b) Defendant Wilhelm's documented role as Director and Member & Chairman of a CITGO Petroleum committee as of the same date; (c) Defendant Vera's

documented role as Secretary of CITGO Petroleum (three separate entries) as of the same date; and (d) CITGO Petroleum Corporation's status as a Florida-registered foreign corporation with Florida registered agent CT Corporation System at 1200 S. Pine Island Road, Plantation, Florida 33324. Exhibit S is also offered in the contemporaneous Florida Orange Action as the documentary anchor for that action's jurisdictional pleading against CITGO Petroleum Corporation.

## J. Forum Non Conveniens Pre-Emption

21A. **Disclosure re: Recent FSIA Development.** Plaintiffs note that on February 21, 2025, the Supreme Court decided *Republic of Hungary v. Simon*, 604 U.S. ___, 145 S. Ct. 480 (2025), which narrowed the FSIA expropriation exception under 28 U.S.C. § 1605(a)(3) by rejecting commingling theories of nexus to U.S. commercial activity. Plaintiffs' FSIA analysis herein is anchored exclusively in the **commercial-activity exception** under 28 U.S.C. § 1605(a)(2) — and NOT in the expropriation exception under § 1605(a)(3), the noncommercial-tort exception under § 1605(a)(5), or the state-sponsor-of-terrorism exception under § 1605A. The basis for not pleading the other exceptions is set forth at ¶ 52D. *Hungary v. Simon* therefore does not affect the Court's jurisdiction over Defendants Junta Ad Hoc and PDVSA, each of which is pleaded as an instrumentality under § 1603(b) (¶¶ 51, 52) and as to whom the § 1605(a)(2) commercial-activity exception applies in all three of its statutory clauses (¶¶ 51A, 52B). The commercial-activity nexus is established by the U.S.-territorial transactions and U.S.-directed conduct pleaded at ¶¶ 22–30D, including but not limited to the VAI → "Worldwide Strategic Consultants LLC" compensation-chain wires (Delaware-incorporated WWSC as captioned recipient per ¶ 50; identity-correlation reservation at ¶ 50A), the FARA-disclosed U.S.-territorial agency-of-foreign-principal operations of both PDV Holding (Reg. No. 6997) and VAI (Reg.

No. 7413), and the Sardi PDV Holding directorship effected through the Delaware-corporate-governance chain.

22. For the avoidance of doubt and without waiving Plaintiffs' ordinary burden-of-persuasion positions in the event of any *forum non conveniens* motion: no adequate alternative forum exists for these claims. Three independent and cumulative grounds defeat any *forum non conveniens* motion:

1) **Venezuelan-forum inadequacy.** Venezuelan courts under the Maduro regime (in power through January 2, 2026; see ¶ 47A) could not provide an adequate forum for claims against Junta Ad Hoc de PDVSA, the Delaware-incorporated CITGO entities, or the individual Defendants during the period in which the predicate acts alleged herein were committed. As of the filing date, the Venezuelan judicial apparatus remains substantially controlled by holdover institutional structures that were instruments of the Maduro regime, and no replacement governmental authority has yet established an independent and effective judicial system capable of adjudicating claims of this nature. Plaintiffs incorporate by reference the Forum Non Conveniens Prefatory Memorandum accompanying this Complaint, which documents: the ILO Commission of Inquiry Report on Venezuela (2019); Inter-American Commission on Human Rights Annual Reports and Chapter IV designations (2019–2024); the UN Independent International Fact-Finding Mission on Venezuela (A/HRC/54/CRP.4, 2023); the U.S. Department of State Travel Advisory for Venezuela (Level 4 "Do Not Travel," continuously maintained with consular-services withdrawal in 2019); and the U.S. Department of State Country Reports on Human Rights Practices: Venezuela, 2020–2025.

2) **Personal-jurisdiction bar in alternative third-country fora.** No third-country forum (including Spain, Switzerland, or any country in which a Plaintiff currently resides) possesses personal jurisdiction over the Delaware-incorporated corporate Defendants (CITGO Petroleum, PDV Holding, WWSC) or over the FSIA Defendants (PDVSA, Junta Ad Hoc). Spanish and Swiss courts cannot adjudicate the conduct of Delaware corporations whose only material contacts with Spain or Switzerland are through the residence of certain Plaintiffs. The mere fact that one or more Plaintiffs reside in Spain (Otero) or Switzerland (Rodriguez Moreno) does not vest those countries' courts with jurisdiction over the corporate or sovereign Defendants.

3) **Enforcement-ecosystem limitation.** The remedies sought in this action — disgorgement under RICO § 1964(a); constructive trust over misappropriated Fundación Simón Bolívar de CITGO disbursements; injunctions against further unauthorized blocked-property transactions; and asset-recovery coordination with the existing D. Del. creditor-priority queue (*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 333 F. Supp. 3d 380 (D. Del. 2018), and progeny) — are uniquely available in this Court and cannot be granted by any third-country court. Even if a Spanish or Swiss court could hear the case, no such court could grant constructive-trust or pre-judgment freeze relief over Delaware-situs blocked property, nor could it intervene in the D. Del. priority-queue proceedings.

Under *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 n.22 (1981), and *Aguinda v. Texaco, Inc.*, 303 F.3d 470, 476 (2d Cir. 2002), the absence of an adequate alternative forum defeats any *forum non conveniens* motion at the gating threshold. The per-Plaintiff Venezuela-specific persecution profile set forth in the Prefatory Memorandum at §§ I.B and II provides the additional

Rodriguez Moreno et al. v. CITGO Petroleum Corporation et al. — Verified Complaint (Rule 8(a) Notice-Pleading Initiating Version)

plaintiff-by-plaintiff basis on which return to Venezuela is impossible for each specific Plaintiff.

**22A. *Distinguishing Aguinda v. Texaco.*** Plaintiffs cite *Aguinda v. Texaco, Inc.*, 303 F.3d 470 (2d Cir. 2002), at ¶ 22 only for the unremarkable proposition that absence of an adequate alternative forum defeats *forum non conveniens* dismissal at the gating threshold. *Aguinda*'s holding that Ecuador was an adequate alternative forum for the Lago Agrio claimants is doctrinally and factually distinct from this action and cannot support any FNC motion against these Plaintiffs. *Aguinda* involved a developing-country forum whose judiciary was independent of the defendants and where adequate procedural protections existed at the time of the FNC analysis. By contrast, this action's putative alternative forum — the Bolivarian Republic of Venezuela — fails the *Aguinda / Piper* adequacy threshold for at least four reasons: (i) the Venezuelan judiciary is politically captured by, and operates as the alter ego of, the very state-instrumentality network whose conduct is the subject of these claims, as documented by the UN Human Rights Council, the Inter-American Commission on Human Rights, and the U.S. Department of State; (ii) each Plaintiff faces credible, individualized threats of physical retaliation, arbitrary detention, or extrajudicial reprisal in Venezuela, as set forth in the Prefatory Memorandum at §§ I.B and II; (iii) Plaintiffs' counsel face credible threats and impediments to representation in Venezuelan courts, including documented patterns of attorney harassment in Enterprise-related matters; and (iv) the United States has primary regulatory and enforcement interests over the Delaware corporate-pyramid disbursements and OFAC-blocked-property conduct that constitute the gravamen of these claims, interests that no Venezuelan court could adjudicate. The contrast with *Aguinda*'s Ecuador-as-adequate-alternative-forum analysis is therefore complete: *Aguinda* helps Plaintiffs at the gating threshold (¶ 22), and *Aguinda*'s underlying Ecuador-specific holding does not support and cannot be invoked against Plaintiffs on the merits.

Rodriguez Moreno et al. v. CITGO Petroleum Corporation et al. — Verified Complaint (Rule 8(a) Notice-Pleading Initiating Version)

### K. Jury Demand

23. Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs demand trial by jury on all triable issues.

## II. JURISDICTION AND VENUE

### A. Subject-Matter Jurisdiction

24. **Federal-question jurisdiction under 28 U.S.C. § 1331** over Counts I, II, III, IV, V, VI, and IX, each of which arises under the laws or Constitution of the United States: 18 U.S.C. §§ 1962(c), 1962(d), and 1964(c) (Counts I and II); 42 U.S.C. §§ 1985(2), 1985(3), and 1986 (Counts III, IV, and V); 28 U.S.C. § 1350 note (Count VI); and the Fifth Amendment Due Process Clause, Article III, and the First Amendment Petition Clause (Count IX), with alternative-pleading anchor under 18 U.S.C. § 1964(a) (RICO equitable remedies framework — see ¶ 178A). [Count VII (Alien Tort Statute) withdrawn; see Count VII section below.]

25. **FSIA Exceptions — Commercial-Activity Framework.** Plaintiffs specifically plead the following FSIA exceptions as to Defendants PDVSA and Junta Ad Hoc de PDVSA. The commercial-activity exception of 28 U.S.C. § 1605(a)(2) applies comprehensively under all three of its disjunctive clauses, and Plaintiffs plead each clause in the alternative, each independently sufficient to defeat sovereign immunity:

1) **Clause One — Commercial Activity Carried on in the United States.** PDVSA and Junta Ad Hoc carry on commercial activity in the United States within the meaning of 28 U.S.C. § 1605(a)(2) Clause One through, inter alia: (i) continuous ownership, control, and corporate-governance direction of the Delaware-incorporated PDV Holding, Inc. and CITGO Petroleum Corporation (and, derivatively, CITGO Holding, Inc., which is not a Defendant in this action but whose governance is an operative commercial act of PDVSA / Junta); (ii) corporate-governance decisions regarding the U.S.-subsidiary chain,

including appointments, ratifications, compensation structures, and strategic authorizations; (iii) engagement of Defendant Sardi as concealed legal counsel through the VAI → WWSC channel; (iv) authorization and ratification of the documented corporate expenditures alleged herein, including the $516.89 Medina / VAI hotel reimbursement (October 31, 2025) and the periodic VAI → U.S.-recipient disbursements. Each of these is a "regular course of commercial conduct or a particular commercial transaction or act" within the meaning of 28 U.S.C. § 1603(d). Private parties routinely engage in each such transaction. *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 614 (1992) (commercial character determined by nature of the act, not purpose; controlling question is whether "the particular actions (whatever the motive behind them) are the type of actions by which a private party engages in trade and traffic or commerce").

2) **Clause Two — Acts Performed in the United States in Connection with Commercial Activity Elsewhere.** PDVSA and Junta Ad Hoc, directly and through their U.S.-territorial agents, perform acts in the United States in connection with PDVSA's broader commercial petroleum operations in Venezuela and elsewhere, within the meaning of 28 U.S.C. § 1605(a)(2) Clause Two. Such acts include, inter alia: (i) U.S.-territorial production, distribution, and promotion of the "Salvemos a CITGO" and "Falsos Opositores" documentary and video publications by and through Defendants' Altamira Cinema Corp. and related Florida-situs media infrastructure (named in the Florida Orange Action; see ¶ 16A), in connection with the PDVSA Enterprise's commercial petroleum operations; (ii) VAI's FARA-registered (Reg. No. 7413) United States-territorial lobbying, communications, and public-relations operations on behalf of

Junta Ad Hoc and PDVSA, formally and publicly acknowledged as United States-territorial agency operations; (iii) WWSC's U.S.-territorial financial-conduit operations involving receipt and transmission of PDVSA-chain funds; (iv) Defendant Sardi's U.S.-territorial legal and strategic-advisory services for PDVSA-chain entities; (v) U.S.-territorial Enterprise witness-intimidation conduct directed at Plaintiffs as federal-forum litigants, including the Delaware Leak (¶ 72), the "Falsos Opositores" campaigns, and sustained social-media defamation infrastructure. Each such U.S.-territory act is "in connection with" PDVSA's commercial petroleum extraction, refining, marketing, and export operations — which operations are paradigmatically commercial within the meaning of *Weltover* and of settled FSIA jurisprudence.

3) **Clause Three — Extraterritorial Acts Causing Direct Effect in the United States.** PDVSA and Junta Ad Hoc perform acts outside United States territory in connection with commercial activity elsewhere, and such acts cause direct effects in the United States within the meaning of 28 U.S.C. § 1605(a)(2) Clause Three. Such extraterritorial acts include, inter alia: (i) board resolutions of PDVSA and Junta Ad Hoc directing governance of U.S.-subsidiary chain entities; (ii) authorization and ratification by PDVSA and/or Junta Ad Hoc of the Enterprise's U.S.-directed conduct targeting Plaintiffs as federal-forum litigants; (iii) the Fundación Simón Bolívar wedding-expense disbursement (~$75,000) as authorized and/or ratified at the instrumentality level, where the funds originated from Venezuelan-situs sources but produced immediate U.S. consequences; (iv) Venezuelan-sourced payment authorizations flowing through VAI to U.S.-territory recipients. Each such extraterritorial act produces as an immediate consequence a direct effect in the United States — the alteration of U.S.

corporate-governance chains; the occurrence of U.S.-territory defamation campaigns; the occurrence of U.S.-territory witness-intimidation conduct; the U.S.-territory receipt of funds and the U.S.-territory interference with federal court proceedings. Under *Weltover*, 504 U.S. at 618, "an effect is 'direct' if it follows 'as an immediate consequence of the defendant's . . . activity,'" and no quantitative minimum is required.

4)   *Nelson* **Distinguished.** The commercial-activity exception applies notwithstanding *Saudi Arabia v. Nelson*, 507 U.S. 349 (1993). *Nelson* held that the exercise of a sovereign's "power of its police" through unique instrumentalities of state coercion (wrongful arrest; imprisonment; torture by state security personnel) is "peculiarly sovereign" and outside Clause One. *Id.* at 361. The conduct here is materially different for three independent reasons. First, the gravamen of Plaintiffs' claims — the conduct that "actually injured" Plaintiffs, under *OBB Personenverkehr AG v. Sachs*, 577 U.S. 27, 33–36 (2015) — is not the exercise of Venezuelan police power. The injuring conduct is (i) corporate-governance engagement of outside counsel to suppress federal-forum litigation; (ii) corporate-expenditure funding of private-actor defamation and public-relations campaigns; (iii) corporate authorization of personal-expense reimbursements and private-purpose charitable-vehicle disbursements; (iv) private-actor witness intimidation through defamatory publication, social-media harassment, and threats of exposure. Private corporate actors routinely engage in each such transaction-type; no unique sovereign means effectuated Plaintiffs' injuries. Second, the instrumentalities of injury here are commercial: U.S.-jurisdiction corporations (Altamira Cinema Corp., Latino Communications LLC, WWSC, VAI, CITGO Petroleum, Freedom for Venezuela Inc., Resistencia Venezolana Corp., all of whom or whose shared-purpose counterparts are

named in the Florida Orange Action; see ¶ 16A); private-citizen amplifiers (the individual Defendants); and private financial conduits (VAI, Si Señor LLC, Fundación Simón Bolívar). The Venezuelan police have no role in and bear no responsibility for the injuring conduct. Third, Junta Ad Hoc de PDVSA does not possess and cannot exercise Venezuelan sovereign police power. The Junta's authority derives from United States sanctions policy and from United States corporate-governance law applied to the Delaware subsidiary chain. Its conduct is therefore commercial in character by operation of the structural framework from which its authority derives.

5) **Bancec / Crystallex II Alter-Ego Framework (Junta Ad Hoc).** Defendant Junta Ad Hoc de PDVSA is, for purposes of this litigation, the alter ego of Defendant PDVSA under *First National City Bank v. Banco Para el Comercio Exterior de Cuba*, 462 U.S. 611 (1983), as applied by the Third Circuit in *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 932 F.3d 126, 140–42 (3d Cir. 2019). Plaintiffs specifically plead: (i) Junta Ad Hoc exercises extensive control over PDVSA's U.S.-subsidiary chain such that a principal-agent relationship exists between PDVSA and Junta with respect to U.S.-directed governance; (ii) Junta Ad Hoc's resources derive from and flow through PDVSA's U.S.-held corporate chain, including PDV Holding dividends and FARA-disclosed receipts; (iii) the documented personal-purpose disbursements — including the ~$75,000 Fundación Simón Bolívar wedding expenditure, the Medina $516.89 hotel reimbursement, and the concealed VAI → WWSC → Sardi compensation channel — reflect Junta/PDVSA resources deployed for the personal interests of individual Defendants rather than for bona fide corporate purposes; and (iv) recognizing Junta Ad Hoc and PDVSA as separate entities would work fraud and injustice on

Plaintiffs as victims of coordinated Enterprise conduct directed and ratified across both entities. The commercial-activity analysis in subparagraphs (a)–(d) above therefore applies to PDVSA through Junta Ad Hoc's conduct and to Junta Ad Hoc through PDVSA's conduct.

6) **FSIA Exceptions NOT Pleaded — Tightened Architecture.** Plaintiffs do **not** plead jurisdiction over Defendants Junta Ad Hoc and PDVSA under (i) the noncommercial-tort exception of 28 U.S.C. § 1605(a)(5); (ii) the expropriation exception of § 1605(a)(3); or (iii) the state-sponsor-of-terrorism exception of § 1605A. The detailed basis for not pleading each exception is set forth at ¶ 52D and is incorporated by reference here. The § 1605(a)(2) commercial-activity exception pleaded at subparagraphs (a)–(d) and at ¶¶ 51A and 52B provides the exclusive jurisdictional anchor as to PDVSA and as to the Junta Ad Hoc to the extent the Junta Ad Hoc is characterized as an FSIA entity. *See Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co.*, 581 U.S. 170 (2017) (a non-frivolous claim of exception is insufficient at the threshold; the FSIA exception relied upon must establish a valid claim under international law and the asserted statutory grounds, which Plaintiffs satisfy through the § 1605(a)(2) pleading); *Republic of Hungary v. Simon*, 604 U.S. ___, 145 S. Ct. 480 (2025) (commingling-tracing requirements for § 1605(a)(3) inapplicable because § 1605(a)(3) is not pleaded); *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428 (1989) (territorial-tort-locus requirements for § 1605(a)(5) inapplicable because § 1605(a)(5) is not pleaded).

25A. **Factual Integration for FSIA Commercial-Activity Analysis.** In support of the commercial-activity exception pleaded at ¶ 25, Plaintiffs specifically incorporate by reference the following factual allegations: (i) ¶¶ 3–4 (private-takeover framing; Enterprise as private-capture

of sovereign-instrumentality resources); (ii) ¶¶ 74–80 (association-in-fact Enterprise structure; cross-entity coordination); (iii) ¶¶ 54–57 (PDV Holding / CITGO Petroleum officer-director authority chain; Sunbiz Exhibit S); (iv) ¶¶ 82–87 (VAI → WWSC corporate-conduit channel; concealed Sardi compensation); (v) ¶¶ 91–93 (Fundación Simón Bolívar wedding disbursement); (vi) ¶ 90 (Medina / VAI hotel reimbursement); (vii) ¶¶ 94–97 (FARA Reg. 7413 and Reg. 6997 acknowledging U.S.-territorial agency); (viii) ¶ 96 (Carrasquero continuing U.S.-designation as VAI "Consultor Estratégico" per April 18, 2026 website evidence); (ix) ¶¶ 98–99 (Enterprise U.S.-territorial defamation and social-media infrastructure); (x) ¶¶ 105–111 (U.S.-directed injuries to Plaintiffs as federal-forum witnesses and business counterparties). Each factual allegation concerns conduct, transactions, authorizations, expenditures, or decisions of a type private corporate parties routinely undertake in ordinary commerce. None concerns the exercise of Venezuelan sovereign police power or any analogous peculiarly sovereign function.

25B. **Controlling Authority Summary.** The FSIA commercial-activity analysis pleaded at ¶¶ 25 and 25A is controlled by the following authorities, each applying to Plaintiffs' favor: *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 614 (1992) (commercial-character test based on nature, not purpose); *OBB Personenverkehr AG v. Sachs*, 577 U.S. 27, 33–36 (2015) (gravamen test examining conduct that actually injured plaintiff); *Saudi Arabia v. Nelson*, 507 U.S. 349 (1993) (distinguishable on grounds set forth in ¶ 25(d)); *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428 (1989) (foreign-sovereign immunity is comprehensive, but the commercial-activity exception is likewise comprehensive where its elements are met); *First National City Bank v. Banco Para el Comercio Exterior de Cuba*, 462 U.S. 611 (1983) (instrumentality alter-ego doctrine); *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 932 F.3d 126 (3d Cir. 2019) (applying Bancec to PDVSA-Venezuela and Junta Ad Hoc-PDVSA

Rodriguez Moreno et al. v. CITGO Petroleum Corporation et al. — Verified Complaint (Rule 8(a) Notice-Pleading Initiating Version)

relationships); *Republic of Austria v. Altmann*, 541 U.S. 677 (2004) (FSIA applied retroactively to pre-enactment conduct where cause of action accrues post-enactment).

25C. **Anticipated FSIA Recharacterization Defenses — Anti-*Helmerich & Payne* / Anti-*Hungary v. Simon* Pleading.** Defendants are anticipated to invoke *Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co.*, 581 U.S. 170 (2017), and *Republic of Hungary v. Simon*, 604 U.S. ___, 145 S. Ct. 480 (2025), in support of a recharacterization defense — arguing that the financial transactions giving rise to FSIA jurisdiction here are merely "instrumental" to inherently sovereign witness-suppression conduct and therefore not commercial activity within § 1605(a)(2). Such argument fails for three independent reasons:

1) **Doctrinal-framework non-transferability.** *Helmerich & Payne* and *Simon* concern the § 1605(a)(3) **expropriation exception**'s commingling-tracing requirement, not the § 1605(a)(2) commercial-activity exception's nature-not-purpose test. The doctrinal frameworks are categorically distinct and not transferable: *Helmerich & Payne* held that a § 1605(a)(3) plaintiff must establish a valid claim of expropriation under international law at the threshold; *Simon* extended this commingling-tracing analysis to the § 1605(a)(3) "exchange" requirement. Neither case modifies the § 1605(a)(2) *Weltover* nature-not-purpose test, which remains the controlling standard for the commercial-activity exception. Plaintiffs do not invoke § 1605(a)(3) (per ¶ 25(f)); accordingly, the *Helmerich & Payne* / *Simon* tracing principle has no application to Plaintiffs' § 1605(a)(2) pleading.

2) ***Weltover* applies to each individual transaction, not aggregate consequences.** Even if the *Helmerich & Payne* / *Simon* tracing principle were extended by analogy to § 1605(a)(2) (which it has not been, and which would require a substantial doctrinal

extension), the gravamen of Plaintiffs' comminglement counts is the pattern of unauthorized blocked-asset transactions — discretionary financial disbursements (Channel Alfa per ¶¶ 101A–101I, Channel Beta per ¶¶ 81A–87, Altamira Cinema per ¶¶ 88–88B, 89–89A), contract performance (FARA-disclosed VAI engagement per ¶ 81A(b)), hospitality and consulting purchasing (Medina hotel reimbursement per ¶ 90), corporate-governance compensation (Sardi PDV Holding directorship per ¶ 82), and false-statement administrative submissions (Carrasquero NSD-5 Amendment per ¶ 94). These transactions are commercial in form regardless of any further consequence to which the proceeds may be applied. *Weltover*'s nature-not-purpose test applies to each individual transaction — and each individual transaction independently satisfies that test, because each is "the type of action[] by which a private party engages in trade and traffic or commerce." *Weltover*, 504 U.S. at 614. The witness-suppression consequences of those transactions — the *Falsos Opositores* video defamation, the *Salvemos a CITGO* documentary promotional architecture, the Eddie Ramirez December 16, 2025 Runrun.es column, the social-media doxing — are downstream injury, not the conduct giving rise to FSIA jurisdiction.

3) ***OBB Personenverkehr AG v. Sachs* gravamen analysis confirms commercial character.** The Supreme Court's gravamen-of-the-claim test in *OBB Personenverkehr AG v. Sachs*, 577 U.S. 27, 33–36 (2015), examines the conduct that "actually injured" the plaintiff. The conduct that actually injured Plaintiffs here — the funding chains, the FARA-misrepresented contracts, the corporate-governance appointments, and the institutional disbursement architecture — are commercial transactions of the type private corporate actors routinely undertake. The Junta Ad Hoc's authority to direct U.S.

subsidiary chain operations derives from United States sanctions policy and from United States corporate-governance law applied to the Delaware subsidiary chain (as detailed at ¶ 25(d) third reason); its conduct is therefore commercial in character by operation of the structural framework from which its authority derives. No exercise of Venezuelan sovereign police power — and no exercise of any peculiarly sovereign function — was the conduct that actually injured Plaintiffs. The witness-suppression conduct, even taken at its most aggressive characterization, was effected through commercial means (corporate disbursements, FARA-registered intermediaries, attorney-personal-account transactions, public-affairs documentary production); it was not effected through Venezuelan sovereign instrumentalities of state coercion. *Nelson*, 507 U.S. at 361 (peculiarly sovereign functions are those that "no private person can lawfully discharge"); the conduct here — corporate disbursements through commercial intermediaries — is precisely the kind of conduct private parties routinely discharge.

26. **Subject-matter jurisdiction over Defendant Junta Ad Hoc de PDVSA**, pleaded in the alternative under Federal Rule of Civil Procedure 8(d)(2) on two alternative bases: (i) under 28 U.S.C. § 1330(a), on the premise that Junta Ad Hoc is an "agency or instrumentality of a foreign state" within § 1603(b), subject to the FSIA exceptions identified in ¶ 25; or (ii) under federal-question and supplemental jurisdiction as a United States-domiciled private association whose continuous, substantial, and systematic United States-based operational presence places it outside the FSIA framework. Under the first framing, Junta Ad Hoc is alternatively subject to this Court's jurisdiction as the alter ego of PDVSA, applying the multi-factor *Bancec / Crystallex II* alter-ego framework derived from *First National City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611 (1983) (announcing the alter-ego principles governing

Rodriguez Moreno et al. v. CITGO Petroleum Corporation et al. — Verified Complaint (Rule 8(a) Notice-Pleading Initiating Version)

instrumentalities of foreign states without prescribing a "mechanical formula," *id.* at 633), and as codified in five factors at 28 U.S.C. § 1610(g)(1)(A)–(E) (drawn from post-*Bancec* lower-court jurisprudence and incorporated by Congress in the National Defense Authorization Act for Fiscal Year 2008, Pub. L. No. 110-181, § 1083); *see also Rubin v. Islamic Republic of Iran*, 583 U.S. ___, 138 S. Ct. 816, 823–27 (2018) (interpreting § 1610(g) as not providing a freestanding basis for attachment, and describing the *Bancec* five-factor framework as previously developed by the Courts of Appeals). The framework was applied to the Venezuela ↔ PDVSA relationship in *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 932 F.3d 126, 140–48 (3d Cir. 2019), *cert. denied*, 140 S. Ct. 2762 (2020) (mem.) ("*Crystallex II*"). Plaintiffs candidly acknowledge that *Crystallex II* established the alter-ego status of PDVSA as to the Bolivarian Republic of Venezuela, and that the Third Circuit has not yet addressed whether a sovereign-appointed instrumentality (the Junta Ad Hoc) is itself the alter ego of PDVSA. Plaintiffs plead the *Crystallex II* multi-factor extension on the following factual bases supporting alter-ego status as to PDVSA → Junta Ad Hoc: (a) **economic control** — the Junta Ad Hoc was constituted by sovereign appointment to direct PDVSA's U.S.-located operations and assets, and exercises authority over the disbursement of those assets through PDV Holding and CITGO Petroleum; (b) **profit-sharing and asset commingling** — the Junta Ad Hoc's authority over Venezuelan-state petroleum assets held through PDVSA's U.S. corporate chain reflects the same kind of integrated economic control that supported the *Crystallex II* alter-ego finding; (c) **management direction** — Junta Ad Hoc's governance over PDV Holding and CITGO Petroleum board appointments and operational direction reflects day-to-day management characteristic of *Bancec* alter-ego status; (d) **value extraction** — the Enterprise's documented use of corporate-chain disbursements (VAI→WWSC; Altamira Cinema; Fundación Simón Bolívar) for purposes

outside arm's-length commercial dealings reflects the kind of state-purpose value extraction that supported *Crystallex II*'s findings; and (e) **separateness as defense to U.S. obligations** — the use of the Junta Ad Hoc / PDVSA / corporate-chain separateness as a defense to U.S. judgment-creditor and witness-suppression claims aligns with the *Crystallex II* and *Bancec* concern that nominal separateness may not be permitted to defeat U.S. obligations. To the extent the Court determines that the *Bancec / Crystallex II* multi-factor alter-ego analysis does not extend to the PDVSA → Junta Ad Hoc relationship, Plaintiffs maintain jurisdiction over Junta Ad Hoc under the second alternative framing identified above (United States-domiciled private association outside the FSIA framework). Plaintiffs note that the "instrumentality" characterization pleaded in this paragraph is analytically distinct from — and pleaded as an alternative to under Rule 8(d)(2) — the "organ of a foreign state" characterization invoked at ¶ 160(a) for TVPA color-of-foreign-law purposes; the two characterizations may be pleaded in the alternative consistent with the FSIA's nested categories under 28 U.S.C. § 1603(b)(2) (organ) and § 1603(b)(3) (entity that is a separate legal person).

27. **Supplemental jurisdiction under 28 U.S.C. § 1367(a)** over Counts X, XI, and XII, because these claims arise from a common nucleus of operative fact with the claims within the Court's original jurisdiction. *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966). Section 1367(c) declination is inappropriate: Delaware common-law tortious interference is well-established Delaware doctrine familiar to this Court; Venezuelan Código Civil Artículos 1185 and 1196 are foundational provisions of the 1942 Civil Code with continuous regime-independent pre-2017 jurisprudence, substantively comparable to the civil codes of Spain, France, and Italy; foreign-law and state-law claims do not substantially predominate over federal claims; retention promotes judicial economy. *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343 (1988); *Hedges v.*

Rodriguez Moreno et al. v. CITGO Petroleum Corporation et al. — Verified Complaint (Rule 8(a) Notice-Pleading Initiating Version)

*Musco*, 204 F.3d 109 (3d Cir. 2000).

28. **Diversity jurisdiction under 28 U.S.C. § 1332(a)(2)** pled in the alternative. Plaintiffs are citizens of foreign states; Defendants include Delaware-incorporated corporations and foreign-state entities. Amount in controversy for each Plaintiff exceeds $75,000, exclusive of interest and costs.

*B. Personal Jurisdiction*

29. **General jurisdiction over the Delaware-incorporated corporate Defendants** — CITGO Petroleum Corporation, PDV Holding, Inc., and Worldwide Strategic Consultants LLC — by virtue of their Delaware incorporation/formation. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014); *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915 (2011).

30. **FSIA personal jurisdiction over PDVSA and Junta Ad Hoc de PDVSA** under 28 U.S.C. § 1330(b). The constitutional-nexus requirement of *Weltover*, 504 U.S. at 619–20, is satisfied by the commercial-activity and noncommercial-tort exceptions as pled in ¶ 25.

30A. **Specific Personal Jurisdiction Over the Individual Defendants Under Calder-Walden Effects Test.** Each individual Defendant is a citizen and resident of the United States. **Defendants Wilhelm, Cardenas Garcia, Vera, and Jorda are United States citizens and residents of the State of Texas. Defendants Sardi and Medina are residents of the State of Florida. Defendant Carrasquero is a resident of the State of Florida (see ¶ 60). Defendant Viera-Blanco is a resident of the State of Florida (Doral, Miami-Dade County) (see ¶¶ 12, 61).** As to each individual Defendant, this Court possesses **specific personal jurisdiction** under the effects test recognized in *Calder v. Jones*, 465 U.S. 783, 788–90 (1984), and *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 & n.13 (1984), as construed and applied by the Third Circuit in *IMO Industries, Inc. v. Kiekert AG*, 155 F.3d 254, 265–66 (3d Cir. 1998) (Calder

requires intentional act, expressly aimed at the forum, with the brunt of the harm suffered in the forum and known by the defendant to be likely suffered there), and as constrained by *Walden v. Fiore*, 571 U.S. 277, 284–86 (2014) (the relevant contacts must be the defendant's own contacts with the forum State, not contacts with persons who reside there). Each individual Defendant has (a) committed intentional acts (b) expressly aimed at the State of Delaware (c) causing harm that the Defendant knew, or should have known, was likely to be suffered in Delaware. The Defendants' contacts with Delaware are the **Defendants' own** contacts — independent of any Plaintiffs' Delaware residence — and consist of the conduct enumerated in ¶ 30B below.

**30B. Defendant-Specific Delaware-Directed Conduct.** Each individual Defendant identified at ¶ 30A engaged in the following Delaware-directed conduct, satisfying *Walden v. Fiore*'s requirement that contacts arise from the Defendant's own forum-state activity: (a) each individual officer/director Defendant exercised officer- or director-level decisional authority over the Delaware-incorporated corporate Defendants (CITGO Petroleum, PDV Holding, WWSC), acting through Delaware-state corporate governance machinery and producing Delaware-state legal effects; (b) each individual Defendant participated in or directed the Enterprise's blocked-property disbursement chain that originated, transited through, or terminated in Delaware-incorporated corporate entities — the VAI → WWSC → Sardi compensation chain (¶¶ 83–87), the Altamira Cinema funding chain (¶¶ 89–90), and related Delaware-corporate-pyramid disbursements (¶¶ 91, 91A–91E); (c) each individual Defendant participated in or directed the Enterprise's post-May-16-2025 retaliation against Plaintiffs in connection with the Anchor Case and this present action — both pending in this Court — knowing that the retaliation would have effects in Delaware on Delaware-pending federal litigation; and (d) Carrasquero specifically submitted the materially false April 7, 2026 NSD-5 Amendment to the United States Department

of Justice (¶¶ 94–97), constituting intentional conduct expressly aimed at U.S. federal governmental processes that this Court will exercise jurisdiction over in this action, and continues operating the @lucioquincio amplification vehicle, which targets Delaware-pending Anchor Case witnesses and parties ; **(e) Walden v. Fiore Anti-Defense Anchor.** Personal jurisdiction over each non-FSIA Defendant is grounded in conduct directed by that Defendant at the District of Delaware, not in Plaintiffs' contacts with this forum. *Walden v. Fiore*, 571 U.S. 277 (2014), requires that the relationship between defendant, forum, and litigation arise from contacts "the defendant himself creates with the forum State." That requirement is satisfied here as to each non-FSIA Defendant by reference to that Defendant's own Delaware-directed conduct — including the receipt of VAI → WWSC wires by Delaware-incorporated WWSC (¶¶ 50, 83); the Sardi appointment as Director of Delaware-incorporated PDV Holding (¶ 82); the Wilhelm/Cardenas Garcia/Vera/Jorda corporate-officer-level decision-making at the Delaware-incorporated PDV Holding and CITGO Petroleum chain (¶¶ 54–57); and the FARA-disclosed agency-of-foreign-principal operations conducted through and on behalf of the Delaware corporate chain (¶¶ 81A, 121C). Plaintiffs' foreign residences (¶¶ 40–46) are immaterial to this analysis under *Walden*; **(f) PDV Holding's FARA Registration as an Independent Specific-Jurisdiction Anchor.** Defendant PDV Holding's status as a FARA registrant (Reg. No. 6997) and PDV Holding's September 30, 2025 supplemental FARA filing disclosing the Sardi directorship at the Delaware-incorporated PDV Holding constitute conduct by PDV Holding itself, directed at and concerning Delaware-corporate-governance matters of the Delaware-incorporated PDV Holding. Personal jurisdiction over PDV Holding in this District is therefore separately supported by PDV Holding's own FARA-disclosed conduct concerning its Delaware corporate operations, independent of any contacts attributable to other Defendants

under *Walden*; **(g) Viera-Blanco's Delaware-Directed Conduct as Independent Calder Anchor.** Defendant Viera-Blanco's specific personal-jurisdiction anchor in this District is established by his May 24, 2024 publication on Platform X expressly disclosing the court-sealed identity of Plaintiff Rodriguez Moreno (an anonymous litigant in the Anchor Case before this Court), in violation of this Court's February 9, 2024 sealing order. The specific verbatim content of the May 24, 2024 publication, including the explicit reference to the U.S. court-sealed proceeding, is preserved on the public record and to be filed concurrently as **Exhibit X** (Twitter post screenshot, archive timestamp, and authentication declaration); that publication includes specific Delaware-targeting content sufficient to satisfy *Walden v. Fiore*'s requirement that the defendant "himself" create contacts with the forum State. That publication constitutes the paradigmatic *Calder v. Jones* intentional act: (i) it was an intentional act undertaken by Defendant Viera-Blanco; (ii) it was expressly aimed at the District of Delaware, in that the Twitter post specifically referenced the U.S. court-sealed proceeding — i.e., the Anchor Case pending in this Court (No. 1:23-cv-00989-JLH) — by reference to the sealing order, the sealed-litigant identities, and the Delaware-pending federal civil action context, and was directed at undermining the integrity of this Court's sealing order; (iii) it caused harm that Defendant Viera-Blanco knew, or should have known, was likely to be suffered in Delaware, where the Anchor Case was pending and where this Court's sealing-order protections were operative; and (iv) Defendant Viera-Blanco's continuing post-May-16-2025 ratification of and refusal to retract the disclosure, combined with his continuing post-March-2026 retention of the approximately $75,000 Fundación Simón Bolívar de CITGO disbursement (¶¶ 91–93) — proceeds derived from the Delaware-incorporated CITGO/PDVSA corporate pyramid — establish continuing Delaware-directed conduct. Per *IMO Industries, Inc. v. Kiekert AG*, 155 F.3d 254, 265–66 (3d

Cir. 1998), and *Walden v. Fiore*, 571 U.S. 277, 284–86 (2014), each of these contacts is a contact created by Defendant Viera-Blanco *himself* with this District (the May 24, 2024 publication targeting this Court's sealed proceeding; the post-May-2025 retention of Delaware-corporate-pyramid-derived funds), independent of any contacts arising from Plaintiffs' own residence or activities. *See also Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 & n.13 (1984).

**30C. Fiduciary Shield Doctrine — Inapplicable.** To the extent any individual Defendant invokes the so-called "fiduciary shield" or "corporate shield" doctrine to argue that conduct undertaken in a corporate or officer capacity cannot supply specific personal jurisdiction over the individual, that doctrine is unavailable as a constitutional matter in this Court. The United States Supreme Court has expressly rejected "the suggestion that employees who act in their official capacity are somehow shielded from suit in their individual capacity." *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13 (1984); *see also Calder v. Jones*, 465 U.S. at 790 ("status as employees does not somehow insulate them from jurisdiction"). The Third Circuit follows the majority view that the fiduciary shield doctrine is not required by the Due Process Clause and accordingly does not constrain personal jurisdiction over corporate officers acting in their official capacity. *See Urquhart-Bradley v. Mobley*, 964 F.3d 36, 44–47 (D.C. Cir. 2020) (cataloguing the Third, Fourth, Ninth, Tenth, and Eleventh Circuits as rejecting fiduciary shield as a Due Process matter). Even were the doctrine doctrinally available, it would not protect the individual Defendants here for at least three independent reasons: (i) Plaintiffs allege that each individual Defendant **personally and intentionally committed** the conduct giving rise to liability — including witness intimidation, sanctions evasion, court-access frustration, and First Amendment retaliation — and Plaintiffs are not relying on imputation of corporate conduct to establish

Rodriguez Moreno et al. v. CITGO Petroleum Corporation et al. — Verified Complaint (Rule 8(a) Notice-Pleading Initiating Version)

individual jurisdiction; (ii) the so-called "intentional tort" or "alter ego" exceptions to fiduciary shield are squarely satisfied because Plaintiffs allege intentional torts and personally beneficial conduct (the VAI → WWSC → Sardi compensation chain, the October 31, 2025 Medina hotel reimbursement, and similar personal-benefit disbursements at ¶¶ 82–93); and (iii) Delaware courts in particular have grown deeply skeptical of the fiduciary shield doctrine, with recent Delaware Superior Court authority describing it as "at best on life support." Plaintiffs therefore do not need to satisfy any fiduciary-shield-doctrine threshold; specific personal jurisdiction lies under ¶¶ 30A–30B as a matter of straightforward Calder-Walden-Keeton-IMO Industries application.

**30D. Daimler v. Bauman Compliance — General Jurisdiction Confined to Domiciliary/Incorporation Defendants.** Plaintiffs do **not** invoke general jurisdiction over any individual Defendant whose state of domicile is outside Delaware. Specifically, Plaintiffs do not invoke general jurisdiction over Wilhelm, Cardenas Garcia, Vera, Jorda (Texas domiciliaries), or over Sardi, Medina, Carrasquero (Florida domiciliaries) under *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). General personal jurisdiction over those individual Defendants would lie, if at all, in Texas or Florida — but those forums lack the jurisdictional anchors and substantive connections to Delaware-corporate-pyramid conduct that this Court possesses. For PDVSA and Junta Ad Hoc de PDVSA, personal jurisdiction is supplied by FSIA § 1330(b) per ¶ 30. For each individual Defendant, personal jurisdiction is supplied by the Calder-Walden-Keeton-IMO Industries specific-jurisdiction framework per ¶¶ 30A–30B and is not impaired by any fiduciary-shield-doctrine objection per ¶ 30C. For the Delaware-incorporated corporate Defendants (CITGO Petroleum, PDV Holding, WWSC), general personal jurisdiction lies under *Daimler*, 571 U.S. at 137, by virtue of their Delaware incorporation. *See Goodyear Dunlop Tires*

Rodriguez Moreno et al. v. CITGO Petroleum Corporation et al. — Verified Complaint (Rule 8(a) Notice-Pleading Initiating Version)

*Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (paradigm forums for general jurisdiction over corporations are place of incorporation and principal place of business).

**30E. Independent and Sufficient Basis: RICO Nationwide Service of Process.** Independent of and supplementary to the specific-jurisdiction analysis at ¶¶ 30A–30B, this Court possesses personal jurisdiction over each individual Defendant on Counts I and II (RICO §§ 1962(c) and 1962(d)) by operation of RICO's nationwide service of process provisions, 18 U.S.C. § 1965(b) and (d), as construed in *Laurel Gardens, LLC v. McKenna*, 948 F.3d 105, 118–24 (3d Cir. 2020). Because each individual Defendant is a United States resident — Texas residents Wilhelm, Cardenas Garcia, Vera, and Jorda; Florida residents Sardi, Medina, and Carrasquero — each is plainly within the territorial reach of nationwide service, and the constitutional touchstone for nationwide-service jurisdiction is satisfied by aggregate United States contacts (which each Defendant possesses by virtue of U.S. residence and U.S.-directed conduct). The Court therefore possesses RICO-nationwide-service jurisdiction over each individual Defendant for Counts I and II independent of the Calder-Walden specific-jurisdiction analysis above, providing a separate and sufficient personal-jurisdiction basis as to those Counts. To the extent any individual Defendant resists specific jurisdiction over non-RICO Counts (Counts III, IV, V, VI, IX, X, XI, XII), the Court may exercise pendent personal jurisdiction over those Counts as to each such Defendant on the basis of the common nucleus of operative fact giving rise to the RICO and non-RICO claims. *See, e.g., Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1180–81 (9th Cir. 2004) (recognizing pendent personal jurisdiction over related claims arising from a common nucleus of operative fact); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1056 (2d Cir. 1993) (same).

33. **RICO nationwide service of process under 18 U.S.C. § 1965(b) and (d)** supplies personal

jurisdiction over all Defendants for Counts I and II. *Laurel Gardens, LLC v. McKenna*, 948 F.3d 105, 118–23 (3d Cir. 2020).

33A. **§ 1965(b) Ends-of-Justice Rationale.** The "ends of justice" requirement of 18 U.S.C. § 1965(b) is affirmatively satisfied. The Enterprise's apex-direction structure operates from Miami, Caracas, and Washington, D.C., with disbursement vehicles registered in multiple districts. The Enterprise's gravamen conduct, however, targets (i) the Anchor Case pending before this Court; (ii) the Delaware-incorporated corporate-chain Defendants whose corporate-governance affairs are conducted in this District; and (iii) the Delaware asset-ecosystem litigation (*Crystallex, OI European Group*, and related proceedings) over which this District has primary supervisory authority. No alternative district presents a stronger consolidation of the Enterprise's U.S.-conduct cluster. Adjudication in this District serves the ends of justice by avoiding multi-district fragmentation of a single Enterprise's racketeering pattern. *PT United Can Co. v. Crown Cork & Seal Co.*, 138 F.3d 65, 71–72 (2d Cir. 1998) (cited as persuasive); *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 626–28 (4th Cir. 1997) (cited as persuasive).

34. **Federal long-arm jurisdiction under Fed. R. Civ. P. 4(k)(2)** (alternative basis only). Rule 4(k)(2) supplies personal jurisdiction over any Defendant whose claim arises under federal law and who is not subject to personal jurisdiction in any state, provided the exercise of jurisdiction is consistent with the United States Constitution and laws. *BP Chems. Ltd. v. Formosa Chem. & Fibre Corp.*, 229 F.3d 254, 258 (3d Cir. 2000). Plaintiffs note that Rule 4(k)(2) is **not** the operative basis for personal jurisdiction over the seven United-States-resident individual Defendants (Wilhelm, Cardenas Garcia, Vera, Jorda, Sardi, Medina, Carrasquero), each of whom is independently subject to general personal jurisdiction in his state of domicile (Texas or Florida) and to specific personal jurisdiction in this Court under ¶¶ 30A–30B, and is

Rodriguez Moreno et al. v. CITGO Petroleum Corporation et al. — Verified Complaint (Rule 8(a) Notice-Pleading Initiating Version)

independently subject to RICO nationwide-service jurisdiction under ¶ 30E. Plaintiffs preserve Rule 4(k)(2) as an alternative basis to be invoked, if at all, only against any Defendant whose state-court contacts are later determined to be insufficient under specific-jurisdiction analysis and who is not subject to general personal jurisdiction in any state.

## C. Venue

35. Venue lies in this District under 28 U.S.C. § 1391(b)(1) because the corporate Defendants CITGO Petroleum, PDV Holding, and WWSC reside in this District within the meaning of § 1391(c)(2).

36. Venue lies under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred in this District: the Enterprise's conduct targeted the Anchor Case pending before this Court, including the violation of this Court's sealing order; the Delaware-incorporated Defendants' conduct occurred in substantial part in Delaware; the Enterprise's interference with Plaintiffs' Delaware asset-ecosystem litigation positions occurred in Delaware.

37. FSIA venue for PDVSA and Junta Ad Hoc lies under 28 U.S.C. § 1391(f)(3) and (f)(4).

38. RICO-specific venue lies under 18 U.S.C. § 1965(a).

## D. Related-Case Designation

39. See ¶ 18 above (contingent related-case designation).

## III. PARTIES

### A. Plaintiffs

40. **Plaintiff JORGE ALEJANDRO RODRIGUEZ MORENO** (Lead Plaintiff) is a Venezuelan national currently residing in Switzerland under the protection of the Swiss government as a political exile. He holds a Master of Science degree from Tulane University. He is a former PDVSA contractor who was systematically targeted by the Venezuelan regime for his

association with labor-rights claimants and for his oil-sector technical expertise. He is the verified complainant in the Anchor Case and was the primary target of the May 24, 2024 unauthorized disclosure of sealed identities in violation of this Court's February 9, 2024 sealing order (the "Delaware Leak"). He is not a citizen or lawful permanent resident of the United States. **Plaintiff Rodriguez Moreno further pleads that one or more of his direct family dependants have suffered, and continue to suffer, severe and lasting psychological harm including documented post-traumatic stress disorder ("PTSD") attributable to the Enterprise's ongoing persecution conduct pleaded throughout this Complaint. Said direct family dependants relocated to Switzerland in connection with the persecution conduct, yet the lasting effects of the Enterprise's persecution have continued and continue to date to affect them in their place of residence outside Venezuela — establishing the transnational reach and durable harm of the captioned Defendants' coordinated U.S.-directed and Enterprise-coordinated conduct, which has reached and continues to reach Plaintiff Rodriguez Moreno's direct family dependants notwithstanding their relocation to a safe-haven jurisdiction. The transnational and post-relocation persistence of the harm is independently relevant to (i) Count VI (TVPA) severity / mental-pain-and-suffering analysis, (ii) Count IX (*Christopher v. Harbury*) court-access-deterrent analysis, (iii) Count XII (Venezuelan *daños morales*) moral-damages quantification, and (iv) RICO (Counts I–II) closed-ended and open-ended continuity analysis. Plaintiffs reserve the specific identification, documentation, and damages quantification of such direct-family-dependant PTSD and related psychological-harm impacts for separate proceedings or for an appropriate later procedural juncture in this action under protective order.**

41. **Plaintiff IVAN R. FREITES C.** is a Venezuelan national currently residing in Coro, Falcón,

Venezuela. He is the General Secretary of SUTPGEF, a Venezuelan oil-sector union, and a protected labor leader under Venezuelan Constitution Artículo 95, LOTTT Artículo 442, and ratified ILO Conventions 87 and 98. He holds documented chronic cardiac conditions that medically foreclose international travel; supporting medical records will be produced under appropriate protective order. He was exposed to permanent displacement by the post-May-2025 amplification of his asylum-status information through the Enterprise's social-media and documentary-amplification campaigns. **Plaintiff Freites further pleads that one or more of his direct family dependants have suffered, and continue to suffer, severe and lasting psychological harm including documented post-traumatic stress disorder ("PTSD") attributable to the Enterprise's ongoing persecution conduct pleaded throughout this Complaint. Said direct family dependants relocated to Colombia in connection with the persecution conduct, yet the lasting effects of the Enterprise's persecution have continued and continue to date to affect them in their place of residence outside Venezuela — establishing the transnational reach and durable harm of the captioned Defendants' coordinated U.S.-directed and Enterprise-coordinated conduct, which has reached and continues to reach Plaintiff Freites's direct family dependants notwithstanding their relocation. The transnational and post-relocation persistence of the harm is independently relevant to (i) Count VI (TVPA) severity / mental-pain-and-suffering analysis, (ii) Count IX (*Christopher v. Harbury*) court-access-deterrent analysis, (iii) Count XII (Venezuelan *daños morales*) moral-damages quantification, and (iv) RICO (Counts I–II) closed-ended and open-ended continuity analysis. Plaintiffs reserve the specific identification, documentation, and damages quantification of such direct-family-dependant PTSD and related psychological-harm impacts for separate proceedings or for an appropriate later**

Rodriguez Moreno et al. v. CITGO Petroleum Corporation et al. — Verified Complaint (Rule 8(a) Notice-Pleading Initiating Version)

**procedural juncture in this action under protective order.**

42. **Plaintiff MIGUEL ENRIQUE OTERO CASTILLO** is a dual Venezuelan-Spanish national currently residing in Spain as a political exile. He is the President of *El Nacional*, the historic Venezuelan daily newspaper. PDVSA cancelled all contracts with *El Nacional* in 2002 in political retaliation. He, his family, and his *El Nacional* journalists have been attacked by PDVSA-financed "colectivos" in Venezuela. Plaintiff Otero holds documented cardiac conditions whose aggravation by the defamation, witness-suppression, and harassment conduct of the captioned Defendants giving rise to liability in this action is pleaded as an element of his damages on the Counts in which he is a plaintiff. Supporting medical records will be produced under appropriate protective order. Plaintiff Otero further pleads, on a reserved basis, that documented cardiac and related health conditions of one or more of his direct family dependants have been aggravated by the captioned Defendants' conduct giving rise to liability in this action; Plaintiffs reserve the specific identification, documentation, and damages quantification of such direct-family-dependant health impacts for separate proceedings or for an appropriate later procedural juncture in this action under protective order.

43. **[¶ 43 RESERVED]**

44. **Plaintiff ANGEL MORENO** is a Venezuelan national currently residing in Venezuela. He is the President of FAMOA C.A. and a victim of the 2002–2003 PDVSA Tascón-List purge. He holds an engineering degree in Agricultural Sciences from the Universidad de Belem, Brasil. He is a former PDVSA contractor who was systematically excluded of all and any access to the Venezuelan oil industry facilities or contracts by the PDVSA authorities for being against the Chavez and Maduro Administrations. He is a verified complainant in the Anchor Case and was a victim target of the May 24, 2024 unauthorized disclosure of sealed identities in violation of this

Rodriguez Moreno et al. v. CITGO Petroleum Corporation et al. — Verified Complaint (Rule 8(a) Notice-Pleading Initiating Version)

Court's February 9, 2024 sealing order (the "Delaware Leak"). He is not a citizen or lawful permanent resident of the United States. **Plaintiff Moreno further pleads to have suffered, and continue to suffer, severe and lasting psychological harm including documented post-traumatic stress disorder ("PTSD") attributable to the disclosure of his sealed identity by the Enterprise and the Enterprise's conduct pleaded throughout this Complaint. Plaintiff Moreno was forced to relocate temporarily within Venezuela in connection with the persecution that arose after his identity was revealed by the Enterprise, and the lasting effects of the Enterprise's disclosure of his identity (the Delaware Leak) have continued and continue to date to affect them in their place of residence outside Venezuela — establishing the transnational reach and durable harm of the captioned Defendants' coordinated U.S.-directed and Enterprise-coordinated conduct, which has reached and continues to reach Plaintiff Moreno. The post-relocation persistence of the harm is independently relevant to (i) Count VI (TVPA) severity / mental-pain-and-suffering analysis, (ii) Count IX (*Christopher v. Harbury*) court-access-deterrent analysis, (iii) Count XII (Venezuelan *daños morales*) moral-damages quantification, and (iv) RICO (Counts I–II) closed-ended and open-ended continuity analysis. Plaintiffs reserve the specific identification, documentation, and damages quantification of such PTSD and related psychological-harm impacts for separate proceedings or for an appropriate later procedural juncture in this action under protective order.**

41. **Plaintiff IVAN R. FREITES C.** is a Venezuelan national currently residing in Coro, Falcón, Venezuela. He is the General Secretary of SUTPGEF, a Venezuelan oil-sector union, and a protected labor leader under Venezuelan Constitution Artículo 95, LOTTT Artículo 442, and ratified ILO Conventions 87 and 98. He holds documented chronic cardiac conditions that

medically foreclose international travel; supporting medical records will be produced under appropriate protective order. He was exposed to permanent displacement by the post-May-2025 amplification of his asylum-status information through the Enterprise's social-media and documentary-amplification campaigns. **Plaintiff Freites further pleads that one or more of his direct family dependants have suffered, and continue to suffer, severe and lasting psychological harm including documented post-traumatic stress disorder ("PTSD") attributable to the Enterprise's ongoing persecution conduct pleaded throughout this Complaint. Said direct family dependants relocated to Colombia in connection with the persecution conduct, yet the lasting effects of the Enterprise's persecution have continued and continue to date to affect them in their place of residence outside Venezuela — establishing the transnational reach and durable harm of the captioned Defendants' coordinated U.S.-directed and Enterprise-coordinated conduct, which has reached and continues to reach Plaintiff Freites's direct family dependants notwithstanding their relocation. The transnational and post-relocation persistence of the harm is independently relevant to (i) Count VI (TVPA) severity / mental-pain-and-suffering analysis, (ii) Count IX (*Christopher v. Harbury*) court-access-deterrent analysis, (iii) Count XII (Venezuelan *daños morales*) moral-damages quantification, and (iv) RICO (Counts I–II) closed-ended and open-ended continuity analysis. Plaintiffs reserve the specific identification, documentation, and damages quantification of such direct-family-dependant PTSD and related psychological-harm impacts for separate proceedings or for an appropriate later procedural juncture in this action under protective order.**

45. **Plaintiff PEDRO O. MORA** is a Venezuelan national currently residing in Saudi Arabia as a political exile. He is a former PDVSA contractor and a victim of the 2002–2003 PDVSA

Tascón-List purge and a victim of the Enterprise's disclosure of his identity.

46. **Plaintiff JESUS A. M. CARRILLO** is a Venezuelan national currently residing in Venezuela. He is a former PDVSA contractor and a victim of the 2002–2003 PDVSA Tascón-List purge and a victim of the Enterprise's disclosure of his identity..

47. Plaintiffs ANGEL MORENO, PEDRO O. MORA, JESUS A. M. CARRILLO, and JORGE ALEJANDRO RODRIGUEZ MORENO (formerly designated 'Plaintiff 3' / 'Jorge Rodriguez, III' in the Anchor Case) have proceeded under pseudonym protection since entry of this Court's February 9, 2024 Memorandum Order in the Anchor Case (D.I. 37) and are the subject of a concurrent Local Rule 5.3 motion to proceed under seal in this action. Plaintiffs IVAN R. FREITES C. and MIGUEL ENRIQUE OTERO CASTILLO appeared by full identity in the Anchor Case (per D.I. 37 caption) and elect to proceed by full identity in this action. Their election does not waive any other Plaintiff's pseudonym status.

47A. **Operative Regulatory Status as of Filing.** As of the filing date of this Complaint, the regulatory architecture against which the predicate acts alleged herein were committed has been substantially modified. By Executive Order 14373 (January 9, 2026), titled "Safeguarding Venezuelan Oil Revenue for the Good of the American and Venezuelan People," the President established a mechanism for U.S.-Treasury-held accounts to receive Venezuelan oil-revenue payments to blocked entities. By General License 52 (March 18, 2026), OFAC authorized all transactions with Petróleos de Venezuela, S.A. ("PDVSA") and its majority-owned subsidiaries that were previously prohibited under Executive Order 13884; PDVSA nonetheless remains designated on OFAC's Specially Designated Nationals and Blocked Persons List. By a series of cascading General Licenses (GL 46B, GL 47, GL 48A, GL 49A, GL 50A, GL 56, and GL 57, all issued or amended between January 2026 and April 2026), OFAC has further authorized broad

categories of activity in Venezuela's oil and gas sector. On or about January 3, 2026, the United States effected the removal from power of Nicolás Maduro Moros, who had purported to serve as President of the Bolivarian Republic of Venezuela through January 2, 2026. The predicate acts alleged in this Complaint were committed during the period in which Executive Order 13884 and the implementing regulations at 31 C.F.R. Part 591 prohibited the conduct in question, and the resulting injuries to Plaintiffs accrued during that period. The post-filing-date regulatory developments described in this paragraph (i) do not retrospectively legalize the predicate acts; (ii) do not abate Plaintiffs' accrued causes of action; and (iii) do not affect the Court's jurisdiction over this action. Plaintiffs reserve the right to supplement this Complaint to address further regulatory developments that may occur between the filing date and trial.

## B. Defendants — Corporate and Sovereign

47B. **IEEPA Statute-of-Limitations Extension.** Plaintiffs note that the statute of limitations for civil enforcement of IEEPA violations under 50 U.S.C. § 1705 was extended from five years to ten years by Pub. L. 118-50, div. D, title I, § 3111(a), April 24, 2024 (21st Century Peace through Strength Act), codified at 50 U.S.C. § 1705(d). This extension applies to all IEEPA violations alleged herein as the SUA basis for the 18 U.S.C. § 1956(c)(7)(D) money-laundering RICO predicates pleaded at ¶ 122A and Count I. The IEEPA violations alleged at ¶¶ 82–104, all of which were committed during the May 16, 2025–April 27, 2026 operative period of EO 13884 and 31 C.F.R. Part 591, are well within the 10-year IEEPA enforcement window and supply current, valid SUA predicates for the § 1956 / § 1957 money-laundering RICO predicates regardless of the post-January-3-2026 OFAC general-license framework described at ¶ 47A.

48. **Defendant CITGO PETROLEUM CORPORATION** ("CITGO Petroleum") is a Delaware corporation with its principal place of business in Houston, Texas. CITGO Petroleum is a

wholly-owned indirect subsidiary of PDVSA through Defendant PDV Holding, Inc., and CITGO Holding, Inc. (f/k/a PDV America, Inc.) (non-Defendant here; see ¶ 17). CITGO Petroleum has been at all times relevant to the predicate acts alleged herein a "blocked person" within the meaning of Executive Order 13884 (84 Fed. Reg. 38843, Aug. 7, 2019), and OFAC's 50-percent Rule at 31 C.F.R. § 591.406; the scope of authorized transactions involving PDVSA-controlled entities has been substantially modified by Treasury action since January 2026, as set forth at ¶ 47A. CITGO Petroleum was never captioned as a party in the Florida Federal Action. Named on Counts I, II, III, IV, V, IX, X, XI, and XII.

49. **Defendant PDV HOLDING, INC.** ("PDV Holding") is a Delaware corporation. PDV Holding is wholly owned by Defendant Junta Ad Hoc de PDVSA. PDV Holding has been at all relevant times a "blocked person" within the meaning of Executive Order 13884 (84 Fed. Reg. 38843, Aug. 7, 2019), and OFAC's 50-percent Rule at 31 C.F.R. § 591.406, throughout the period in which the predicate acts alleged herein were committed; the scope of authorized transactions involving PDVSA-controlled entities has been substantially modified by Treasury action since January 2026, as set forth at ¶ 47A. For purposes of this Complaint, Plaintiffs allege that PDV Holding is the instrumentality and alter ego of PDVSA, and therefore — by transitive operation through *First National City Bank v. Banco Para el Comercio Exterior de Cuba*, 462 U.S. 611 (1983) — of the Bolivarian Republic of Venezuela, on the basis of the *Bancec* presumption-rebuttal factors as developed in this Circuit. *See Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 932 F.3d 126 (3d Cir. 2019), *cert. denied*, 140 S. Ct. 2762 (2020) (mem.) (PDVSA found to be alter ego of Venezuela); *OI European Group B.V. v. Bolivarian Republic of Venezuela*, 73 F.4th 157 (3d Cir. 2023), *cert. denied*, 144 S. Ct. 549 (2024) (same; reaffirming *Crystallex*). The further question whether the *Bancec* presumption of separateness is rebutted as

to PDV Holding vis-à-vis PDVSA is reserved for development on the record. *Cf. Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, No. 17-mc-00151-LPS (D. Del.) (court analysis of reverse-veil-piercing of PDV Holding under *Bancec* framework; specific docket entry to be confirmed pre-filing). Plaintiffs preserve the alter-ego allegation against PDV Holding as a factual matter to be proved on the record, not as a settled doctrinal premise. PDV Holding was previously named as a defendant in the Anchor Case but was never served in that action; Plaintiffs voluntarily withdrew their claims against PDV Holding without prejudice on March 20, 2025 (Anchor Case D.I. 130), which under Fed. R. Civ. P. 41(a)(1)(A)(i) does not constitute an adjudication on the merits. PDV Holding was never captioned as a party in the Florida Federal Action. Named on Counts I, II, III, IV, V, IX, X, XI, and XII. Defendant PDV Holding is, at all relevant times, a registered agent of a foreign principal under the Foreign Agents Registration Act, holding **FARA Registration No. 6997** with the United States Department of Justice National Security Division. PDV Holding's status as a FARA registrant constitutes a public, sworn, and continuing admission by PDV Holding under Federal Rule of Evidence 801(d)(2)(A) that it operates in U.S. territory on behalf of a foreign principal — corroborating the *Bancec / Crystallex II* alter-ego framework pleaded in this paragraph and below at ¶¶ 21A, 30B, 81A, and 121C.

50. **Defendant WORLDWIDE STRATEGIC CONSULTANTS LLC** ("WWSC"). Plaintiffs caption "WORLDWIDE STRATEGIC CONSULTANTS LLC" as the Delaware limited liability company formed and registered with the Delaware Secretary of State under Document No. 2583790, and on that basis subject to general jurisdiction in this District per *Daimler AG v. Bauman*, 571 U.S. 117 (2014). The captioned WWSC is the entity to which Plaintiffs assert their claims pleaded herein.

Rodriguez Moreno et al. v. CITGO Petroleum Corporation et al. — Verified Complaint (Rule 8(a) Notice-Pleading Initiating Version)

50A. **The FARA-Stated Recipient and the Identity-Correlation Reservation.** Between April 8, 2025 and November 6, 2025, VAI transmitted six interstate wire transfers naming "Worldwide Strategic Consultants LLC" as recipient totaling $261,360.00, as disclosed in VAI's amended FARA supplemental statement filed April 9, 2026 (FARA Registration No. 7413). The April 9, 2026 amendment substituted the recipient designation "Worldwide Strategic Consultants LLC" for an earlier-stated recipient name across all six wire entries, with the stated amendment purpose to "correct the name of the recipient." Plaintiffs plead, on information and belief and subject to discovery, that the FARA-stated recipient "Worldwide Strategic Consultants LLC" referenced in FARA Registration No. 7413 is the same entity as the Delaware-registered WWSC captioned at ¶ 50 above. However, full identity-correlation between (i) the Delaware-registered entity at Delaware Secretary of State Document No. 2583790 and (ii) the FARA- recipient entity transmitted-to under the FARA Registration No. 7413 disbursements has not been confirmed of record on the basis of publicly available information, particularly because no Delaware filing of record declares the Miami operating address (175 SW 7th St, Miami, FL 33130) at which the FARA-recipient entity, on information and belief, conducts operations. Plaintiffs reserve the identity-correlation question for discovery, including third-party subpoenas to (a) the Delaware registered agent of record for Document No. 2583790; (b) Vinson & Elkins LLP (the disclosed counsel of record for VAI in connection with FARA Registration No. 7413); and (c) the financial institutions through which the six wire transfers were routed. WWSC, as captioned, was never captioned as a party in the Florida Federal Action. Named on Counts I, II, III, IV, V, IX, X, XI, and XII.

51. **Defendant JUNTA ADMINISTRADORA AD HOC DE PETRÓLEOS DE VENEZUELA** ("Junta Ad Hoc"). The Junta Ad Hoc is a body established by the Bolivarian

Rodriguez Moreno et al. v. CITGO Petroleum Corporation et al. — Verified Complaint (Rule 8(a) Notice-Pleading Initiating Version)

Republic of Venezuela's *Estatuto que Rige la Transición* (February 5, 2019) and the National Assembly *Acuerdo* of April 9, 2019, recognized by the United States Government as the legitimate corporate-governance authority over the U.S.-located CITGO/PDVSA corporate chain pending OFAC-licensed asset disposition. The Junta Ad Hoc maintains a continuous operational presence in the United States, owns 100% of Defendant PDV Holding, Inc., and is the corporate-governance-control vehicle for the U.S.-located portion of the PDVSA enterprise. Defendant Medina is and at all relevant times has been President of the Junta Ad Hoc Board.

51A. **Alternative Characterization Pleading.** Plaintiffs plead the Junta Ad Hoc's legal status under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1602–1611, in the alternative on three theories:

1) **Theory A — Non-Sovereign Corporate-Governance Body Subject to Standard Service.** Plaintiffs primarily plead that the Junta Ad Hoc is **not** an "agency or instrumentality of a foreign state" within 28 U.S.C. § 1603(b), because it was created not as an instrumentality of the Maduro-controlled state but as a U.S.-recognized corporate-governance body operating under U.S. sanctions framework, and because its functions in the United States are private commercial corporate- governance functions exercised over U.S.-domiciled subsidiaries (PDV Holding, the CITGO subsidiary chain). On this theory, no FSIA immunity attaches and standard FRCP 4 service applies through Junta Ad Hoc's U.S.-located officers, directors, and managing agents.

2) **Theory B — Foreign-State Instrumentality Subject to FSIA § 1605(a)(2) Commercial-Activity Exception.** In the alternative, if and to the extent the Junta Ad Hoc is properly characterized as an "agency or instrumentality of a foreign state" within 28 U.S.C. § 1603(b), Plaintiffs plead that the Junta Ad Hoc is **not immune** from this Court's

- Page 72 of 117 -

jurisdiction under the FSIA commercial-activity exception, 28 U.S.C. § 1605(a)(2), in all three of its statutory clauses: (i) the action is based upon commercial activity carried on in the United States by the Junta Ad Hoc (corporate governance of U.S.-domiciled subsidiaries PDV Holding and the CITGO chain; authorization of the VAI → "Worldwide Strategic Consultants LLC" wire transfers documented at FARA Registration No. 7413; the June 16, 2025 Sardi PDVH directorship appointment; and the post-Bloom funding flows pleaded throughout this Complaint); (ii) the action is based upon acts performed in the United States in connection with the Junta Ad Hoc's commercial activity elsewhere; and (iii) the action is based upon acts outside the territory of the United States in connection with the Junta Ad Hoc's commercial activity elsewhere that cause direct effects in the United States — the directly-effected post-Bloom wire-transfer compensation flows being the doctrinal workhorse of clause-three under *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607 (1992), as construed by *OBB Personenverkehr AG v. Sachs*, 577 U.S. 27 (2015) (gravamen test). The "commercial activity" of the Junta Ad Hoc is defined by its **nature** and not its **purpose**, *Weltover*, 504 U.S. at 614, and the conduct pleaded herein consists of activities a private actor routinely undertakes (corporate governance, vendor payments, litigation-defense funding) and is therefore commercial in nature.

3) **Theory C — Bancec Alter-Ego of PDVSA.** In the further alternative, Plaintiffs plead that the Junta Ad Hoc, even if characterized as an FSIA instrumentality, is the alter ego of Defendant PDVSA under the framework of *First National City Bank v. Banco para el Comercio Exterior de Cuba*, 462 U.S. 611 (1983) ("Bancec"), as applied to PDVSA-affiliated entities by the Third Circuit in *Crystallex Int'l Corp. v. Bolivarian*

Rodriguez Moreno et al. v. CITGO Petroleum Corporation et al. — Verified Complaint (Rule 8(a) Notice-Pleading Initiating Version)

*Republic of Venezuela*, 932 F.3d 126 (3d Cir. 2019), *cert. denied*, 140 S. Ct. 2762 (2020) (mem.) ("Crystallex II"), and *OI European Group B.V. v. Bolivarian Republic of Venezuela*, 73 F.4th 157 (3d Cir. 2023), *cert. denied*, 144 S. Ct. 549 (2024). Both Bancec rebuttal prongs apply: (i) the Junta Ad Hoc is extensively controlled by, and its corporate-governance functions are an instrumentality of, the Bolivarian-Republic-of-Venezuela enterprise structure such that a principal-agent relationship is established for FSIA purposes; and (ii) recognition of separate juridical status would work injustice in the present circumstances by allowing the FSIA-shielded enterprise structure to evade liability for the Junta-Ad-Hoc-authorized post-Bloom conduct pleaded herein.

51B. **Service of Process on Junta Ad Hoc.** Plaintiffs effect service on the Junta Ad Hoc in the alternative under (i) Theory A: standard FRCP 4 service on Junta Ad Hoc's U.S.-located officers, directors, and managing agents per FRCP 4(h)(1)(B) and § 1608(b)(3)(A); and (ii) Theory B/C: FSIA § 1608(b) instrumentality service, including service under § 1608(b)(3)(A) on the entity's officers, managing agents, and directors and under § 1608(b)(3)(B) by mail addressed and dispatched by the clerk of court, requiring a signed return receipt. *See Magness v. Russian Federation*, 247 F.3d 609 (5th Cir. 2001) (interpreting § 1608(b) service requirements for foreign instrumentalities); *Sherer v. Construcciones Aeronáuticas, S.A.*, 987 F.2d 1246 (6th Cir. 1993) (same). In practice, § 1608(b) service on a foreign instrumentality typically completes in approximately 60–180 days, materially faster than § 1608(a) diplomatic-channel service; Plaintiffs cite this practitioner timeline estimate as informational guidance and not as a holding of any cited case. FRCP 4(m)'s 90-day service window does not apply to § 1608(b) service. *See* Fed. R. Civ. P. 4(m) ("This subdivision (m) does not apply to service in a foreign country under

Rodriguez Moreno et al. v. CITGO Petroleum Corporation et al. — Verified Complaint (Rule 8(a) Notice-Pleading Initiating Version)

Rule 4(f), 4(h)(2), or 4(j)(1) . . . ."); Fed. R. Civ. P. 4(j)(1) ("A foreign state or its political subdivision, agency, or instrumentality must be served in accordance with 28 U.S.C. § 1608."); *see also Barot v. Embassy of the Republic of Zambia*, 785 F.3d 26 (D.C. Cir. 2015) (addressing § 1608(a) strict-compliance requirements; reversing dismissal where in-pauper plaintiff's service attempts came close to strict compliance).

The Junta Ad Hoc was never captioned as a party in the Florida Federal Action. Named on Counts I, II, III, IV, V, IX, X, XI, and XII.

52.   **Defendant PETRÓLEOS DE VENEZUELA, S.A.** ("PDVSA") is a Venezuelan-incorporated *sociedad anónima* and the wholly-state-owned national oil company of the Bolivarian Republic of Venezuela. PDVSA is characterized in this Complaint as an **"agency or instrumentality of a foreign state"** within the meaning of 28 U.S.C. § 1603(b), satisfying each of § 1603(b)'s three statutory elements: (i) PDVSA is a separate legal person, having juridical personality under Venezuelan law; (ii) PDVSA is an organ of, and is wholly owned by, the Bolivarian Republic of Venezuela; and (iii) PDVSA is neither a citizen of any State of the United States within 28 U.S.C. § 1332(c) and (e) nor created under the laws of any third country. Plaintiffs do **not** plead PDVSA as a "foreign state" within 28 U.S.C. § 1603(a); the instrumentality characterization controls and unlocks the "agency-or-instrumentality" framework of *First National City Bank v. Banco para el Comercio Exterior de Cuba*, 462 U.S. 611 (1983) ("Bancec"), as applied to PDVSA in this Circuit by *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 932 F.3d 126 (3d Cir. 2019), *cert. denied*, 140 S. Ct. 2762 (2020) (mem.) ("Crystallex II"), and *OI European Group B.V. v. Bolivarian Republic of Venezuela*, 73 F.4th 157 (3d Cir. 2023), *cert. denied*, 144 S. Ct. 549 (2024) ("OI European Group").

Rodriguez Moreno et al. v. CITGO Petroleum Corporation et al. — Verified Complaint (Rule 8(a) Notice-Pleading Initiating Version)

52A. **Bancec Rebuttal — Both Prongs Pleaded.** PDVSA's presumption of separate juridical existence under *Bancec* is **rebutted** under both established prongs:

1) **Bancec Prong 1 — Extensive Control Establishing Principal- Agent Relationship.** The Bolivarian Republic of Venezuela exercises extensive control over PDVSA such that a relationship of principal and agent is established within *Bancec*, 462 U.S. at 629. The Third Circuit applied this prong specifically to PDVSA in *Crystallex II*, 932 F.3d at 138–43, and reaffirmed the application in *OI European Group*, 73 F.4th at 169–73, on a developed factual record establishing Maduro-regime extensive control, revenue extraction, absence of corporate formalities, commingling of funds, and PDVSA's function as an instrumentality of state policy. Plaintiffs incorporate by reference the factual record developed in *Crystallex II* and *OI European Group* as binding Third Circuit precedent on the *Bancec* Prong 1 rebuttal as to PDVSA, and plead Plaintiffs' own additional supporting facts throughout this Complaint.

2) **Bancec Prong 2 — Recognition of Separate Status Would Work Fraud or Injustice.** In the alternative and additionally, recognition of PDVSA's separate juridical status would work injustice in the present circumstances by allowing the Maduro-regime-controlled sanctions-evasion enterprise to evade liability for the PDVSA-authorized post-Bloom conduct pleaded herein, including the funding flows directed through the Junta Ad Hoc-controlled corporate chain to support the Enterprise's defamation, witness-suppression, and litigation-interference operations.

52B. **PDVSA Is Not Immune From Jurisdiction — FSIA § 1605(a)(2) Commercial-Activity Exception.** PDVSA is **not immune** from this Court's jurisdiction under the FSIA commercial-activity exception, 28 U.S.C. § 1605(a)(2), in all three of its statutory clauses:

Rodriguez Moreno et al. v. CITGO Petroleum Corporation et al. — Verified Complaint (Rule 8(a) Notice-Pleading Initiating Version)

1) **Clause One — Commercial Activity in the United States.** The present action is based upon commercial activity carried on in the United States by PDVSA, including (without limitation): (i) PDVSA's ownership and corporate-governance control of U.S.-domiciled subsidiaries PDV Holding, Inc. and the CITGO subsidiary chain (CITGO Petroleum Corporation; CITGO Holding, Inc.); (ii) PDVSA's authorization and ratification, through the Junta Ad Hoc-controlled corporate chain, of the VAI → "Worldwide Strategic Consultants LLC" wire transfers documented at FARA Registration No. 7413 (six wires totaling $261,360.00 between April 8, 2025 and November 6, 2025; ¶ 83); (iii) PDVSA's authorization, through the same chain, of the Sardi PDV Holding directorship appointment (June 16, 2025; ¶ 82); (iv) PDVSA's ongoing commercial revenue-generation conduct in U.S. markets via CITGO Petroleum operations; and (v) PDVSA's commercial-vendor relationships with U.S.-domiciled service providers (FARA-registered agents, U.S. counsel of record, financial institutions).

2) **Clause Two — Acts Performed in the United States in Connection With Commercial Activity Elsewhere.** The present action is based upon acts performed in the United States in connection with PDVSA's commercial activity elsewhere, including the same conduct enumerated at ¶ 52B(a) above to the extent such conduct is performed in the United States in connection with PDVSA's broader Venezuelan and international commercial operations.

3) **Clause Three — Acts Outside U.S. Causing Direct Effects in U.S.** The present action is also based upon acts outside the territory of the United States in connection with PDVSA's commercial activity elsewhere that caused direct effects in the United States. The post-Bloom wire-transfer compensation flows — specifically, the five post-Bloom

Rodriguez Moreno et al. v. CITGO Petroleum Corporation et al. — Verified Complaint (Rule 8(a) Notice-Pleading Initiating Version)

interstate electronic funds transfers (¶ 83(b)–(f); total $174,360.00) into U.S.-based recipient accounts to fund U.S.-directed defamation, witness-suppression, and litigation-defense operations — constitute the direct U.S. effects of PDVSA's commercial activity elsewhere, satisfying the "direct effect" standard of *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607 (1992) ("direct effect" = "immediate consequence" of foreign activity).

52C. **Nature-Not-Purpose; Gravamen.** The Court's analysis of whether the conduct alleged is "commercial" turns on the **nature** of the conduct, not its **purpose**. *Weltover*, 504 U.S. at 614. The conduct alleged consists of activities a private actor routinely undertakes — corporate governance, ownership of subsidiaries, vendor payments, authorization of litigation-defense funding — and is therefore commercial in nature. The gravamen of Plaintiffs' claims under *OBB Personenverkehr AG v. Sachs*, 577 U.S. 27 (2015), and *Saudi Arabia v. Nelson*, 507 U.S. 349 (1993), is the commercial-funding-flow conduct and its U.S.-effect predicates — not any sovereign or political function. The Enterprise's use of commercial structures (FARA-registered agents, U.S.-formed LLCs, U.S. wire-transfer infrastructure, U.S. legal-defense vendor relationships) confirms the commercial character of the gravamen.

52D. **Other FSIA Exceptions Not Pleaded.** Plaintiffs do **not** plead the FSIA expropriation exception under 28 U.S.C. § 1605(a)(3), the non-commercial-tort exception under § 1605(a)(5), or the state-sponsor-of-terrorism exception under § 1605A. Each exception is doctrinally available in principle but is not pleaded here: § 1605(a)(3) is excluded to avoid the commingling-tracing burden of *Hungary v. Simon*, 604 U.S. ___, 145 S. Ct. 480 (2025); § 1605(a)(5) is excluded to avoid the territorial-tort-locus burden of *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428 (1989); § 1605A is excluded because Venezuela is

Rodriguez Moreno et al. v. CITGO Petroleum Corporation et al. — Verified Complaint (Rule 8(a) Notice-Pleading Initiating Version)

not currently designated a State Sponsor of Terrorism by the U.S. Department of State. Plaintiffs reserve the right to amend to plead any other applicable FSIA exception should grounds emerge in discovery.

52E. **Service of Process on PDVSA.** Plaintiffs effect service on PDVSA under FSIA § 1608(b) (instrumentality service), specifically: (i) under § 1608(b)(3)(A), by delivery of a copy of the summons and complaint to an officer, managing agent, or general agent of PDVSA in the United States, including (where the *Bancec* alter-ego framework applies as pleaded at ¶ 52A) the U.S.-located officers and managing agents of the Junta Ad Hoc and PDV Holding as PDVSA's alter-ego authorized U.S. agents; and (ii) under § 1608(b)(3)(B), by sending a copy of the summons and complaint by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of court to PDVSA. § 1608(a) diplomatic-channel service is not the controlling service mechanism for an instrumentality and is not pleaded as the primary path; Plaintiffs reserve the right to perfect service under § 1608(a) only if § 1608(b) service is held inapplicable for any reason. *See Magness v. Russian Federation*, 247 F.3d 609 (5th Cir. 2001) (interpreting § 1608(b) service requirements for foreign instrumentalities). In practice, § 1608(b) service typically completes in approximately 60–180 days; Plaintiffs cite this practitioner timeline estimate as informational guidance and not as a holding of any cited case. FRCP 4(m)'s 90-day service window does not apply to FSIA service. *See* Fed. R. Civ. P. 4(m) ("This subdivision (m) does not apply to service in a foreign country under Rule 4(f), 4(h)(2), or 4(j)(1) . . . ."); Fed. R. Civ. P. 4(j)(1) (foreign-state service under 28 U.S.C. § 1608); *see also Barot v. Embassy of the Republic of Zambia*, 785 F.3d 26 (D.C. Cir. 2015) (addressing § 1608(a) strict-compliance requirements).

52F. **Punitive Damages Available.** Because PDVSA is pleaded as an "agency or

instrumentality" within 28 U.S.C. § 1603(b) and not as a "foreign state" within § 1603(a), the punitive-damages bar of 28 U.S.C. § 1606 does not apply. Punitive damages are recoverable against PDVSA on the federal-statutory and common-law claims pleaded herein. *See* 28 U.S.C. § 1606 ("a foreign state except for an agency or instrumentality thereof shall not be liable for punitive damages" (emphasis added)); David P. Stewart, Federal Judicial Center, *The Foreign Sovereign Immunities Act: A Guide for Judges* (2d ed. 2018) ("Under 28 U.S.C. § 1606, foreign states themselves are not liable for punitive damages, but this limitation does not apply to agencies and instrumentalities.").

PDVSA was never captioned as a party in the Florida Federal Action. Named on Counts I, II, III, IV, V, IX, X, XI, and XII.

### C. Defendants — Individuals (Non-Florida-Captioned)

54. **Defendant SAMUEL WILHELM** ("Wilhelm") is a natural person who, at times relevant, served as President of Defendant PDV Holding, Inc. and as President of CITGO Holding, Inc. through approximately February 28, 2026. Wilhelm acted and caused acts to occur in the District of Delaware through his direction of the Delaware-incorporated entities he led. Wilhelm's concurrent directorship at CITGO Petroleum Corporation is documented in the sworn Florida 2025 Foreign Profit Corporation Annual Report (Exhibit S hereto; Florida Department of State Document #855911), executed by Defendant Jorda as President and Chief Executive Officer under penalty of perjury pursuant to Chapter 607, Florida Statutes; that filing identifies Wilhelm as a Director of CITGO Petroleum and as Member & Chairman of a CITGO Petroleum committee. With respect to the WWSC-related predicate acts pleaded at ¶¶ 50, 83–87, Wilhelm's connection is pleaded through willful-blindness imputed knowledge under *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 769–70 (2011): Wilhelm, in his capacity as President

of PDV Holding (the parent entity in whose corporate-governance chain the Sardi directorship was effected and the WWSC compensation pattern operated), was subjectively aware of a high probability that the WWSC architecture concealed blocked-entity-origin compensation flows to Sardi, and Wilhelm took deliberate actions to avoid learning the operational details of those flows. This willful-blindness framework parallels the framework pleaded as to Defendant Jorda at ¶ 57. Wilhelm was never captioned as a party in the Florida Federal Action. Named on Counts I, II, III, IV, V, VI (as to Plaintiff Freites only), IX, X, XI, and XII.

55. **Defendant JULIAN CARDENAS GARCIA** ("Cardenas Garcia") is a natural person who, at all times relevant, served concurrently as Director of PDV Holding, Inc. and as a member of the Junta Ad Hoc Board. Cardenas Garcia was never captioned as a party in the Florida Federal Action. Named on Counts I, II, III, IV, V, VI (Freites only), IX, X, XI, and XII.

56. **Defendant FERNANDO VERA** ("Vera") is a natural person who, at all times relevant, served concurrently as General Counsel and Director of PDV Holding, Inc.; Director of CITGO Holding, Inc.; and an officer of CITGO Petroleum Corporation — the only individual holding concurrent positions across all three levels of the PDVSA-controlled United States corporate chain. Vera's role as Secretary of CITGO Petroleum Corporation is documented in the sworn Florida 2025 Foreign Profit Corporation Annual Report (Exhibit S hereto; Florida Department of State Document #855911), where he is identified as Secretary of CITGO Petroleum in three separate entries. Vera was a named Defendant/Counterclaim-Plaintiff in *Jiménez v. Palacios*, 250 A.3d 814 (Del. Ch. 2019), aff'd, 237 A.3d 68 (Del. 2020) (TABLE), as one of the Guaidó-government-appointed directors of the Delaware nominal subsidiaries (PDV Holding, Inc., CITGO Holding, Inc., and CITGO Petroleum Corporation), confirming his continuous Delaware-focused corporate-governance role since at least 2019. Vera was never captioned as a

party in the Florida Federal Action. Named on Counts I, II, III, IV, V, VI (Freites only), IX, X, XI, and XII.

57. **Defendant CARLOS JORDA** ("Jorda") is a natural person who, on or about February 28, 2026, succeeded Defendant Wilhelm as President of PDV Holding, Inc. and President of CITGO Holding, Inc. Jorda has served continuously since at least March 28, 2025 as Director and as President and Chief Executive Officer of CITGO Petroleum Corporation, as documented in the sworn Florida 2025 Foreign Profit Corporation Annual Report (Exhibit S hereto; Florida Department of State Document #855911), which Jorda personally executed on March 28, 2025 under penalty of perjury pursuant to Chapter 607, Florida Statutes. Jorda's personal execution of that Florida-Government-certified sworn filing constitutes purposeful availment of Florida jurisdiction in his CITGO Petroleum capacity, supporting the parallel Florida Orange Action's jurisdictional pleading against CITGO Petroleum Corporation. Jorda acts and causes acts to occur in the District of Delaware through his direction of the Delaware-incorporated entities he leads. **Specific post-February-28-2026 conduct attributable to Jorda includes:** (i) continued direction of PDV Holding, Inc. and CITGO Holding, Inc. as their President, with apex-direction authority over Enterprise corporate-chain decisions; (ii) ratification or willful-blindness toward the Sardi PDV Holding directorship installation (originally effected June 16, 2025) and toward Sardi's continuing concealment of compensation arrangements (per Exhibit C, Sardi correspondence dated March 24, 2025 through April 13, 2026); (iii) ratification or willful-blindness toward the Carrasquero April 7, 2026 NSD-5 Amendment submission while Carrasquero remained operationally affiliated with VAI per the continuing Spanish-language website designation (¶ 96); (iv) continued direction of the Delaware-incorporated corporate-chain operations through which the Enterprise's post-Bloom witness-suppression and

Rodriguez Moreno et al. v. CITGO Petroleum Corporation et al. — Verified Complaint (Rule 8(a) Notice-Pleading Initiating Version)

sanctions-evasion conduct was financed and concealed; and (v) at minimum, willful blindness within the meaning of *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 769–70 (2011), toward the post-November-2025 continuation of the VAI/WWSC compensation chain (anticipated to be confirmed in subsequent FARA reporting periods to be disclosed in discovery). Jorda was never captioned as a party in the Florida Federal Action — and as a matter of temporal sequence could not have been, because his Enterprise role post-dates the February 1, 2025 filing of the operative complaint in that action, and post-dates the May 16, 2025 Bloom dismissal. Named on Counts I, II, III, IV, V, VI (Freites only), IX, X, XI, and XII.

58. **Defendant CARLOS E. SARDI** ("Sardi") is a natural person, a licensed attorney, and the principal of Sardi Law PLLC. On June 16, 2025 — thirty-one days after the Bloom dismissal — Sardi was appointed as a Director of Defendant PDV Holding, Inc., a blocked entity under Executive Order 13884, as disclosed in **Defendant PDV Holding, Inc.'s own supplemental FARA statement filed September 30, 2025 (FARA Registration No. 6997, of which PDV Holding is the registrant of record)**. The disclosure constitutes a party admission by PDV Holding under Federal Rule of Evidence 801(d)(2)(A) of (a) PDV Holding's status as agent of a foreign principal; and (b) the appointment of Sardi to its blocked-entity directorship. While holding the PDV Holding directorship, Sardi concurrently appeared as counsel of record for thirteen defendants in the Florida Federal Action, including Defendant Carrasquero, without disclosure to those tribunals of his blocked-entity fiduciary status. Sardi was never captioned as a party-defendant in the Florida Federal Action. Named on Counts I, II, III, IV, V, VI (Freites only), IX, X, XI, and XII.

58A. **Sardi's Multi-Role Coordination Architecture — TEZCUA INVESTMENTS LLC.** Defendant Sardi's coordination role across the Enterprise architecture is further evidenced by

Sardi Law PLLC's service as registered agent of TEZCUA INVESTMENTS, LLC, a Florida limited liability company (Florida Department of State, Division of Corporations Document No. L21000141806; FEI No. 86-3071818; principal address 5223 N.W. 94th Doral Place, Doral, FL 33178). Per Florida Sunbiz records, the Sardi Law PLLC registered-agent address change for TEZCUA INVESTMENTS LLC took effect March 12, 2025, approximately two months prior to Sardi's June 16, 2025 PDV Holding directorship appointment. The TEZCUA INVESTMENTS LLC managers of record include Orlando Viera-Blanco — the same individual who, on information and belief, is the recipient of the approximately $75,000 Fundación Simón Bolívar de CITGO disbursement disclosed in the publicly disclosed Medina audio recording referenced at ¶ 91 below — together with members of the Viera Garcia family at the same Doral, Florida principal address. Sardi Law PLLC's registered-agent role for TEZCUA INVESTMENTS LLC, taken together with Sardi's contemporaneous appointment as PDV Holding Director and his concurrent representation of thirteen defendants in the Florida Federal Action, supports the inference — to be developed in discovery — that Sardi served as a multi-role coordination node within the Enterprise architecture, with overlapping fiduciary, registered-agent, and counsel-of-record roles spanning sovereign-instrumentality (PDV Holding), corporate-conduit (TEZCUA INVESTMENTS LLC), and litigation-defense functions. TEZCUA INVESTMENTS LLC is named as a defendant in the contemporaneous Florida Orange Action; it is not named as a defendant herein, and is referenced only as evidence of the Sardi-coordination architecture supporting the predicate-act and pattern-of-racketeering allegations of Counts I and II.

59. **Defendant HORACIO MEDINA** ("Medina") is a natural person and, at all times relevant, is and has been President of the Junta Ad Hoc de PDVSA Board. Medina was a named defendant in *Freites v. Medina*, No. 1:25-cv-20465-BB (S.D. Fla.), which was dismissed on May 16, 2025,

and which is currently pending on appeal as No. 25-12067-E (11th Cir.). The claims asserted against Medina in this action are novel as to Medina: no federal Civil RICO § 1962(c) or § 1962(d) claim, no *Christopher v. Harbury* federal court-access claim, and no Delaware common-law tortious interference or Delaware common-law defamation claim was pled against Medina in the Florida Federal Action. Each operative fact giving rise to Medina's liability on Counts I, II, IX, X, XI, and XIV of this Complaint occurred after the May 16, 2025 dismissal and therefore could not have been litigated in that action. Medina is **NOT** named on Counts III, IV, V, VI, VII, XII, or XIII. Named on Counts I, II, IX, X, XI, and XIV only.

60. **Defendant JOSE VICENTE CARRASQUERO** ("Carrasquero") is a natural person and a resident of the State of Florida. At all times relevant prior to March 1, 2026, Carrasquero served as "Partner" of VAI. As of April 18, 2026, VAI's Spanish-language website continues to designate Carrasquero as "*Consultor Estratégico*." Carrasquero is also, at all times relevant and continuing, a co-owner (with non-defendant co-conspirator Alvarado) of the @lucioquincio X-platform defamation vehicle. On April 7, 2026, at 12:34:28 PM Eastern Time, Carrasquero personally executed and submitted through the United States Department of Justice FARA eFile system a Form NSD-5 Amendment to FARA Registration No. 7413 (the "NSD-5 Amendment"), purporting to reflect his March 1, 2026 termination of connection with VAI. Carrasquero was a named defendant in the Florida Federal Action. The claims asserted against Carrasquero in this action are novel as to Carrasquero: no federal Civil RICO § 1962(c) or § 1962(d) claim, no *Harbury* federal court-access claim, and no Delaware common-law tortious interference claim was pled against Carrasquero in the Florida Federal Action. Carrasquero is **NOT** named on Counts III, IV, V, VI, VII, or XII. Named on Counts I, II, IX, X, XI, and XIV only.

60A. **Carrasquero's Multi-Role Enterprise-Architecture Position — FREEDOM FOR**

**VENEZUELA, INC.** Defendant Carrasquero's coordination role within the Enterprise architecture is further evidenced by his service as Treasurer/Secretary of FREEDOM FOR VENEZUELA, INC., a Florida Not For Profit Corporation (Florida Department of State, Division of Corporations Document No. N22000013894; FEI No. 92-1398386; principal address 2218 SW 14th Avenue, Miami, FL 33145). Per the entity's 2024 Florida Not For Profit Corporation Annual Report (filed May 1, 2024), Carrasquero is identified as Treasurer/Secretary at 3800 Hillcrest Drive, Hollywood, FL 33021; Defendant LUIS JOSE CHACON-PACHECO is identified as President at 2218 SW 14th Avenue, Miami, FL 33145, and as the Sole Incorporator and Initial Registered Agent of record. The same 2024 annual report identifies LINDA H. SANCHEZ as President. The Articles of Incorporation of FREEDOM FOR VENEZUELA, INC., at Article VI.B, expressly prohibit the entity from participating in or intervening in (including the publishing or distributing of statements) any political campaign on behalf of, or in opposition to, any candidate for public office — a Section 501(c)(3) public-charity prohibition standard within Internal Revenue Code § 501(c)(3) and Treas. Reg. § 1.501(c)(3)-1(c)(3)(iii). Plaintiffs plead, on information and belief and subject to discovery, that the operational activities of FREEDOM FOR VENEZUELA, INC., as conducted with Carrasquero's and CHACON-PACHECO's involvement, materially diverged from the Article VI.B political-campaign prohibition — supporting the inference that the corporate-form selection was used as Enterprise- architecture cover for political-defamation activity inconsistent with the entity's stated 501(c)(3) charter. The Carrasquero / CHACON-PACHECO overlap between FREEDOM FOR VENEZUELA, INC. and the broader Enterprise financial-and-defamation chain — including the ASM Investing LLC short-form-registrant relationship disclosed in FARA Registration No. 7413 (under which monthly $2,500 "Fee for Consulting Services" payments to

ASM Investing LLC at the same Carrasquero address are documented) — supports the conclusion that the formal corporate- governance separation between these entities is, on information and belief, an Enterprise-architecture design feature rather than an operational reality. FREEDOM FOR VENEZUELA, INC. is named as a defendant in the contemporaneous Florida Orange Action; it is not named as a defendant herein, and is referenced only as evidence of the Enterprise architecture supporting the predicate-act and pattern-of-racketeering allegations of Counts I and II.

60B. **Defendants YON GOICOECHEA and GUSTAVO MARCANO — Venezuelan State-Officer Status and Delaware-Corporate-Governance Designation Authority.** Defendants Yon Goicoechea ("Goicoechea") and Gustavo Marcano ("Marcano") are natural persons and Florida residents. At all times relevant to this action, Defendants Goicoechea and Marcano served as members of the **Consejo de Administración y Protección de Activos** ("CAPA"), a Venezuelan state body created by Article 22 of the *Estatuto que rige la Transición a la Democracia para Restablecer la Vigencia de la Constitución de la República Bolivariana de Venezuela* (the "Estatuto"). Marcano serves as **Coordinator** of CAPA. Marcano additionally serves as a sitting **Diputado** of the Asamblea Nacional 2015 under the Estatuto's mandate-extension provisions, having been initially elected by Estado Anzoátegui in the Venezuelan parliamentary elections of December 2010 and retained under successive Estatuto extensions. Goicoechea does not concurrently hold elected Diputado status; his Venezuelan state-officer status derives exclusively from his CAPA membership.

Per Article 13 of the Estatuto, CAPA holds the authority — with prior authorization of the Asamblea Nacional 2015 or its Comisión Delegada — to designate the members of the **Junta Ad Hoc de PDVSA**, which in turn exercises PDVSA's shareholder rights as to Defendant PDV

Holding, Inc., a Delaware corporation. Through this textual designation chain prescribed by Venezuelan state law, Defendants Goicoechea and Marcano have repeatedly exercised authority directed at the governance of Delaware corporations, including: (i) participation in or coordination of CAPA designations of Junta Ad Hoc members during the period material to this Complaint; (ii) institutional knowledge and constructive knowledge of the Junta Ad Hoc's downstream designations of PDV Holding directors, including the June 16, 2025 appointment of Defendant Sardi to the PDV Holding board; and (iii) continuing CAPA participation through the filing date of this Complaint, with persistent-course-of- conduct contacts with Delaware through Delaware-corporate-governance designation authority.

Defendants Goicoechea and Marcano are subject to personal jurisdiction in Delaware under 10 Del. C. § 3104(c)(4) (tortious injury caused by acts outside Delaware where defendant engages in persistent course of conduct in Delaware), as the Delaware Supreme Court has construed § 3104(c)(4) as coterminous with constitutional due process limits. *LaNuova D & B, S.p.A. v. Bowe Co.*, 513 A.2d 764 (Del. 1986). The constitutional standard is satisfied under *Walden v. Fiore*, 571 U.S. 277 (2014), because each CAPA designation is a defendant-initiated act directed at Delaware corporate governance. Goicoechea and Marcano were **never captioned** in *Freites v. Medina*, No. 1:25-cv-20465-BB (S.D. Fla.) (the "Florida Federal Action"); the Florida Federal Action's May 16, 2025 *Bloom* dismissal does not preclude their inclusion here, and no the narrow-conditioning applies to them. Goicoechea and Marcano are named on Counts VI (TVPA, as to Plaintiff Freites only), X (Delaware Primary Tortious Interference with Prospective Business Relations), XI (Delaware Aiding-and-Abetting Tortious Interference), and XII (Venezuelan *Daños Morales*) only.

61. **Defendant ORLANDO VIERA-BLANCO** ("Viera-Blanco") is a natural person and a

Rodriguez Moreno et al. v. CITGO Petroleum Corporation et al. — Verified Complaint (Rule 8(a) Notice-Pleading Initiating Version)

resident of the State of Florida (Doral, Miami-Dade County, residence address 5223 NW 94th Doral Place, Doral, FL 33178). At all times relevant, Viera-Blanco has been a public-facing political and litigation figure within the Venezuelan-diaspora ecosystem. From approximately 2020 to 2023, Viera-Blanco served as the Venezuelan Guaidó-interim-government Ambassador to Canada — a diplomatic-official role that placed him within the Venezuelan-state public-official framework during that period. After the conclusion of his diplomatic-official tenure, Viera-Blanco continued to serve in public-facing institutional roles, including as President of the Center for Liberal Democracy Development Inc. ("CLDD") (administratively dissolved September 22, 2023) and as 2024 President of Venezolanos y Americanos Inc. ("VENAMERICA"). Viera-Blanco is named as a Defendant in this action **solely on Counts X (Delaware Primary Tortious Interference with Prospective Business Relations), XI (Delaware Aiding-and-Abetting Tortious Interference), and XII (Venezuelan *Daños Morales*)** — collectively, the "Viera-Blanco Counts" (see ¶ 12). The factual predicates supporting Viera-Blanco's liability on the Viera-Blanco Counts include: (a) his approximately $75,000 receipt from the Fundación Simón Bolívar de CITGO (admitted in the March 2026 Medina audio recording at ¶¶ 91–93), characterized under Venezuelan Anti-Corruption Law Artículo 70 (*enriquecimiento ilícito*) and Código Civil Artículo 1185 (*hecho ilícito* — knowing receipt of misappropriated funds), and his post-May-16-2025 continuing retention thereof; (b) his May 24, 2024 publication on Platform X of Plaintiff Rodriguez Moreno's court-sealed identity (¶ 72), and his post-May-16-2025 continuing ratification, retention, and amplification of that disclosure under the Delaware separate-accrual and continuing-wrong doctrines (¶¶ 113–113B); and (c) his continuing post-May-16-2025 participation in Enterprise-aligned social-media operations targeting Plaintiffs as Anchor Case parties. Plaintiffs reserve the right to supplement

the factual predicates upon discovery-developed identification of additional Channel Alfa-related, Enterprise-financial-conduit-related, or other Enterprise-coordination conduct attributable to Viera-Blanco; the current pleading does not assert direct Channel Alfa-recipient status as to Viera-Blanco, but reserves such allegation for discovery-developed factual supplementation. Plaintiffs do not assert any federal-statutory claim against Viera-Blanco in this action; the federal claims previously asserted against Viera-Blanco in the Florida Federal Action were dismissed with prejudice by Judge Bloom on May 16, 2025 (ECF No. 165), and Plaintiffs respect that ruling for *Semtek* purposes per ¶ 12A. **Viera-Blanco's references in this Complaint outside the Viera-Blanco Counts** — including in the Enterprise pattern-and-continuity allegations under Count I, in the Enterprise apex-direction architecture, and in the per-Plaintiff injury allegations at ¶¶ 105–111 — are pleaded as Enterprise-conduct context only and do not assert claims for relief against Viera-Blanco on those Counts.

### E. Unnamed Co-Conspirators

62. Plaintiffs are informed and believe, and on that basis allege, that numerous additional persons and entities knowingly participated in the Enterprise as co-conspirators, aiders, abettors, or agents, but whose identities or defendant-filter status have not yet been verified or remain contingent upon pre-filing caption-scrub verification against the Florida Federal Action docket. Plaintiffs reserve the right to amend this Complaint under Fed. R. Civ. P. 15 to add additional defendants upon verification.

## IV. FACTUAL ALLEGATIONS (SUMMARY COMMON-FACT FORM)

24. **Incorporation and notice-pleading posture.** Plaintiffs incorporate by reference ¶¶ 0 through 23 above. The allegations in this Part IV are stated in summary common-fact form for the purpose of giving Defendants fair notice of the factual basis of each Count

under Fed. R. Civ. P. 8(a). The full, paragraph-by-paragraph Factual Allegations will be restored by the amendment of course reserved at ¶ 0-NP.

25. **The Enterprise.** Defendants and unnamed co-conspirators conducted the affairs of an association-in-fact enterprise, the CITGO/PDVSA Sanctions-Evasion and Witness-Suppression Enterprise (the "Enterprise"), whose common purpose is (a) the preservation of Enterprise control over the Delaware-incorporated PDVSA United States corporate chain (PDVSA → Junta Ad Hoc de PDVSA → PDV Holding, Inc. → the CITGO entities) against legitimate Venezuelan-law labor-rights claimants, including Plaintiffs; (b) the diversion of blocked Venezuelan sovereign funds through United States-based financial conduits, including Vision Americas International LLC ("VAI"), Worldwide Strategic Consultants LLC ("WWSC"), and Altamira Cinema Corp., for unauthorized political, litigation-defense, and media-amplification purposes in violation of Executive Order 13884 and 31 C.F.R. Part 591; and (c) the neutralization, through witness intimidation, defamation, retaliation, physical-security threat, and federal-forum-access frustration, of individuals whose testimony or litigation activity threatens that control, including Plaintiffs.

26. **The Anchor Case and the sealing order.** Plaintiffs are parties-plaintiff and/or witnesses in *Freites C., et al. v. CITGO Holding, Inc.*, No. 1:23-cv-00989-JLH (D. Del.) (the "Anchor Case"), a federal civil proceeding pending before this Court. This Court entered a sealing order in the Anchor Case on February 9, 2024. On May 24, 2024, Plaintiffs' sealed identities were disclosed on Platform X in violation of that order (the "Delaware Leak"). The Enterprise ratified, retained, and continued to publicly disseminate the Delaware Leak after May 16, 2025.

Rodriguez Moreno et al. v. CITGO Petroleum Corporation et al. — Verified Complaint (Rule 8(a) Notice-Pleading Initiating Version)

27. **Post-May 16, 2025 gravamen conduct.** The operative facts constituting the gravamen of each Count post-date the May 16, 2025 dismissal in the Florida Federal Action and include, without limitation: (a) five VAI → WWSC wire transfers between June 12, 2025 and November 6, 2025, personally authorized by Horacio Medina as President of the Junta Ad Hoc; (b) the June 16, 2025 appointment of Carlos E. Sardi as a Director of PDV Holding, Inc. while Sardi Law PLLC concurrently served as counsel of record for thirteen Florida Federal Action defendants, undisclosed to that tribunal; (c) the October 31, 2025 circular hotel-reimbursement payment to Medina; (d) the post-May-2025 financing, production, promotion, and distribution of the *Salvemos a CITGO* and *PDVSA: De la esperanza al colapso* documentaries through the VAI → Altamira Cinema disbursement chain, including the October 30–31, 2025 Doral, Florida premiere; (e) the continuing *Falsos Opositores* video campaign branding Plaintiffs as "judicial terrorists" and "false oppositors"; (f) the continuing social-media amplification of Plaintiffs' sealed identities through the @lucioquincio and related accounts; (g) the December 16, 2025 Runrun.es / *El Nacional* column targeting Plaintiff Rodriguez Moreno; (h) the April 7, 2026 materially false Form NSD-5 Amendment to VAI FARA Registration No. 7413 executed and submitted by Jose Vicente Carrasquero; (i) the materially false foreign-principal-address declaration in PDV Holding's September 30, 2025 supplemental FARA filing; and (j) the April 13, 2026 Sardi refusal correspondence declining to disclose the blocked-entity-origin financing of the Florida Federal Action defense. The approximately $75,000 Fundación Simón Bolívar de CITGO disbursement to Orlando Viera-Blanco's benefit (admitted in a March 2026 Medina audio) and its continuing post-March-2026 retention are pleaded as to the Viera-Blanco Counts only.

28. **Per-Plaintiff injury.** Each Plaintiff sustained concrete injury to business or property and related harm proximately caused by the Enterprise's conduct, including loss of identifiable employment, consulting, advisory, banking, editorial, and litigation-position opportunities; reputational and professional-sphere harm; displacement and relocation cost (Freites); documented security-risk-attributable health consequences; and dignitary and moral harm, as the amendment of course will particularize on a per-Plaintiff, per-counterparty basis.

29. **Continuing tort.** The Enterprise's conduct constitutes a continuing course of tortious and unlawful conduct; each post-May-16-2025 act is separately and independently actionable with its own accrual date for limitations purposes.

30. **Pre-May-2025 conduct — background only.** Pre-May-16-2025 facts are pleaded solely as Enterprise-origin, pattern-continuity, or background context under 18 U.S.C. § 1961(5); no Count's gravamen rests on pre-May-2025 conduct, and no Defendant is asked to relitigate any matter actually adjudicated in the Florida Federal Action or the Anchor Case.

## V. CAUSES OF ACTION (NOTICE-PLEADING FORM)

## COUNT I — Civil RICO, 18 U.S.C. § 1962(c)

*(Against All Defendants Except Viera-Blanco — i.e., All Defendants Captioned in This Action other than Viera-Blanco; Medina and Carrasquero Included on Post-May-16-2025 Operative Facts Only per ¶¶ 10–11; Viera-Blanco is NOT a Defendant on this Count — Viera-Blanco is captioned in this action on Counts X, XI, and XII only, see ¶¶ 12, 12A, 61)*

31. Plaintiffs incorporate ¶¶ 0–30. Each Defendant named in this Count is a "person" who conducted or participated, directly or indirectly, in the conduct of the affairs of the Enterprise (an

association-in-fact enterprise distinct from each Defendant) through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(c). The pattern comprises at least fourteen related predicate acts of wire fraud (18 U.S.C. § 1343), money laundering (18 U.S.C. §§ 1956, 1957), obstruction of justice (18 U.S.C. § 1503), witness tampering (18 U.S.C. § 1512), and witness retaliation (18 U.S.C. § 1513), committed after May 16, 2025 as pleaded in ¶ 27, with both closed-ended and, in the alternative, open-ended continuity. Each Plaintiff was injured in business or property by reason of the violation, *Medical Marijuana, Inc. v. Horn*, 145 S. Ct. 931 (2025), with proximate cause under *Holmes v. SIPC*, 503 U.S. 258 (1992). Plaintiffs seek compensatory and treble damages, equitable relief under 18 U.S.C. § 1964(a), and costs and fees under § 1964(c).

## COUNT II — RICO Conspiracy, 18 U.S.C. § 1962(d)

### *(Against Same Defendants as Count I)*

**32.** Plaintiffs incorporate ¶¶ 0–31. Each Defendant knowingly agreed with one or more other Defendants and unnamed co-conspirators to conduct or participate in the affairs of the Enterprise through a pattern of racketeering activity, or agreed to the commission of at least two predicate acts, in violation of 18 U.S.C. § 1962(d). No overt act or personal commission of a predicate is required, *Salinas v. United States*, 522 U.S. 52 (1997). Each Plaintiff was injured by reason of the conspiracy as in Count I and seeks the same relief.

## COUNT III — Federal Witness-Intimidation Conspiracy, 42 U.S.C. § 1985(2) First Clause

### *(Against CITGO Petroleum, PDV Holding, WWSC, Junta Ad Hoc de PDVSA, PDVSA, Wilhelm, Cardenas Garcia, Vera, Jorda, and Sardi; EXCLUDING Medina and Carrasquero per the narrow conditions; CITGO Holding, Inc. is not a Defendant in this action — see ¶ 17; Viera-Blanco is NOT a Defendant on this Count — see ¶¶ 12, 12A, 61)*

Rodriguez Moreno et al. v. CITGO Petroleum Corporation et al. — Verified Complaint (Rule 8(a) Notice-Pleading Initiating Version)

33. Plaintiffs incorporate ¶¶ 0–30. The Count III Defendants conspired to deter, by force, intimidation, or threat, Plaintiffs as parties or witnesses in courts of the United States — the Anchor Case and this action — from attending or testifying freely, fully, and truthfully, and injured Plaintiffs in person and property on account of such attendance or testimony, in violation of the first clause of 42 U.S.C. § 1985(2). No class-based animus is required, *Kush v. Rutledge*, 460 U.S. 719 (1983). The conspiracy was effectuated through the post-May-16-2025 conduct pleaded in ¶ 27. Each Plaintiff suffered injury to person and property and seeks compensatory and punitive damages and costs.

**COUNT IV — Equal-Protection Conspiracy, 42 U.S.C. § 1985(3)**

*(Against Same Defendants as Count III — In the Alternative to Count III; Pleaded Under Two Alternative Class Definitions Per Fed. R. Civ. P. 8(d)(2))*

34. Plaintiffs incorporate ¶¶ 0–30. In the alternative to Count III, the Count IV Defendants conspired, with invidiously discriminatory class-based animus directed at Venezuelan nationals (primary class) or, in the alternative, Venezuelan-diaspora political dissenters involuntarily exiled by state-sponsored persecution (alternative class), to deprive Plaintiffs of the equal protection of the laws and equal privileges and immunities, in violation of 42 U.S.C. § 1985(3); *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263 (1993). Each Plaintiff was injured and seeks compensatory and punitive damages and costs.

**COUNT V — Neglect to Prevent § 1985 Conspiracy, 42 U.S.C. § 1986**

*(Against Same Defendants as Count III)*

35. Plaintiffs incorporate ¶¶ 0–30 and Counts III–IV. Each Count V Defendant had knowledge of the § 1985 conspiracies pleaded in Counts III and IV, had power to prevent or aid in preventing their commission, and neglected or refused to do so, in violation of 42 U.S.C. § 1986. The Count

Rodriguez Moreno et al. v. CITGO Petroleum Corporation et al. — Verified Complaint (Rule 8(a) Notice-Pleading Initiating Version)

is timely under § 1986's one-year limitation period, the most recent § 1985-predicated acts (the April 13, 2026 Sardi refusal correspondence; the April 7, 2026 NSD-5 Amendment; the December 16, 2025 column; the November 6, 2025 wire) all falling within twelve months of filing. Each Plaintiff seeks compensatory and punitive damages and costs.

**COUNT VI — Torture Victim Protection Act, 28 U.S.C. § 1350 note**

*(Against Natural-Person Defendants Goicoechea, Marcano, Wilhelm, Cardenas Garcia, Vera, Jorda, and Sardi Only; As to Plaintiff Freites Only)*

**36.** Plaintiff Freites incorporates ¶¶ 0–30. Acting under actual or apparent authority, or color of law, of a foreign nation (the Bolivarian Republic of Venezuela, through the Asamblea Nacional → CAPA → Junta Ad Hoc → Delaware corporate-chain derivation), the Count VI natural-person Defendants subjected Plaintiff Freites to torture within the meaning of the Torture Victim Protection Act, 28 U.S.C. § 1350 note §§ 2, 3 — specifically, severe mental pain or suffering arising from the threat of imminent death to Freites and to others, through the post-May-16-2025 amplification of his sealed asylum-status information exposing him to designated-FTO and regime-aligned threats and compelling his permanent displacement. The Count is asserted against natural persons only, *Mohamad v. Palestinian Authority*, 566 U.S. 449 (2012). Plaintiff Freites seeks compensatory and punitive damages and costs.

**COUNT VII — [RESERVED]**

*(Reserved)*

**37.** Count VII is reserved. No claim for relief is asserted under this Count in this initiating pleading.

**COUNT VIII — [RESERVED]**

*(Reserved)*

Rodriguez Moreno et al. v. CITGO Petroleum Corporation et al. — Verified Complaint (Rule 8(a) Notice-Pleading Initiating Version)

**38.** Count VIII is reserved. No claim for relief is asserted under this Count in this initiating pleading.

**COUNT IX — Federal Court-Access Interference and First Amendment Retaliation**

*(Against All Defendants Captioned in This Action Except Viera-Blanco — Including Medina and Carrasquero on the Narrow Bases per ¶¶ 10–11; Viera-Blanco is NOT a Defendant on this Count, see ¶¶ 12, 12A, 61; Pleaded Under Two Alternative Theories Per Fed. R. Civ. P. 8(d)(2): Primary — First Amendment Petition Clause Retaliation; Alternative — Christopher v. Harbury\* Federal Court-Access Conduit Frustration; With Further Alternative Pleading as RICO § 1964(a) Equitable Remedial Framework Within Count I)\**

**39.** Plaintiffs incorporate ¶¶ 0–30. As the primary theory, the Count IX Defendants took retaliatory action against Plaintiffs because of Plaintiffs' constitutionally protected petition activity (party and witness participation in the Anchor Case and this action; protected public-petition and press activity), in violation of the First Amendment, *McDonald v. Smith*, 472 U.S. 479 (1985). In the alternative under Fed. R. Civ. P. 8(d)(2), the same post-May-16-2025 conduct pleaded in ¶ 27 specifically frustrated Plaintiffs' access to the federal courts as to nonfrivolous underlying claims, *Christopher v. Harbury*, 536 U.S. 403 (2002); and, in the further alternative, supports equitable relief under 18 U.S.C. § 1964(a) within Count I. Each Plaintiff suffered cognizable injury and seeks compensatory and punitive damages, equitable relief, and costs.

**COUNT X — Delaware Primary Tortious Interference with Prospective Business Relations**

*(Against All Captioned Defendants in This Action — Including Medina and Carrasquero per the narrow conditions, ¶¶ 10–11; Including Viera-Blanco per the narrow conditions, ¶¶ 12, 12A, 61; and Including Defendants Goicoechea and Marcano per ¶ 60B and ¶ 16A(e);*

*CITGO Holding, Inc. is not a Defendant in this action — see ¶ 17; Supplemental Jurisdiction, 28 U.S.C. § 1367)*

40. Plaintiffs incorporate ¶¶ 0–30. Each Count X Defendant, without justification or privilege and through improper means (independently tortious and criminal conduct pleaded in ¶ 27), intentionally interfered with each Plaintiff's reasonably probable prospective business relationships, proximately causing damages, in violation of Delaware common law, *Organovo Holdings, Inc. v. Dimitrov*, 162 A.3d 102 (Del. Ch. 2017). Delaware law governs under the most-significant-relationship test. Each Plaintiff seeks compensatory and punitive damages and costs; the specific counterparties and quantified per-counterparty damages will be particularized by the amendment of course.

**COUNT XI — Delaware Aiding-and-Abetting Tortious Interference**

*(Against Same Defendants as Count X — Including Medina and Carrasquero per the narrow conditions ¶¶ 10–11; Including Viera-Blanco per the narrow conditions ¶¶ 12, 12A, 61; and Including Defendants Goicoechea and Marcano per ¶ 60B and ¶ 16A(e); CITGO Holding, Inc. is not a Defendant in this action — see ¶ 17; Supplemental Jurisdiction, 28 U.S.C. § 1367)*

41. Plaintiffs incorporate ¶¶ 0–30 and Count X. Each Count XI Defendant had actual knowledge of the underlying Delaware tortious interference (and, in the alternative under Fed. R. Civ. P. 8(d)(2), of the underlying Delaware defamation per se and the federal court-access tort) and provided knowing, substantial assistance to the primary tortfeasors, in violation of Delaware aiding-and-abetting doctrine, *Halberstam v. Welch*, 705 F.2d 472 (D.C. Cir. 1983), as endorsed in *Twitter, Inc. v. Taamneh*, 598 U.S. 471 (2023). Each Plaintiff seeks compensatory and punitive damages and costs.

Rodriguez Moreno et al. v. CITGO Petroleum Corporation et al. — Verified Complaint (Rule 8(a) Notice-Pleading Initiating Version)

**COUNT XII — Venezuelan *Daños Morales*, Código Civil Artículos 1185 and 1196**

*(Against CITGO Petroleum, PDV Holding, WWSC, Junta Ad Hoc de PDVSA, PDVSA, Wilhelm, Cardenas Garcia, Vera, Jorda, and Sardi — EXCLUDING Medina and Carrasquero per the narrow conditions; INCLUDING Viera-Blanco per the narrow conditions ¶¶ 12, 12A, 61 (direct-beneficiary $75,000 peculado\* fact pattern); and Including Defendants Goicoechea and Marcano per ¶ 60B and ¶ 16A(e); CITGO Holding, Inc. is not a Defendant in this action — see ¶ 17; Supplemental Jurisdiction, 28 U.S.C. § 1367; Foreign Law Pleaded Per Fed. R. Civ. P. 44.1)\**

**42.** Plaintiffs incorporate ¶¶ 0–30. Under Venezuelan substantive law (which governs under the most-significant-relationship test), each Count XII Defendant committed a *hecho ilícito* with *culpa* proximately causing *daño*, including *daños morales* — harm to honor, family-relations, professional sphere, and severe emotional and psychological suffering — actionable under Código Civil Artículos 1185 and 1196, with damages assessed under the *apreciación equitativa* methodology. As to Viera-Blanco, liability is anchored to his knowing receipt and continuing post-March-2026 retention of the approximately $75,000 Fundación Simón Bolívar de CITGO disbursement (Venezuelan Anti-Corruption Law Artículos 52, 70). Each Plaintiff seeks moral-damage compensation and costs, without duplication of any Florida-action restitutionary recovery.

**COUNT XIII — Delaware Defamation Per Se (Supplemental Jurisdiction, 28 U.S.C. § 1367(a); Delaware Common Law)**

*(Against Defendants: Junta Administradora Ad Hoc de PDVSA (d/b/a PDVSA Ad Hoc); and PDV Holding, Inc.)*

Rodriguez Moreno et al. v. CITGO Petroleum Corporation et al. — Verified Complaint (Rule 8(a) Notice-Pleading Initiating Version)

**43.** Plaintiffs incorporate ¶¶ 0–30. The Count XIII Defendants published, procured, or are vicariously liable (through their authorized agent Medina and through the FARA-disclosed VAI → Altamira Cinema / WWSC disbursement chain) for defamatory statements of and concerning Plaintiffs — including that Plaintiffs are "judicial terrorists," "estafadores," "false oppositors," "strikebreakers," "scammers," and "blackmailers" — published to third persons after May 16, 2025, imputing crime and injuring Plaintiffs in their trade, business, or profession, and thus defamatory per se under Delaware common law, *Spence v. Funk*, 396 A.2d 967 (Del. 1978). The Delaware litigation privilege does not reach this extra-judicial conduct, *Barker v. Huang*, 610 A.2d 1341 (Del. 1992). Damages are presumed; each Plaintiff additionally seeks special and punitive damages and costs.

**COUNT XIV — Delaware Aiding-and-Abetting Defamation Per Se (Supplemental Jurisdiction, 28 U.S.C. § 1367(a); Delaware Common Law)**

*(Against Defendants: CITGO Petroleum Corporation; PDV Holding, Inc. (in the alternative to Count XIII); Junta Ad Hoc PDVSA (in the alternative to Count XIII); Horacio Medina (in the alternative to his primary-publisher liability, see ¶ 214Q / Count XIV pleading); and Jose Vicente Carrasquero)*

**44.** Plaintiffs incorporate ¶¶ 0–30 and Count XIII. Each Count XIV Defendant had actual knowledge both of the primary defamation tort and of the wrongfulness of its own conduct, and provided active, substantial assistance to the primary defamation tortfeasors through funding, institutional financial-conduit provision, the Sardi sham-counsel directorship architecture, ratification, or direct participation, in violation of Delaware aiding-and-abetting doctrine, *In re Mindbody, Inc., Stockholder Litig.*, 332 A.3d 349 (Del. 2024); *Twitter, Inc. v. Taamneh*, 598 U.S.

Rodriguez Moreno et al. v. CITGO Petroleum Corporation et al. — Verified Complaint (Rule 8(a) Notice-Pleading Initiating Version)

471 (2023). As to Medina, primary-publisher liability is pleaded in the alternative. Each Plaintiff seeks compensatory and punitive damages and costs.

## VI. PRAYER FOR RELIEF

215. WHEREFORE, Plaintiffs respectfully pray that this Court enter judgment in their favor and against the Defendants (subject to the per-count defendant-scope statements set forth above), and grant the following relief:

### A. Compensatory Damages

1) **Civil RICO (Counts I and II).** Compensatory damages, **trebled** pursuant to 18 U.S.C. § 1964(c);

2) **Civil-Rights Conspiracies (Counts III, IV, V).** Compensatory damages under 42 U.S.C. §§ 1985(2), 1985(3), and 1986;

3) **TVPA (Count VI — Plaintiff Freites only).** Compensatory damages within 28 U.S.C. § 1350 note § 3(b)(1);

4) [RESERVED];

5) **Federal Court-Access (Count IX).** Compensatory damages, with alternative pleading per ¶ 178A as RICO § 1964(a) equitable remedial framework;

6) **Delaware Tortious Interference (Counts X and XI).** Compensatory damages under Delaware law;

7) **Venezuelan *Daños Morales* (Count XII).** Damages assessed under the *apreciación equitativa* methodology per Fed. R. Civ. P. 44.1.

8) **Delaware Defamation Per Se (Count XIII)**. Presumed general damages; special damages as proven; punitive damages under the actual-malice standard of New York Times Co. v. Sullivan, 376 U.S. 254 (1964);

9) **Delaware Aiding-and-Abetting Defamation Per Se (Count XIV)**. Joint-and-several compensatory damages; punitive damages where malice is established.

## B. Punitive Damages

1) Punitive damages on all counts where punitive damages are available; and

2) Punitive damages under TVPA per *Cabello* as permitted.

## C. Disgorgement, Restitution, and Constructive Trust

1) Disgorgement of all ill-gotten gains from each Defendant's post-May-16-2025 conduct, including the $174,360.00 in five post-Bloom VAI → WWSC wire transfers (and pattern-context inclusion of the pre-Bloom $87,000.00 anchor wire of April 8, 2025, bringing the six-wire total to $261,360.00); the $70,000.00 in post-Bloom Altamira Cinema disbursements; the $516.89 October 31, 2025 Medina circular payment; and the approximately $75,000 Fundación Simón Bolívar de CITGO disbursement (the recipient — Viera-Blanco — is not a Defendant in this action; restitution to the appropriate Fundación-Simón-Bolívar custodian account, per Prayer ¶ C(iii) below);

2) Imposition of a **constructive trust** over all assets traceable to the misappropriated Fundación Simón Bolívar de CITGO disbursements, with accounting and tracing relief;

3) Restitution to the appropriate blocked-property or Fundación Simón Bolívar de CITGO custodian account.

4) **Foreign Government Deposit Funds Carve-Out — EO 14373 Compliance.** The constructive-trust, disgorgement, and restitution remedies sought in subparagraphs

Rodriguez Moreno et al. v. CITGO Petroleum Corporation et al. — Verified Complaint (Rule 8(a) Notice-Pleading Initiating Version)

(i)–(iii) above expressly do NOT extend to any "Foreign Government Deposit Funds" as defined in Executive Order 14373 of January 9, 2026, 91 Fed. Reg. 2045 (Jan. 15, 2026). Plaintiffs do not seek any "attachment, judgment, decree, lien, execution, garnishment, or other judicial process" against FGDF assets, which would be prohibited by Section 3(a) of EO 14373. The constructive-trust and disgorgement remedies sought herein are tailored to traceable assets that are distinct from FGDF — specifically: (a) the VAI → WWSC → Sardi compensation chain assets (¶¶ 83–87); (b) the Altamira Cinema "*Salvemos a CITGO*" documentary-financing conduit assets (¶ 88), traceable to and including the personal compensation received by Thaelman Urgelles individually and through Altamira Cinema Corp.; **(b-bis) the Altamira Cinema "*PDVSA: De la esperanza al colapso*" documentary-financing conduit assets (¶ 88A), separately traceable to and including the personal compensation received by Thaelman Urgelles individually and through Altamira Cinema Corp. for the production, promotion, premiere events (Madrid mid-October 2025; Doral CMX CineBistro October 30–31, 2025), and ongoing distribution (including the official PDVSA Ad Hoc YouTube channel release of November 21, 2025) of the second documentary**; (c) the personal-benefit disbursements traceable to individual Defendants (¶¶ 82–93); (d) the Fundación Simón Bolívar de CITGO Petroleum corpus and traceable disbursements; and (e) corporate Defendants' general assets to the extent necessary to satisfy a money judgment, exclusive of any FGDF holdings. To the extent any traced asset would otherwise fall within the FGDF, Plaintiffs request that the Court adjudicate the constructive trust as to the alternative assets traceable from the same wrongful conduct,

Rodriguez Moreno et al. v. CITGO Petroleum Corporation et al. — Verified Complaint (Rule 8(a) Notice-Pleading Initiating Version)

consistent with Restatement (Third) of Restitution and Unjust Enrichment §§ 55, 58 (Am. Law Inst. 2011) (tracing through changes in form or into hands of third persons).

### D. Declaratory Relief

1) Declarations of post-May-16-2025 violations of the federal and state-law standards pleaded in Counts I–XII;

2) Declaration that the April 7, 2026 NSD-5 Amendment is materially false; and

3) Declaration that the VAI/WWSC/Sardi compensation arrangements are undisclosed and unlawful.

### E. Injunctive Relief

1) Permanent injunction against further witness intimidation, retaliation, and court-access interference;

2) Permanent injunction against further unauthorized blocked-property transactions;

3) Permanent injunction against Sardi's continued representation in the Florida Federal Action absent full compensation disclosure;

4) Such further injunctive relief as the Court deems just.

### F. Pre- and Post-Judgment Interest, Fees, and Costs

1) Pre-judgment and post-judgment interest at the maximum rate allowed by law;

2) Attorney's fees and costs pursuant to 18 U.S.C. § 1964(c), 42 U.S.C. § 1988, 28 U.S.C. § 1350 note § 2(a), and any other applicable authority.

## G. Reservation and Limitation

1) Plaintiffs seek no relief from this Court that would relitigate, modify, or reopen any adjudication in the Anchor Case or in *Freites v. Medina*, S.D. Fla. (¶ 17A);

2) All relief sought against Defendants Medina and Carrasquero is predicated exclusively on the post-May-16-2025 claim-novel conduct set forth in the counts on which they are named (narrow conditions); All relief sought against Defendant Viera-Blanco is predicated exclusively on the post-May-16-2025 claim-novel conduct set forth in Counts X, XI, and XII (narrow conditions per ¶¶ 12, 12A, 61);

3) All relief sought against PDVSA is subject to Plaintiffs' pre-commitment to Rule 21 severance per ¶ 19 and FSIA case-management bifurcation per ¶ 19A;

4) **Settlement-Coordination and Setoff Reservation.** Plaintiffs expressly reserve the right to allocate settlement consideration on a per-count, per-defendant basis and to negotiate narrow releases limited to the specific claims settled in this action, without extinguishing claims against non-settling parties or claims pleaded in any related state-court action including the Florida Orange Action. *McDermott, Inc. v. AmClyde*, 511 U.S. 202 (1994), pro tanto / proportionate-share setoff principles preserved on a per-defendant per-count basis. **With specific regard to Defendant CITGO Petroleum Corporation (appearing in both this action and the Florida Orange Action): any settlement with CITGO Petroleum shall be allocated per-count and per-action, shall release only the specific claims settled in the specific action in which settled, and shall expressly preserve**

**Plaintiffs' claims against CITGO Petroleum on the counts and operative-fact bases not within the scope of the settlement, in either action.;**

5)  Such other and further relief as the Court deems just and proper.

## VI-A. COORDINATION EXHIBIT INDEX

215A. **Coordination Exhibit Index.** Plaintiffs' parallel Florida Orange Action filing (filed April 24, 2026) includes several exhibits that are also evidentiarily relevant to this action. For the convenience of the Court and with the understanding that the Florida Orange Action exhibits are sworn and authenticated there, Plaintiffs identify the following Florida Orange Action exhibits as evidentiary support for allegations in this Complaint. Nothing herein is intended to incorporate the Florida Orange Action pleadings by reference or to alter the independent-pleading character of this action:

1)  **FL Exhibit A** — "Carta Difamación" (September 29, 2023 cease-and-desist letter to Horacio Medina). Referenced herein at ¶ 71 (2023 Miami defamation predecessor) and ¶ 72 (Delaware Leak context).

2)  **FL Exhibit B** — Sworn and notarized Affidavit of Oswaldo Muñoz (October 15, 2024). Referenced herein at ¶ 103 (Goicoechea→Lainette May 2024 $10,000 payment for "Falsos Opositores" video procurement; attested).

3)  **FL Exhibit C** — Sardi conferral-demand record (March 17, 2025 – April 13, 2026). Referenced herein at ¶¶ 85–86, 102 (five formal conferral demands; zero engagement-letter production; six baseless sanctions threats).

Rodriguez Moreno et al. v. CITGO Petroleum Corporation et al. — Verified Complaint (Rule 8(a) Notice-Pleading Initiating Version)

4) **FL Exhibit D** — VAI FARA 7413 disbursement record. Referenced herein at ¶¶ 82–89 (VAI → WWSC wire chain; VAI → Altamira Cinema payments; VAI → Medina October 31, 2025 circular reimbursement).

5) **FL Exhibit M** — Medina Ravell written admission re @lucioquincio account sale. Referenced herein at ¶ 99 (Enterprise social-media infrastructure).

6) **FL Exhibit N** — VAI Spanish-language website screenshot (April 18, 2026) showing Carrasquero as "Consultor Estratégico." Referenced herein at ¶ 96 (Carrasquero Spanish-website continuing designation).

7) **FL Exhibit S** — CITGO Petroleum 2025 Florida Foreign Profit Corporation Annual Report (Sunbiz Document #855911). **Adopted herein as Exhibit S-DE.** Referenced throughout at ¶¶ 21A, 54, 56, 57 (Jorda/Wilhelm/Vera Sunbiz-sworn corporate-officer-director authority).

8) **FL Exhibit U** — Medina Audio (March 2026 publicly disclosed recording) with chain-of-custody / authentication declaration. Referenced herein at ¶ 91 (Fundación Simón Bolívar wedding disbursement admission).

9) **DE Exhibit T — PDV Holding FARA 6997 Supplemental Statement (Sept. 30, 2025).** Disclosure by Defendant PDV Holding, Inc. of (i) Defendant Sardi's June 16, 2025 appointment as Director of PDV Holding, Inc.; and (ii) the materially false declaration that the address of PDV Holding's foreign principal "Junta Administradora ad hoc de PDVSA" was "unknown." Both elements constitute party admissions by PDV Holding under Federal Rule of Evidence 801(d)(2)(A). Referenced herein at ¶¶ 49, 58, 81A, 82, 96A, 121C, and 122B.

Rodriguez Moreno et al. v. CITGO Petroleum Corporation et al. — Verified Complaint (Rule 8(a) Notice-Pleading Initiating Version)

10) **DE Exhibit V — "PDVSA: De la esperanza al colapso" Documentary Evidence Package.** Publicly available materials documenting the Junta-Ad-Hoc-sponsored, Altamira-Cinema-produced, VAI-executive-produced, Urgelles-and-Roncayolo-directed second documentary, including: **(V-1)** Digaloahidigital.com article (no date stamp; web-verified Apr. 27, 2026) at https://digaloahidigital.com/noticias/pdvsa-la-esperanza-al-colapso, identifying full production credits (Altamira Cinema Corp. as producer; Vision Americas International as executive producer; Thaelman Urgelles and Malena Roncayolo as producer-directors; Luis Roncayolo as writer) and full cast list of testimonial subjects (Horacio Medina, Gustavo Coronel, Humberto Calderón Berti, Ramón Aguilar, **Eddie Ramirez**, Gustavo García, Pedro Mario Burelli, Haydée Irausquin, Enrique Sánchez Falcón, Guaicaipuro Lameda, Carlos Ortega, Lino Castillo); **(V-2)** Analitica.com article dated October 31, 2025, at https://www.analitica.com/entretenimiento/horacio-medina-pdvsa-de-la-esperanza-al-colapso-nos-convoca-a-reconstruir-la-industria-energetica/, **expressly identifying the Doral CMX CineBistro CityPlace premiere event as "organizado por PDVSA Ad Hoc, Altamira Cinema y Vision Americas"** and reporting Defendant Medina's personal appearance and introductory remarks at the premiere — direct third-party-press confirmation of Junta-Ad-Hoc sponsorship of the documentary; **(V-3)** Eddie Ramirez column in *El Nacional* dated November 11, 2025, at https://www.elnacional.com/2025/11/documental-historico-sobre-petroleos-de-venezuela/, syndicated to Runrun.es at https://runrun.es/opinion/593103/documental-pdvsa-eddie-ramirez-s/ (titled "*Documental*

Rodriguez Moreno et al. v. CITGO Petroleum Corporation et al. — Verified Complaint (Rule 8(a) Notice-Pleading Initiating Version)

*histórico sobre Petróleos de Venezuela*"), reviewing the documentary, identifying Medina as the documentary's "*hilo conductor*," and authored by Eddie Ramirez (named defendant in the Florida Orange Action and featured testimonial subject in the documentary itself); **(V-4)** Antonio Ledezma column dated November 23, 2025, at https://antonioledezma.net/ideas/articulos/2025-11-23-de-la-esperanza-al-colapso/, confirming the Madrid premiere and the documentary's full cast list; **(V-5)** El Debate article dated November 25, 2025, at https://www.eldebate.com/internacional/20251125/venezuela-esperanza-colapso_358172. html, confirming international distribution and full cast list; **(V-6)** YouTube official trailer ("*PDVSA: De la esperanza al colapso: Avance Oficial*") dated October 20, 2025, at https://www.youtube.com/watch?v=vA7NEEcXbUY; **(V-7)** YouTube full Spanish-language official release dated November 21, 2025, at https://www.youtube.com/watch?v=kG0vH6tHsTY (titled "🎬 *PDVSA: De la esperanza al colapso | Estreno oficial*"); **(V-8)** YouTube English-version full official release dated November 21, 2025, at https://www.youtube.com/watch?v=BnvXyrSScqg (titled "🎬 *PDVSA: Success, Decay and Hope | Official premiere*"). Referenced herein at ¶¶ 88A, 88B, 89A, and 98.

Plaintiffs' counsel will provide this Court with authenticated copies of any of these exhibits upon request.

**VI-A.1. DE-Specific Exhibit Index (Hospital J.M. de los Ríos Testimony)**

215B. **DE-Specific Exhibit Index — Plaintiff Rodriguez Moreno's July 15, 2019 Asamblea Nacional Testimony.** The following exhibits are filed exclusively in this action (Delaware Companion Action) and are not part of the Florida Orange Action exhibit set:

Rodriguez Moreno et al. v. CITGO Petroleum Corporation et al. — Verified Complaint (Rule 8(a) Notice-Pleading Initiating Version)

1) **DE Exhibit F** — Verified verbatim transcript of Plaintiff Rodriguez Moreno's July 15, 2019 testimony before the Asamblea Nacional of the Bolivarian Republic of Venezuela regarding the Hospital J.M. de los Ríos pediatric-oncology cases, prepared by Plaintiff Rodriguez Moreno using the NoteGPT transcription tool from the publicly available video record at https://youtu.be/8KKtWQBrx00. Referenced herein at ¶¶ 91B, 91C, 91D, 91E, 78, 160, and 214.

2) **DE Exhibit G** — Declaration of Plaintiff Rodriguez Moreno authenticating DE Exhibit F (verbatim transcript) and authenticating the public-record video at https://youtu.be/8KKtWQBrx00, executed under penalty of perjury pursuant to 28 U.S.C. § 1746. Plaintiff Rodriguez Moreno will execute and file DE Exhibit G concurrently with the filing of this Complaint. Referenced herein at ¶¶ 91B, 91D, 91E.

## VII. JURY DEMAND

216. Pursuant to Fed. R. Civ. P. 38(b) and the Seventh Amendment, Plaintiffs demand trial by jury on all issues so triable.

## VIII. VERIFICATION

*Individualized Verification Architecture: Each Plaintiff personally executes his own individualized verification of this Complaint on his own behalf only. No Plaintiff signs on behalf of any other Plaintiff. Each verification is executed as a declaration under penalty of perjury pursuant to 28 U.S.C. § 1746.*

*A. Individualized Verification — JORGE ALEJANDRO RODRIGUEZ MORENO (Lead Plaintiff)*

217. I, JORGE ALEJANDRO RODRIGUEZ MORENO, declare under penalty of perjury under the laws of the United States of America, pursuant to 28 U.S.C. § 1746, that: (a) I am the Lead

Plaintiff in this action; (b) I have personally read the foregoing Verified Complaint in its entirety; (c) the factual allegations set forth herein pertaining to my own personal experience, knowledge, and communications are true and correct based upon my personal knowledge; (d) factual allegations made on information and belief, or pertaining to facts within other Plaintiffs' or non-party witnesses' personal knowledge, I believe to be true based on the investigation conducted by the Plaintiff group through sworn affidavits, documentary evidence, and public records; (e) I personally execute this verification on my own behalf only; and (f) I do not execute this verification on behalf of any other Plaintiff.

**Dated:** May 8th, 2026

**Location:** Zürich, Switzerland

/s/ *Jorge Alejandro Rodriguez Moreno*

**JORGE ALEJANDRO RODRIGUEZ MORENO,**

Pro Se Plaintiff

Eichholzstrasse 2, 6312 Steinhausen, Zug, Switzerland

**B. Individualized Verification — IVAN R. FREITES C.**

218. I, IVAN R. FREITES C., declare under penalty of perjury under the laws of the United States of America, pursuant to 28 U.S.C. § 1746, that: (a) I am a co-Plaintiff in this action; (b) I have personally read the foregoing Verified Complaint in its entirety; (c) the factual allegations set forth herein pertaining to my own personal experience, knowledge, and communications are true and correct based upon my personal knowledge; (d) factual allegations made on information and belief, or pertaining to facts within other Plaintiffs' or non-party witnesses' personal knowledge, I believe to be true based on the investigation conducted by the Plaintiff group through sworn affidavits, documentary evidence, and public records; (e) I personally execute this

Rodriguez Moreno et al. v. CITGO Petroleum Corporation et al. — Verified Complaint (Rule 8(a) Notice-Pleading Initiating Version)

verification on my own behalf only; and (f) I do not execute this verification on behalf of any other Plaintiff.

**Dated:** May 5th, 2026

/s/ *Ivan R. Freites C.*

**IVAN R. FREITES C.,**

Santa Ana de Coro, Falcón, Venezuela

Mailing: Calle 20 casa número 12 , Urbanización Santa María , Santa Ana De Coro

Falcón, Venezuela 4101


### C. Individualized Verification — MIGUEL ENRIQUE OTERO C.

218A. I, MIGUEL ENRIQUE OTERO C., declare under penalty of perjury under the laws of the United States of America, pursuant to 28 U.S.C. § 1746, that: (a) I am a co-Plaintiff in this action; (b) I have personally read the foregoing Verified Complaint in its entirety; (c) the factual allegations set forth herein pertaining to my own personal experience, knowledge, and communications are true and correct based upon my personal knowledge; (d) factual allegations made on information and belief, or pertaining to facts within other Plaintiffs' or non-party witnesses' personal knowledge, I believe to be true based on the investigation conducted by the Plaintiff group through sworn affidavits, documentary evidence, and public records; (e) I personally execute this verification on my own behalf only; and (f) I do not execute this verification on behalf of any other Plaintiff.

**Dated:** May 7th, 2026

**Location:** Madrid, Spain

/s/ *Miguel Enrique Otero Castillo*

Rodriguez Moreno et al. v. CITGO Petroleum Corporation et al. — Verified Complaint (Rule 8(a) Notice-Pleading Initiating Version)

**MIGUEL ENRIQUE OTERO CASTILLO,**

Pro Se Plaintiff

Madrid, Spain

Mailing: % RODRIGUEZ Eichholzstrasse 2, 6312 Steinhausen, Zug, Switzerland


***D.1 Individualized Verification — ANGEL MORENO.***

218A. I, ANGEL MORENO, declare under penalty of perjury under the laws of the United States of America, pursuant to 28 U.S.C. § 1746, that: (a) I am a co-Plaintiff in this action; (b) I have personally read the foregoing Verified Complaint in its entirety; (c) the factual allegations set forth herein pertaining to my own personal experience, knowledge, and communications are true and correct based upon my personal knowledge; (d) factual allegations made on information and belief, or pertaining to facts within other Plaintiffs' or non-party witnesses' personal knowledge, I believe to be true based on the investigation conducted by the Plaintiff group through sworn affidavits, documentary evidence, and public records; (e) I personally execute this verification on my own behalf only; and (f) I do not execute this verification on behalf of any other Plaintiff.

**Dated:** May 5th, 2026

**Location:** Tinaco, Venezuela

/s/ANGEL MORENO

Co-Plaintiff, *Pro Se*

*Mailing:* % RODRIGUEZ Eichholzstrasse 2, 6312 Steinhausen, Zug, Switzerland

***D.2. Individualized Verification — PEDRO O. MORA.***

218A. I, PEDRO O. MORA, declare under penalty of perjury under the laws of the United States

Rodriguez Moreno et al. v. CITGO Petroleum Corporation et al. — Verified Complaint (Rule 8(a) Notice-Pleading Initiating Version)

of America, pursuant to 28 U.S.C. § 1746, that: (a) I am a co-Plaintiff in this action; (b) I have personally read the foregoing Verified Complaint in its entirety; (c) the factual allegations set forth herein pertaining to my own personal experience, knowledge, and communications are true and correct based upon my personal knowledge; (d) factual allegations made on information and belief, or pertaining to facts within other Plaintiffs' or non-party witnesses' personal knowledge, I believe to be true based on the investigation conducted by the Plaintiff group through sworn affidavits, documentary evidence, and public records; (e) I personally execute this verification on my own behalf only; and (f) I do not execute this verification on behalf of any other Plaintiff.

**Dated:** May 12th, 2026

**Location:** Valencia, Spain

/s/PEDRO O. MORA

Co-Plaintiff, *Pro Se*

*Mailing:* ℅ RODRIGUEZ Eichholzstrasse 2, 6312 Steinhausen, Zug, Switzerland

### D.3 Individualized Verification — JESUS A. M. CARRILLO.

218A. I, JESUS A. M. CARRILLO, declare under penalty of perjury under the laws of the United States of America, pursuant to 28 U.S.C. § 1746, that: (a) I am a co-Plaintiff in this action; (b) I have personally read the foregoing Verified Complaint in its entirety; (c) the factual allegations set forth herein pertaining to my own personal experience, knowledge, and communications are true and correct based upon my personal knowledge; (d) factual allegations made on information and belief, or pertaining to facts within other Plaintiffs' or non-party witnesses' personal knowledge, I believe to be true based on the investigation conducted by the

Rodriguez Moreno et al. v. CITGO Petroleum Corporation et al. — Verified Complaint (Rule 8(a) Notice-Pleading Initiating Version)

Plaintiff group through sworn affidavits, documentary evidence, and public records; (e) I personally execute this verification on my own behalf only; and (f) I do not execute this verification on behalf of any other Plaintiff.

**Dated:** May 5th, 2026

**Location:** Barquisimeto, Venezuela

/s/JESUS A. M. CARRILLO

Barquisimeto, Venezuela

Mailing: ℅ RODRIGUEZ Eichholzstrasse 2, 6312 Steinhausen, Zug, Switzerland

### E. Reserve Declarations

218C. Individualized Declarations for Plaintiffs RODRIGUEZ MORENO, FREITES, and OTERO are prepared and held in reserve for deployment in reply briefing if any defendant puts the Florida procedural history at issue through motion practice. These Declarations are not appended to this initial Complaint filing.

### F. Counsel Signature Block

219. **Counsel Signature Block.** D. Del.-admitted counsel signature block is to be executed upon counsel's appearance in this action. Pending such appearance, each Plaintiff personally signs his own pro se signature block above.

**[Signature Block]**

Attorney(s) for Plaintiffs

**[END OF VERIFIED COMPLAINT]**

Rodriguez Moreno et al. v. CITGO Petroleum Corporation et al. — Verified Complaint (Rule 8(a) Notice-Pleading Initiating Version)

## PART III — FORUM NON CONVENIENS PREFATORY MEMORANDUM

**Supplemental Section IV — Personal Jurisdiction Limits in Alternative Third-Country Fora.** Even assuming *arguendo* that Spanish or Swiss courts could in theory adjudicate Venezuelan-law claims, neither Spain nor Switzerland possesses personal jurisdiction over the Delaware-incorporated corporate Defendants whose only material contacts with those countries are through the residence of certain Plaintiffs. Spanish jurisdiction over a Delaware corporation requires forum-presence connection nexus; the mere fact of Plaintiff Otero's Spanish residence does not vest Spanish courts with jurisdiction over CITGO Petroleum, PDV Holding, or WWSC. The same analysis applies to Swiss jurisdiction vis-à-vis Plaintiff Rodriguez Moreno.

**Supplemental Section V — Enforcement-Ecosystem Limitation.** The remedies sought in this action — disgorgement under RICO § 1964(a); constructive trust over misappropriated Fundación Simón Bolívar de CITGO disbursements; injunctions against further unauthorized blocked-property transactions; and asset-recovery coordination with the existing D. Del. creditor-priority queue (*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 333 F. Supp. 3d 380 (D. Del. 2018), and progeny) — are uniquely available in this Court. No third-country court could grant constructive-trust or pre-judgment freeze relief over Delaware-situs blocked property, nor could any such court intervene in the D. Del. priority-queue proceedings.

**Supplemental Section VI — Per-Plaintiff Venezuela-Specific Persecution Profile.** Each Plaintiff faces specific, documented impossibility of safe return to or participation in the Venezuelan judicial forum, particularized in the existing Section II of the Memorandum. Per-Plaintiff profiles incorporated.

**[END OF PART III]**

Rodriguez Moreno et al. v. CITGO Petroleum Corporation et al. — Verified Complaint (Rule 8(a) Notice-Pleading Initiating Version)


*[END OF DELAWARE COMPANION COMPLAINT]*