**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| JORGE ALEJANDRO RODRIGUEZ MORENO, *et al.*, | ) ) ) | |
| *Plaintiffs*, | ) ) | C.A. No. 1:26-cv-00582-JLH |
| v. | ) ) ) | Related C.A. No. 1:23-cv-00989-JLH |
| CITGO PETROLEUM CORPORATION, *et al.*, | ) ) | |
| *Defendants*. | ) ) ) | |

**OPENING BRIEF IN SUPPORT OF
CITGO DEFENDANTS' JOINT MOTION TO DISMISS**

MORRIS NICHOLS ARSHT & TUNNELL
Alexandra M. Cumings (#6146)
Phillip Reytan (#7255)
Jonathan H. Lloyd (#7618)
1201 North Market Street
Wilmington, DE 19801
(302) 351-9284
acumings@morrisnichols.com
preytan@morrisnichols.com
jlloyd@morrisnichols.com

*Attorneys for Defendants CITGO Petroleum
Corporation, PDV Holding, Inc., Carlos Jordá,
Samuel Wilhelm, and Fernando Vera*

Dated: June 17, 2026

# TABLE OF CONTENTS

NATURE AND STAGE OF PROCEEDINGS .................................................................... 2

LEGAL STANDARD .......................................................................................................... 6

ARGUMENT ....................................................................................................................... 6

    I.    The Claim-Splitting Doctrine Bars This Case ......................................................... 6

        A.    This Case and *Freites Delaware* Have the Same Claims or Causes of Action Because They Share the Same Nucleus of Facts ........................... 7

        B.    This Case Is Between the Same Parties as Freites Delaware, or Their Privies ...................................................................................................... 8

        C.    The Complaint Should Be Dismissed .................................................... 9

    II.    The Complaint Is an Impermissible Shotgun Pleading......................................... 10

        A.    The Complaint Is "Replete with Conclusory, Vague, and Immaterial Facts Not Obviously Connected to Any Particular Cause of Action" .................11

        B.    The Complaint "Asserts Multiple Claims Against Multiple Defendants Without Specifying Which Of The Defendants Are Responsible For Which Acts Or Omissions" ................................................................................. 12

    III.    Plaintiffs Have Not Plausibly Pleaded Any Cause of Action .............................. 13

        A.    Plaintiffs Have Not Plausibly Pleaded Civil RICO, 18 U.S.C. § 1962(c) (Count I)................................................................................................. 13

            1.    The Complaint Does Not Plausibly Allege the Existence of a RICO Enterprise in which the CITGO Defendants Participated............. 13

            2.    Plaintiffs Have Not Plausibly Pleaded Actionable Predicate Acts 16

            3.    Plaintiffs Have Not Plausibly Pleaded a Pattern of Racketeering Activity ................................................................................... 19

            4.    Plaintiffs Have Not Plausibly Pleaded RICO Injury or Proximate Cause .................................................................................... 20

        B.    Plaintiff's RICO Conspiracy Claim, 18 U.S.C. § 1962(d) (Count II), Falls with Count I ................................................................................. 20

        C.    Plaintiffs Have Not Plausibly Pleaded Federal Witness Intimidation, 42 U.S.C. § 1985(2) (Count III)..................................................................... 21

        D.    Plaintiffs' Equal-Protection Conspiracy Claim, 42 U.S.C. § 1985(3) (Count IV), and Neglect to Prevent § 1985 Conspiracy Claim, 42 U.S.C. § 1986 (Count V) Fail as a Matter of Law ............................................. 22

        E.    Plaintiffs' Torture Victim Protection Act Claim Against the Individual CITGO Defendants (Count VI) Fails...................................................... 23

        F.    Plaintiffs' First Amendment Retaliation and Federal Court-Access Interference Claims (Count IX) Fail as a Matter of Law. ....................... 24

i

G.      Plaintiffs' Tortious Interference and Aiding and Abetting Tortious Interference Claims (Counts X and XI) Fail as a Matter of Law .............. 26

H.      Plaintiffs' Claim for Daños Morales Under Código Civil Articles 1185 and 1196 (Count XII) Fails as a Matter of Law .............................................. 27

I.      Plaintiffs Have Not Plausibly Pleaded Defamation or Aiding and Abetting Defamation (Counts XIII And XIV) ......................................................... 28

CONCLUSION ................................................................................................................................ 30

## TABLE OF AUTHORITIES

**CASES**

*Abdullah v. Briggs*,
No. 4:24-CV-00225, 2024 WL 2902328 (M.D. Pa. June 10, 2024) ........................................ 21

*Arunachalam v. IBM Corp.*,
CV 20-1020-LPS, 2021 WL 7209362 (D. Del. Dec. 29, 2021)................................................. 13

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)........................................................................................... 6, 13, 16, 21

*Avas Sales Lead Servs., Inc. v. Doe*,
No. CV 21-1005-MN-SRF, 2022 WL 4245531 (D. Del. Sept. 15, 2022), report and recommen-
dation adopted, No. CV 21-1005 (MN), 2022 WL 5241911 (D. Del. Oct. 6, 2022) ................. 29

*Avins v. White*,
627 F.2d 637 (3d Cir. 1980) ................................................................................................ 30

*Ayyadurai v. Floor64, Inc.*,
270 F. Supp. 3d 343 (D. Mass. 2017) ................................................................................... 29

*Barmapov v. Amuial*,
986 F.3d 1321 (11th Cir. 2021) ........................................................................................... 12

*Bartol v. Barrowclough*,
251 F. Supp. 3d 855 (E.D. Pa. 2017) ...............................................................................10, 11

*BDO USA, LLP v. EverGlade Glob., Inc.*,
No. N22C-12-063 KSM CCLD, 2023 WL 1371097 (Del. Super. Ct. Jan. 31, 2023) ............... 28

*Brodzki v. Fox Broad. Co.*,
868 F. Supp. 2d 386 (D. Del. 2012) ..................................................................................... 28

*Brown v. Grabowski*,
922 F.2d 1097 (3d Cir. 1990) .............................................................................................. 24

*Camiolo v. State Farm Fire & Cas. Co.*,
334 F.3d 345 (3d Cir. 2003) ................................................................................................ 17

*Campbell v. Pa. Sch. Bds Ass'n*,
336 F. Supp. 3d 482 (E.D. Pa. 2018), aff'd on other grounds, 972 F.3d 213 (3d Cir. 2020)..... 24

*Cap. Inv. Funding, LLC v. Lancaster Res., Inc.*,
No. CIV.A. 08-4714 JLL, 2015 WL 892750 (D.N.J. Feb. 27, 2015)........................................ 16

*Cisneros v. Petland, Inc.*,
    972 F.3d 1204 (11th Cir. 2020) ................................................................................. 13

*City of Warren Police & Fire Ret. Sys. v. Prudential Fin.*,
    70 F.4th 668 (3d Cir. 2023) ....................................................................................... 6

*Clark v. Clabaugh*,
    20 F.3d 1290 (3d Cir. 1994) ............................................................................... 22, 23

*CollegeSource, Inc. v. AcademyOne, Inc.*,
    597 F. App'x 116 (3d Cir. 2015) ........................................................................ 17, 18

*Cornell Glasgow, LLC v. La Grange Props., LLC*,
    No. CIV.A. N11C-05-016 JRS CCLD, 2012 WL 2106945 (Del. Super. Ct. June 6, 2012) ...... 27

*Cousins v. Goodier*,
    283 A.3d 1140 (Del. 2022) ........................................................................................ 29

*Curtin v. Tilley Fire Equip. Co.*,
    No. CIV. A. 99-2373, 1999 WL 1211502 (E.D. Pa. Dec. 14, 1999) ......................... 19

*Doe v. Drummond Co.*,
    782 F.3d 576 (11th Cir. 2015) .................................................................................. 24

*Doug Grant, Inc. v. Greate Bay Casino Corp.*,
    232 F.3d 173 (3d Cir. 2000) ..................................................................................... 16

*Fabics v. City of New Brunswick*,
    629 F. App'x 196 (3d Cir. 2015) ........................................................................... 9, 10

*Filartiga v. Pena-Irala*,
    630 F.2d 876 (2d Cir. 1980) ..................................................................................... 24

*Fortson v. Colangelo*,
    434 F. Supp. 2d 1369 (S.D. Fla. 2006) ..................................................................... 29

*Freites v. CITGO Holding, Inc.*,
    No. 1:23-cv-00989-JLH, 2025 WL 3654006 (D. Del. Dec. 17, 2025) ................... 3, 4

*Freites v. Medina*,
    No. 25-CV-20465, 2025 WL 1425491 (S.D. Fla. May 16, 2025), appeal dismissed, No. 25-
    12067-E, 2025 WL 2638566 (11th Cir. Aug. 27, 2025), motion for relief from judgment denied,
    No. 25-CV-20465, 2026 WL 92829 (S.D. Fla. Jan. 13, 2026) ........................... passim

*Freites v. Viera-Blanco*,
    No. 24-24176-CIV, 2025 WL 4741662 (S.D. Fla. Jan. 28, 2025) ............................. 4

iv

*Fultz v. Neighborhood Legal Servs.*,
654 F. Supp. 881 (W.D. Pa. 1987) ....................................................................... 25

*Gerritsen v. de la Madrid Hurtado*,
819 F.2d 1511 (9th Cir. 1987) ............................................................................ 25

*Gratz v. Ruggiero*,
822 F. App'x 78 (3d Cir. 2020) .......................................................................... 18

*Greenberg v. Potomac Health Sys., Inc.*,
869 F. Supp. 328 (E.D. Pa. 1994) ........................................................................ 9

*Grubbs v. Univ. of Del. Police Dep't*,
174 F. Supp. 3d 839 (D. Del. 2016) ................................................................... 26

*Hammer v. Howard*,
C.A. No. K20A-11-002 NEP, 2021 WL 4935019 (Del. Super. Ct. Oct. 22, 2021)...................... 8

*Hlista v. Safeguard Properties, LLC*,
649 F. App'x 217 (3d Cir. 2016) ........................................................................ 20

*Hynson v. City of Chester Legal Dep't*,
864 F.2d 1026 (3d Cir. 1988) ............................................................................ 10

*In re Ins. Brokerage Antitrust Litig.*,
618 F.3d 300 (3d Cir. 2010) ....................................................................... 14, 15

*Jane W. v. Thomas*,
560 F. Supp. 3d 855 (E.D. Pa. 2021) .................................................................. 24

*Jones v. Mirza*,
230 F. Supp. 3d 339 (D. Del. 2017) ................................................................... 25

*Katz v. Gerardi*,
655 F.3d 1212 (10th Cir. 2011) ........................................................................... 9

*Kehr Packages, Inc. v. Fidelcor, Inc.*,
926 F.2d 1406 (3d Cir. 1991) ............................................................................ 19

*Kimbleton v. White*,
C.A. No. 12–974–GMS, 2014 WL 4386760 (D. Del. Sept. 4, 2014) ......................................... 26

*Knit With v. Knitting Fever, Inc.*,
625 F. App'x 27 (3d Cir. 2015) .......................................................................... 20

v

*Kroll OnTrack, Inc. v. Devon IT, Inc.*,
  Civ. No. 13-302 (DWF/TNL), 2015 WL 13766880 (D. Minn. Mar. 20, 2015).........................26

*Krynicky v. Univ. of Pittsburgh*,
  742 F.2d 94 (3d Cir. 1984) .........................................................................................................25

*Lake v. Arnold*,
  112 F.3d 682 (3d Cir. 1997), as amended (May 15, 1997) .......................................................22

*Langdon v. Google, Inc.*,
  474 F. Supp. 2d 622 (D. Del. 2007) ...........................................................................................25

*Mars, Inc. v. Nippon Conlux Kabushiki-Kaisha*,
  855 F. Supp. 673 (D. Del. 1994), aff'd, 58 F.3d 616 (Fed. Cir. 1995)........................................8

*Massie v. Gov't of the Democratic People's Republic of Korea*,
  592 F. Supp. 2d 57 (D.D.C. 2008) .............................................................................................24

*McKee v. Cosby*,
  236 F. Supp. 3d 427 (D. Mass.), aff'd, 874 F.3d 54 (1st Cir. 2017) .........................................30

*Mierzwa v. Safe & Secure Self Storage, LLC*,
  493 F. App'x 273 (3d Cir. 2012) ................................................................................................14

*Migliore ex rel. Migliore v. Vision Solar LLC*,
  160 F.4th 79 (3d Cir. 2025) ........................................................................................................28

*Minchin v. Ascend Wellness Holdings, Inc.*,
  No. 25cv17576 (EP) (SDA), 2026 WL 1533373 (D.N.J. June 1, 2026)....................................11

*Mirabella v. Villard*,
  853 F.3d 641 (3d Cir. 2017) .......................................................................................................25

*Novosel v. Nationwide Ins. Co.*,
  721 F.2d 894 (3d Cir. 1983) .......................................................................................................29

*OptimisCorp v. Waite*,
  No. CV 8773-VCP, 2015 WL 5147038 (Del. Ch. Aug. 26, 2015), aff'd, 137 A.3d 970 (Del.
  2016) ...........................................................................................................................................26

*Organovo Holdings, Inc. v. Dimitrov*,
  162 A.3d 102 (Del. Ch. 2017).....................................................................................................26

*Ottilio v. Valley Nat'l Bancorp*,
  591 F. App'x 167 (3d Cir. 2015) ................................................................................................17

*Parker v. Learn the Skills Corp.*,
   530 F. Supp. 2d 661 (D. Del. 2008) ............................................................................ 20

*Pedrina v. Chun*,
   97 F.3d 1296 (9th Cir. 1996) ........................................................................................ 8

*Presbury v. Wetzel*,
   789 F. App'x 294 (3d Cir. 2020) ................................................................................ 25

*PTI Servs., Inc. v. Quotron Sys., Inc.*,
   No. CIV. A. 94-2068, 1995 WL 241411 (E.D. Pa. Apr. 19, 1995) .............................. 17

*Rao v. BP Products North America, Inc.*,
   589 F.3d 389 (7th Cir. 2009) ...................................................................................... 14

*Red Dragon Partners, LLC v. TruthMD, LLC*,
   No. CV 24-450-JLH-SRF, 2025 WL 507520 (D. Del. Feb. 14, 2025), report and recommendation adopted, No. CV 24-450-JLH-SRF, 2025 WL 1123970 (D. Del. Apr. 16, 2025)............... 28

*Rode v. Dellarciprete*,
   845 F.2d 1195 (3d Cir. 1988) ...................................................................................... 21

*Schneider v. United States*,
   301 F. App'x 187 (3d Cir. 2008) ............................................................................. 7, 9

*Sinaltrainal v. Coca-Cola Co.*,
   578 F.3d 1252 (11th Cir. 2009), overruled on other grounds by Mohamad v. Palestinian Auth.,
   566 U.S. 449 (2012)...................................................................................................... 24

*Steele v. United States*,
   144 F.4th 316 (D.C. Cir. 2025) ................................................................................ 7, 9

*Tabaka v. Leyre*,
   No. 220CV06600BRMJAD, 2021 WL 5506910 (D.N.J. Nov. 24, 2021) .................... 25

*Truinject Corp. v. Nestlé Skin Health. S.A.*,
   No. C.A. 19-592-LPS-JLH, 2020 WL 1270916 (D. Del. Mar. 17, 2020)................... 12

*United States v. Omoruyi*,
   260 F.3d 291 (3d Cir. 2001) ........................................................................................ 18

*Varas Casado ex rel. Varas v. Hilton Int'l Co.*,
   No. 05-22454-CIV, 2007 WL 9701182 (S.D. Fla. Feb. 23, 2007)........................ 27, 28

*VSI Sales, LLC v. Int'l Fid. Ins. Co.*,
   No. CV 15-507-GMS, 2015 WL 5568623 (D. Del. Sept. 22, 2015) ........................... 27

*Walton v. Eaton Corp.*,
    563 F.2d 66 (3d Cir. 1977) ............................................................................ 6, 10

*Weiland v. Palm Beach Cnty. Sheriff's Off.*,
    792 F.3d 1313 (11th Cir. 2015) .........................................................................11

*Westmont Residential LLC v. Buttars*,
    340 P.3d 183 (Utah Ct. App. 2014) ................................................................... 29

*Zazzali v. Hirschler Fleischer, P.C.*,
    482 B.R. 495 (D. Del. 2012) ............................................................................. 15

*Zweigenhaft v. PharMerica Corp.*,
    Civil Action No. 19-2201-RGA, 2021 WL 6424061 (D. Del. Dec. 10, 2021) ............................ 8


**STATUTES**

18 U.S.C. § 1961(1) ............................................................................................ 19

18 U.S.C. § 1962(c) ......................................................................................... 5, 13

18 U.S.C. § 1962(d) ........................................................................................... 20

18 U.S.C. § 1964(c) ........................................................................................... 20

28 U.S.C. § 1350 .............................................................................................. 23

28 U.S.C. § 1350 note ........................................................................................ 23

42 U.S.C. § 1983 .......................................................................................... 24, 25

42 U.S.C. § 1985 .............................................................................................. 22

42 U.S.C. § 1985(2) ........................................................................................... 21

42 U.S.C. § 1985(3) ........................................................................................... 22

42 U.S.C. § 1986 .............................................................................................. 22

Código Civil art. 1185 ........................................................................................ 27

Código Civil art. 1196 ........................................................................................ 27

Del. Code Ann. tit. 10, § 6002(b) ............................................................................. 29

**RULES**

Fed. R. Civ. P. 12(b)(6) .................................................................................................... 1, 6

Fed. R. Civ. P. 15.............................................................................................................. 10

Fed. R. Civ. P. 8....................................................................................................... passim

Fed. R. Civ. P. 9(b)......................................................................................................... 6, 17

**OTHER AUTHORITIES**

@IvanRFreites, X (May 30, 2026, at 4:30 AM ET), https://x.com/IvanRFreites/sta-
tus/2060534274256699779.................................................................................................. 2

CITGO negó validez de demanda por deudas de un grupo de venezolanos en Delaware, Banca y
Negocios (May 28, 2026), https://www.bancaynegocios.com/citgo-nego-validez-de-demanda-
por-deudas-de-un-grupo-de-venezolanos-en-delaware/.................................................. 2

El Nacional (@ElNacionalWeb), X (May 25, 2026, at 11:15 PM ET), https://x.com/ElNacional-
Web/status/2059005406786035967 ................................................................................... 2

Executive Order 13884 ..................................................................................................... 19

Jorge Alejandro Rodriguez Moreno (@madrugonazo), X (June 10, 2026, at 6:33 PM ET),
https://x.com/madrugonazo/status/2064732647276921177 ......................................... 2

Roger P. Alford, The Future of Human Rights Litigation After Kiobel, 89 Notre Dame L. Rev.
1749 (2014)...................................................................................................................... 24

Defendants PDV Holding, Inc. ("PDVH") and CITGO Petroleum Corp. ("CITGO"), together with PDVH and CITGO officers and/or directors Carlos Jordá, Samuel Wilhelm, and Fernando Vera (the "Individual CITGO Defendants" and, together with PDVH and CITGO, the "CITGO Defendants") respectfully submit this memorandum of law in support of their joint motion to dismiss under Fed. R. Civ. P. 12(b)(6). Plaintiffs' Complaint repackages the same underlying controversy that Plaintiffs have already unsuccessfully tried—and are still futilely trying—to litigate against PDVH, CITGO, and CITGO Holding, Inc. ("CITGO Holding") in this Court in another action. *See Freites v. CITGO Holding, Inc.* ("*Freites Delaware*"), No. 1:23-cv-00989-JLH (D. Del.). Both Plaintiffs' pending (and futile) motion for leave to file a third amended complaint in *Freites Delaware* and the Complaint here revolve around the same false narrative of a purported enterprise under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), the same alleged disclosure of sealed identities, the same alleged campaign of defamation and intimidation, and the same meritless effort to convert conclusory allegations into viable claims. Plaintiffs are attempting to avoid the preclusive effect of this Court's prior orders and rules for the amendment of pleadings by dividing one (fabricated) core controversy into multiple suits and multiple pleadings, a tactic barred by the claim-splitting doctrine.

The Complaint is also an impermissible shotgun pleading. Plaintiffs rely on vague, conclusory labels without identifying which Defendant made which statement, authorized which payment, directed which publication, or agreed to which supposed unlawful objectives. Plaintiffs' group pleading is especially problematic here, where the Complaint asserts *twelve* distinct causes of action against different combinations of *fourteen* defendants. Rule 8 does not permit a plaintiff to substitute structural allegations and rhetoric for concrete factual allegations.

1

Finally, each count is independently defective. Plaintiffs still have not alleged any facts plausibly suggesting that the CITGO Defendants engaged in conduct supporting any viable claim. And almost three years after their first complaint in *Freites Delaware*, it is clear Plaintiffs cannot supply such facts. Indeed, this Court has already found that Plaintiffs failed to show that PDV Holding, CITGO Petroleum, or CITGO Holding disclosed Plaintiffs' identities in violation of the Court's sealing order, a finding that the Complaint expressly "accepts." Compl. at 27 ¶ 17A.[1] The Court should dismiss this case with prejudice. The Court should also bar Plaintiffs from filing any further actions against the CITGO Defendants or their affiliates, directors, officers, or employees without this Court's approval. Plaintiffs are using these filings merely to continue their ongoing smear campaign against the defendants and to keep themselves in the Venezuelan press.[2] Even though Plaintiffs keep losing, they keep filing meritless, duplicative actions to ensure they remain in the Venezuelan press. Such abuse should be stopped.

## NATURE AND STAGE OF PROCEEDINGS

Plaintiffs filed the *Freites Delaware* action under seal on September 7, 2023. *See Freites Del.*, D.I. 1. The initial complaint named CITGO, CITGO Holding, PDVH, Petróleos de

---

[1] The Complaint incorrectly suggests that the Court's finding related only to CITGO Holding. *See* Compl. at 27 ¶ 17A. In fact, Plaintiffs accused not only CITGO Holding, but also PDVH and CITGO (who were still defendants in the *Freites Delaware* action at that time) of being involved in a conspiracy to retaliate against them by coordinating the leak of Plaintiffs' sealed identities, and this Court found that "Plaintiffs have not established that *Defendants* violated the Court's sealing order." *Freites Del.*, D.I. 128 at n.1, 3 (emphasis added).

[2] *See, e.g.*, @IvanRFreites, X (May 30, 2026, at 4:30 AM ET), https://x.com/IvanRFreites/status/2060534274256699779; Jorge Alejandro Rodriguez Moreno (@madrugonazo), X (June 10, 2026, at 6:33 PM ET), https://x.com/madrugonazo/status/2064732647276921177; El Nacional (@ElNacionalWeb), X (May 25, 2026, at 11:15 PM ET), https://x.com/ElNacionalWeb/status/2059005406786035967; *CITGO negó validez de demanda por deudas de un grupo de venezolanos en Delaware*, Banca y Negocios (May 28, 2026), https://www.bancaynegocios.com/citgo-nego-validez-de-demanda-por-deudas-de-un-grupo-de-venezolanos-en-delaware/. Plaintiff Otero is the editor-in-chief and president of *El Nacional*, a Venezuelan newspaper.

Venezuela, S.A. (PDVSA), and the "Ad Hoc Board" of PDVSA as defendants. *See Freites Del.*, D.I. 10 at 2–3. Plaintiffs sought compensation for the alleged termination of their employment by the Venezuelan state-owned oil company PDVSA over twenty years ago and alleged persecution by the regimes of Hugo Chavez and Nicolas Maduro. The original complaint in that action asserted claims for breach of contract, various torts, "[p]recedent causes of action," and "[e]quity-related causes of action," including unjust enrichment, violation of labor laws, violation of international treaties, and fraudulent concealment. *Freites Del.*, 2025 WL 3654006, at *1–5 (D. Del. Dec. 17, 2025). Plaintiffs filed three versions of the complaint against all these defendants and moved to file a fourth. *Freites Del.*, D.I. 5 (sealed complaint), D.I. 10 (sealed amended complaint), D.I. 31-1 (sealed proposed second amended complaint), D.I. 45-1 (redacted version of same), D.I. 92 (motion for leave to file third amended complaint). The Court unsealed the case but allowed certain Plaintiffs to proceed under pseudonyms. *See Freites Del.*, D.I. 37 at 3.

Rather than serve the defendants so the case could proceed, Plaintiffs used the case as a platform for their media campaign and for tangential, baseless allegations that PDVH, CITGO Holding, and CITGO were behind an alleged leak of Plaintiffs' identities on social media by Orlando Viera-Blanco and had "organize[d] defamatory campaigns" against them. *Freites Del.*, D.I. 103 at 3. Over several months, Plaintiffs filed multiple motions requesting sanctions against the CITGO affiliates and others, many of whom had not been named as defendants, for purportedly violating the Court's sealing order. *See Freites Del.*, D.I. 128 at 3. The Court denied the motions, finding that "Plaintiffs have not established that Defendants violated the Court's sealing order." *Id.* The Court also ordered Plaintiffs either to effect service of process on the defendants or state what steps they had taken to try to serve the defendants, upon pain of dismissal. *Id.* at 4. Rather

than comply, Plaintiffs voluntarily dismissed CITGO, PDVH, and all other defendants except CITGO Holding. *Freites Del.*, 2025 WL 3654006, at *1; *Freites Del.*, D.I. 130, D.I. 135.

Plaintiffs also filed two actions in the Southern District Florida, based on the same theory and asserting many of the same claims as alleged here, against Viera-Blanco and various individual defendants and other entities. Both suits were dismissed, the first without prejudice for committing fraud on the court and the second with prejudice as to all federal claims and without prejudice as to all state claims. *Freites v. Viera-Blanco*, No. 24-24176-CIV, 2025 WL 4741662, at *1 (S.D. Fla. Jan. 28, 2025) (dismissing claims for "violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), conspiracy to violate civil rights, defamation, invasion of privacy, and other federal and state law violations"); *Freites v. Medina* ("*Freites S.D. Florida*"), No. 25-CV-20465, 2025 WL 1425491, at *1 (S.D. Fla. May 16, 2025), *appeal dismissed*, No. 25-12067-E, 2025 WL 2638566 (11th Cir. Aug. 27, 2025), *motion for relief from judgment denied*, No. 25-CV-20465, 2026 WL 92829 (S.D. Fla. Jan. 13, 2026) (dismissing RICO, civil-rights-conspiracy, defamation, and related federal and state claims).

On December 17, 2025, this Court dismissed the "sprawling 155-page, 319-paragraph" complaint in the *Freites Delaware* action for failure to state a claim. *Freites Del.*, 2025 WL 3654006, at *1. The Court noted that "Plaintiffs have already had ample opportunities to plead their claims" without success, that they did not "explain how any amendment could possibly cure the deficiencies," and that "further amendment appears to be futile, especially since the Operative Complaint already includes over 300 paragraphs, most of which are irrelevant to any claims that could possibly be asserted against CITGO." *Id.* at *5. Even so, the Court allowed Plaintiffs to file a renewed request for leave to amend in the unlikely event that they could produce a complaint that alleges facts adequate to support their claims. *See id.*

4

Plaintiffs then moved to file yet another complaint, again styled as the "Third Amended Complaint," against CITGO Holding on January 16, 2026. *See* Proposed Third Am. Compl. ("TAC"), *Freites Del.*, D.I. 147-1. The proposed TAC reiterates the already rejected arguments that CITGO Holding had leaked their identities and asserts four causes of action: (1) civil RICO, 18 U.S.C. § 1962(c), based on predicate acts of wire fraud, money laundering, obstruction of justice, and witness tampering; (2) tortious interference with prospective economic advantage; (3) intentional infliction of emotional distress; and (4) aiding and abetting persecution under the Alien Tort Statute. *Id.* at 2, 9–11. CITGO Holding opposed leave to amend as futile. *Freites Del.*, D.I. 148. Plaintiffs filed a reply brief, D.I. 149, and two "notices" of supplemental facts in support of their motion alleging many of the same facts as here. *Freites Del.*, D.I. 150, D.I. 154. The Court has not yet ruled on the motion.

On May 21, 2026, rather than move for leave to amend in *Freites Delaware* to assert claims against the previously dismissed defendants (though that also would have been futile), Plaintiffs filed this action against CITGO, PDVH, the Individual CITGO Defendants, and eight other defendants. As in the *Freites Delaware* TAC and in the Florida actions, the Complaint alleges that the defendants participated in a broad RICO enterprise that used corporate transactions, media activity, and alleged disclosure of sealed identities to retaliate against Plaintiffs for pursuing the *Freites Delaware* litigation and to interfere with their economic and reputational interests. Plaintiffs assert fourteen causes of action against various assortments of defendants.[3] The Complaint

---

[3] Counts I (RICO), II (RICO conspiracy), III (federal witness intimidation conspiracy), IV (equal-protection conspiracy), V (neglect to prevent § 1985 conspiracy); IX (federal court-access interference and First Amendment retaliation), X (Delaware primary tortious interference with prospective business relations), XI (Delaware aiding-and-abetting tortious interference), and XII (Venezuelan *daños morales*) are asserted against all CITGO Defendants. Count VI (Torture Victim Protection Act) is asserted against the individual CITGO Defendants, Count XIII (Delaware

also discloses that Plaintiffs are simultaneously prosecuting a parallel action in Florida state court, *Rodriguez M. v. Medina*, No. 2026-CA-004418-O (Fla. 9th Jud. Cir.), which also names CITGO as a defendant and which, Plaintiffs admit, arises from the same "common factual predicate" as this action. Compl. at 3–4 ¶ 0A.

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation modified). Though the court accepts well-pleaded factual allegations as true and draws all reasonable inferences in favor of the plaintiff, it need not credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Id.* Where a claim sounds in fraud, Fed. R. Civ. P. 9(b) further requires the plaintiff to "state with particularity the circumstances constituting fraud," including "the time, place, and contents of the false representations or omissions, as well as the identity of the person making the statement and the basis for the statement's falsity." *City of Warren Police & Fire Ret. Sys. v. Prudential Fin.*, 70 F.4th 668, 680 (3d Cir. 2023).

## ARGUMENT

### I.       The Claim-Splitting Doctrine Bars This Case

A plaintiff "ha[s] no right to maintain two separate actions involving the same subject matter at the same time in the same court and against the same defendant." *Walton v. Eaton Corp.*, 563 F.2d 66, 70 (3d Cir. 1977). Courts thus will dismiss a subsequent suit under the claim-splitting doctrine where the prior litigation "(1) involve[d] the same claims or cause of action, (2) between

---

defamation per se) is asserted against PDVH, and Count XIV (Delaware aiding-and-abetting defamation per se) is asserted against PDVH and CITGO. Compl. at 93–101 ¶¶ 31–44. The Complaint's remaining counts, Counts VII and VIII, are "reserved." Compl. at 96–97 ¶¶ 37–38.

the same parties or their privies." *Steele v. United States*, 144 F.4th 316, 325 (D.C. Cir. 2025) (citation modified); *accord Schneider v. United States*, 301 F. App'x 187, 190 (3d Cir. 2008).

**A.     This Case and *Freites Delaware* Have the Same Claims or Causes of Action Because They Share the Same Nucleus of Facts**

Two cases involve the same cause of action if they "share the same nucleus of facts." *Steele*, 144 F.4th at 324 (citation modified). In determining whether two cases share the same nucleus of facts, courts consider "whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *Id.* at 325. The Proposed Third Amended Complaint in *Freites Delaware* alleges in conclusory fashion that CITGO Holding, along with a "corporate structure" including CITGO, was part of an "enterprise" consisting of "CITGO Holding, PDVSA, and their agents." TAC at 5, 9. Plaintiffs allege that this enterprise harmed them through a program of "witness tampering" and "intimidation," culminating in a May 24, 2024 "Delaware Leak," in which CITGO Holding, through its purported "agent" Orlando Viera-Blanco, allegedly disclosed sealed plaintiff identities. *Id.* at 2, 7, 9–10. Plaintiffs link this alleged incident to a broader campaign of defamation and intimidation allegedly funded through CITGO-linked entities such as the Simon Bolivar Foundation. *Id.* at 8.

The Complaint here repackages that same story. *See* Compl. at 26–27 ¶ 17. It expressly alleges the same "Sanctions-Evasion and Witness-Suppression Enterprise," *id.* at 91 ¶ 25, relies on the same "Delaware Leak," *id.* at 15 ¶ 12(b)(2), the same Viera-Blanco conduct, *id.* at 56 ¶ 30B(g), the same Simon Bolivar Foundation disbursement theory, *id.* at 7 ¶ 3, the same allegations of an enterprise extending all the way up CITGO's "corporate chain," *id.* at 45 ¶ 25(5), and the same alleged campaign to suppress plaintiffs' litigation and testimony, *id.* at 5 ¶ 1. The cases thus share the same nucleus of facts. *See, e.g.*, *Mars, Inc. v. Nippon Conlux Kabushiki-Kaisha*, 855

7

F. Supp. 673, 678 (D. Del. 1994), *aff'd*, 58 F.3d 616 (Fed. Cir. 1995) (applying claim splitting doctrine to bar case where "[t]he facts underlying both . . . cases are related in time, space, origin, and motivation, and would form a convenient trial unit.").[4]

### B.    This Case Is Between the Same Parties as Freites Delaware, or Their Privies

Although the *Freites Delaware* Plaintiffs voluntarily dismissed all defendants but CITGO Holding, Plaintiffs originally named PDVSA, the PDVSA Ad Hoc Board, CITGO, and PDVH as defendants and litigated against them for nearly a year and a half. *See supra* Nature and Stage of Proceedings. Moreover, CITGO and PDVH are corporate affiliates and thus privies of CITGO Holding for claim-splitting purposes. *See, e.g.*, *Mars, Inc.*, 855 F. Supp. at 677 ("wholly owned subsidiary" is in privity with its parent for claim preclusion purposes). The Individual CITGO Defendants likewise are considered privies here. *Hammer v. Howard*, C.A. No. K20A-11-002 NEP, 2021 WL 4935019, at *3 (Del. Super. Ct. Oct. 22, 2021) ("In general, a director's close relationship with the corporation will establish privity." (citation modified)); *id.* at n.24 (citing with approval *Pedrina v. Chun*, 97 F.3d 1296, 1302 (9th Cir. 1996), in which the Ninth Circuit held "corporate officers named in RICO action were in privity with corporation that was party to earlier action because the officers stood accused of participating in the same wrongdoing, committed in their official capacities, of which the corporation stood accused in the earlier action"); *see also Zweigenhaft v. PharMerica Corp.*, Civil Action No. 19-2201-RGA, 2021 WL 6424061, at *2 (D. Del. Dec. 10, 2021) (holding corporate director was in privity with corporate members in prior

---

[4] The Complaint asserts that "this action's Counts arise from substantially different operative-fact clusters" than *Freites Delaware*. Compl. at 30–31 ¶ 17C(4). But as is plain from this description, Plaintiffs' argument misstates what the Proposed Third Amended Complaint actually alleges. It is not limited to (or even focused on) "pre-2024 conduct," *id.* at 30 ¶ 17C(4), or targeted at a different alleged conspiracy. It focuses on the same conduct, and the same alleged conspiracy.

action because he had a "sufficiently close relationship, and their interests are substantially aligned").

Moreover, Plaintiffs themselves assert that these entities occupy successive levels of the same corporate structure, share the same operative interests, and are alleged to have participated in the same course of conduct through shared officers and agents. They cannot avoid claim-splitting simply by dropping CITGO Holding from the caption and reasserting the same controversy against its closely aligned corporate affiliates and officers. *See, e.g.*, *Greenberg v. Potomac Health Sys., Inc.*, 869 F. Supp. 328, 331 (E.D. Pa. 1994) (finding privity where complaint alleged that wholly owned subsidiary and its parent "share officers" who acted on the subsidiary's behalf).

### C.    The Complaint Should Be Dismissed

Dismissal is the appropriate remedy for Plaintiffs' claim-splitting. *Schneider*, 301 F. App'x at 190. It does not matter that the Third Amended Complaint in *Freites Delaware* is only proposed. "[A] final judgment is not a necessary component of the claim-splitting analysis." *Katz v. Gerardi*, 655 F.3d 1212, 1218 (10th Cir. 2011); *accord Steele*, 144 F.4th at 324. Rather, the test is "whether the first suit, assuming it were final, would preclude the second suit." *Katz*, 655 F.3d at 1218. If the Court grants leave to amend in *Freites Delaware*, Plaintiffs will be prosecuting the same enterprise theory, arising from the same nucleus of facts, in two actions before this Court at the same time. If the Court instead denies leave because the proposed amendment is futile, that determination will rest on the insufficiency of the very theories repackaged here, and the resulting judgment will bar them outright. Either way, Plaintiffs cannot maintain this second action.

Nor should Plaintiffs be permitted to accomplish through a new complaint what they could not accomplish in *Freites Delaware* without leave of court. *See Fabics v. City of New Brunswick*, 629 F. App'x 196, 198 (3d Cir. 2015). The Court's December 17 Order permitted Plaintiffs to renew their request for leave to amend, subject to review for futility. *Freites Del.*, D.I. 146 at 10.

9

Filing a new action asserting the same enterprise narrative against affiliated defendants, while that motion remains pending, is an attempt to evade both the Court's gatekeeping function under Rule 15 and the orderly resolution of *Freites Delaware*, one that further vexatiously multiplies proceedings.[5] The Complaint should accordingly be dismissed with prejudice. *Fabics*, 629 F. App'x at 198–99 (affirming denial with prejudice of duplicative complaint filed to "circumvent[] the rules pertaining to the amendment of complaints"). At a minimum, the Court has discretion to stay this action to prevent duplicative litigation and inconsistent rulings. *See Walton*, 563 F.2d at 70–71.

## II.   The Complaint Is an Impermissible Shotgun Pleading

Federal Rule of Civil Procedure 8 provides that a complaint must be supported by a "short and plain statement of the claim" and that "[e]ach allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(a)(2), (d)(1). The Third Circuit has criticized "the all too common shotgun pleading approach" as violating Rule 8. *Hynson v. City of Chester Legal Dep't*, 864 F.2d 1026, 1031 n.13 (3d Cir. 1988). The Eleventh Circuit has "categorized shotgun pleadings into four different types," of which two are relevant here: (1) "a complaint that is 'replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action'"; and (2) "a complaint that 'asserts multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against.'" *Bartol v. Barrowclough*, 251 F. Supp. 3d 855, 859 (E.D. Pa. 2017) (quoting

---

[5] The Complaint admits that Plaintiffs are "concurrently prosecuting two parallel civil actions arising from a common factual predicate," this action and a Florida state-court action that also names CITGO, and that the two actions are "deliberately and transparently architected" to divide defendants, legal theories, and "operative-fact subsets" among fora. Compl. at 3–4 ¶ 0A.

*Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1321–23 (11th Cir. 2015)) (citation modified).[6]

### A.    The Complaint Is "Replete with Conclusory, Vague, and Immaterial Facts Not Obviously Connected to Any Particular Cause of Action"

The 117-page Complaint is a paradigmatic example of a pleading "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *Bartol*, 251 F. Supp. 3d at 859. The Complaint includes extended discussions of preclusion "architecture," Compl. at 3 ¶ 0-NP, 19 ¶ 13, commentary on the prior Florida federal court actions, *id.* at 32–33 ¶ 18A, the pending Florida state court action, *id.* at 21–24 ¶ 16A, anti-suit injunctions, *id.* at 20 ¶ 15, *Colorado River* abstention, *id.* at 25–26 ¶ 16C, forum non conveniens, *id.* at 37–40 ¶¶ 21A, 22A, the severability of FSIA defendants, *id.* at 33 ¶ 19, and service timing, *id.* at 33–35 ¶ 19A; lengthy discussion of Office of Foreign Assets Control ("OFAC") general licenses and the Foreign Government Deposit Funds framework, *id.* at 67–68 ¶ 47A, 102–104 ¶ 215(C)(4); detailed narratives about Venezuelan politics, *id.* at 87–88 ¶ 60B, 109–10 ¶ 215B, foreign sovereign immunity, *id.* at 72–74 ¶ 51A, and Foreign Agents Registration Act ("FARA") registrations, *id.* at 76–78 ¶ 52B, documentary premieres, *id.* at 92 ¶ 27, YouTube releases, *id.* at 103 ¶ 215(C)(4), and media columns, *id.* at 108 ¶ 215A(10); and pages of allegations about family relocation, *id.* at 62 ¶ 40, PTSD, *id.* at 63 ¶ 41, cardiac conditions, *id.* at 64 ¶ 42, and generalized persecution. Much of this material may be designed to feed Venezuelan press narratives or anticipate arguments that might be made in a motion to dismiss, but it is not obviously or even remotely connected to the elements of any asserted cause of action. *See, e.g.*, *Minchin v. Ascend Wellness Holdings, Inc.*, No. 25cv17576 (EP) (SDA), 2026 WL 1533373, at *8 (D.N.J. June 1, 2026) (dismissing complaint

---

[6] Courts in this Circuit often follow Eleventh Circuit precedent because that circuit "has articulated the bulk of existing law in this area." *Bartol*, 251 F. Supp. 3d at 859.

containing "extraneous information" and whose "unnecessary prolixity places an unjustified burden on the Court and Defendants"); *see also Barmapov v. Amuial*, 986 F.3d 1321, 1325–26 (11th Cir. 2021) (affirming dismissal of complaint "rife with immaterial factual allegations").

### B. The Complaint "Asserts Multiple Claims Against Multiple Defendants Without Specifying Which Of The Defendants Are Responsible For Which Acts Or Omissions"

The Complaint also asserts a long list of claims against a large set of defendants without specifying which defendant is responsible for which allegedly wrongful act. *See, e.g.*, *Truinject Corp. v. Nestlé Skin Health. S.A.*, No. C.A. 19-592-LPS-JLH, 2020 WL 1270916, at *3 (D. Del. Mar. 17, 2020). For example, Counts I and II are asserted against every defendant other than Viera-Blanco and simply incorporate the same broad narrative of wires, media activity, documentary financing, FARA filings, and social-media amplification, without separating which alleged predicate act is attributed to CITGO, which to PDVH, and which to particular individuals. Compl. at 93–94 ¶¶ 31–32. The same problem recurs in the other counts, each of which is pleaded by alleging that the relevant set of defendants conspired, interfered, aided and abetted, retaliated, or caused injury, without identifying which defendant engaged in what actionable conduct. *Id.* at 94–101 ¶¶ 33–44.

Moreover, the pleading repeatedly relies on collective labels such as "Defendants," "the Enterprise," "Count Defendants," or the "corporate chain," *see, e.g.*, Compl. at 80–83 ¶¶ 54–57, then attempts to sweep all defendants into the allegations through conclusory references to buzzwords such as "apex-direction authority," *id.* at 82 ¶ 57, "ratification," *id.*, and "willful-blindness," *id.* at 80 ¶ 54. Rule 8 does not permit plaintiffs to assert a sprawling enterprise narrative and then leave Defendants and the Court to guess which counts rest on which acts by which parties. *See, e.g.*, *Arunachalam v. IBM Corp.*, CV 20-1020-LPS, 2021 WL 7209362, at *8 (D. Del. Dec.

12

29, 2021) (dismissing complaint where pro se plaintiff "fail[ed] to link claims to specific defendants").

Indeed, Plaintiffs themselves describe the Complaint as a "Rule 8(a) notice-pleading initiating form" filed "for the sole purpose of commencing this civil action at minimum reproduction and delivery burden." Compl. at 2–3 ¶ 0-NP. It states that the factual allegations appear only in "summary common-fact form," that each count is stated "in short-and-plain notice form" "rather than in the element-by-element long form," and that Plaintiffs "expressly reserve, and intend to exercise, their right to amend . . . to restore the full element-by-element pleading of each Count." *Id.*; *see also id.* at 93 ¶ 28, 96–97 ¶¶ 37, 38. But Rule 8 does not contemplate placeholder pleading. A complaint must allege facts that state a plausible claim for relief when it is filed; it cannot reserve the required elements for a promised future amendment. *See Iqbal*, 556 U.S. at 678–79.

### III.   Plaintiffs Have Not Plausibly Pleaded Any Cause of Action

#### A.   Plaintiffs Have Not Plausibly Pleaded Civil RICO, 18 U.S.C. § 1962(c) (Count I)

To bring a civil RICO claim under 18 U.S.C. § 1962(c), a plaintiff "must plausibly allege six elements: that the defendants (1) operated or managed (2) an enterprise (3) through a pattern (4) of racketeering activity that included at least two predicate acts of racketeering, which (5) caused (6) injury to the business or property of the plaintiff." *Cisneros v. Petland, Inc.*, 972 F.3d 1204, 1211 (11th Cir. 2020). The Complaint does not satisfy any of these elements.

##### 1.   The Complaint Does Not Plausibly Allege the Existence of a RICO Enterprise in which the CITGO Defendants Participated

To begin, Plaintiffs fail to allege facts plausibly suggesting the existence of an association-in-fact racketeering enterprise in which the CITGO Defendants participated. "A RICO claim must plead facts plausibly implying the existence of an enterprise with . . . a shared purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these

13

associates to pursue the enterprise's purpose." *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 369–70 (3d Cir. 2010) (citation modified). "When the asserted enterprise . . . is not itself a legal entity, but rather an association of legal entities, simply identifying the allegedly associated components does not serve to put defendants on notice of the RICO claim alleged against them—just as merely listing the names of alleged conspirators would not give defendants adequate notice of an alleged conspiracy." *Id.* at 369. For example, in *Rao v. BP Products North America, Inc.*, 589 F.3d 389 (7th Cir. 2009), a case cited with approval by the Third Circuit, *see In re Ins. Brokerage Antitrust Litig.*, 618 F.3d at 370, the Seventh Circuit held that allegations of disparate events involving "different," sometimes unnamed "actors for each event," without any indication of "how the different actors are associated" or for what common purpose did not plausibly allege an enterprise. *Rao*, 589 F.3d at 400. Similarly, in *Insurance Brokerage*, the Third Circuit held that allegations of "parallel conduct by separate actors" were insufficient to imply that the actors "function[ed] as a unit." 618 F.3d at 374.

Here, as in *Rao* and *Insurance Brokerage*, Plaintiffs do not plausibly allege the existence of an enterprise that functioned as a single unit. The Complaint merely enumerates vaguely described, discrete, and disparate events involving different actors and combinations of (often unnamed) actors for each event—such as wire transfers, a board appointment, reimbursement payments, documentary films, social media postings, and allegedly false FARA filings, *see id.* at 92 ¶ 27, without any facts showing how these events are associated with one another or how the actors are plausibly committed to the elaborate common purpose Plaintiffs have imagined. *See, e.g.*, *Mierzwa v. Safe & Secure Self Storage, LLC*, 493 F. App'x 273, 276 (3d Cir. 2012) (affirming dismissal of RICO claim for failure to plead facts demonstrating the existence of an enterprise).

Nor does the Complaint allege facts plausibly suggesting that the CITGO Defendants "participated in the operation or management of the enterprise itself." *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d at 371. While "'outsiders' may also meet the statutory requirement if they exert control over the enterprise, … such outsider defendants must have conducted or participated in the conduct of the '*enterprise's* affairs,' not just their *own* affairs." *Id.* (citation modified) (emphasis in original); *see also id.* (stating that "one is not liable" for a RICO claim "unless one has participated in the operation or management of the enterprise itself"). As to PDVH, Plaintiffs concede that their "claims against PDV Holding rest" solely on the allegations that PDVH registered with FARA as the "U.S.-territorial agent of foreign principal Junta Ad Hoc de PDVSA," that Carlos Sardi was appointed to PDVH's board of directors, that PDVH paid disbursements for "Travel, Meals, and Lodging" to members of the Venezuelan National Assembly's Council for the Protection of Assets Abroad (CAPA), and that one of PDVH's FARA filings purportedly falsely stated that the Ad Hoc Board's address was unknown. Compl. at 30 ¶ 17C(2); D.I. 1-1 at 1, DE Exhibit T; *see also* Compl. at 90–93 ¶¶ 24–30.[7] No facts—as opposed to bald conclusions—are alleged about CITGO other than that it is registered to do business in Florida and that Messrs. Jordá, Wilhelm, and Vera hold positions at the company. *See id.* at 36–37 ¶ 21A. And the only factual allegations regarding Messrs. Jordá, Wilhelm, and Vera are that they hold those positions. *See id.* at 36–37 ¶ 21A, 80–83 ¶¶ 54, 56, 57. None of this is remotely sufficient to suggest that the CITGO Defendants participated in the purported enterprise. *Zazzali v. Hirschler Fleischer, P.C.*, 482 B.R. 495, 516 (D. Del. 2012) (dismissing RICO claim for failure to allege the required participation).

---

[7] The Complaint also alleges that PDVH is the alter ego of PDVSA, but it does not supply any facts to support that conclusion. *See* Compl. at 69–70 ¶ 49.

Plaintiffs allege the conclusion that the individual CITGO Defendants Wilhelm and Jordá knew or should have known that there was "a high probability" that wire transfers made by Defendant Vision Americas International to Defendant Worldwide Strategic Consultants were designed to conceal payments to Mr. Sardi, Compl. at 81–83 ¶¶ 54, 57, but they do not supply any facts plausibly suggesting that the payments were designed to route concealed funds to Mr. Sardi (or any connection between Mr. Sardi and Worldwide Strategic Consultants), much less that Messrs. Wilhelm, Jordá, or Vera agreed to participate in such a scheme or knew or should have known the payments purportedly were destined for Mr. Sardi. *See, e.g.*, *Iqbal*, 556 U.S. at 680–81 (holding that allegations that high-level government officials "knew of, condoned, and willfully and maliciously agreed" to engage in misconduct with other defendants were "conclusory and not entitled to be assumed true," as were allegations that one of the officials "was the 'principal architect' of [an] invidious policy" and the other "was 'instrumental' in adopting and executing it"); *Cap. Inv. Funding, LLC v. Lancaster Res., Inc.*, No. CIV.A. 08-4714 (JLL)(JAD), 2015 WL 892750, at *9 (D.N.J. Feb. 27, 2015) (RICO claim failed because "Plaintiff does not make factual allegations sufficient to demonstrate that Defendants 'knew' that the property involved in any of the financial transactions at issue was 'the proceeds of some form of unlawful activity'").

### 2.    Plaintiffs Have Not Plausibly Pleaded Actionable Predicate Acts

Moreover, and as the Southern District of Florida Court held, Plaintiffs do not allege facts plausibly establishing any predicate racketeering acts. *See Freites S.D. Fla.*, 2025 WL 1425491, at *7. "In order to make out a RICO claim," a plaintiff must allege facts establishing the commission of "the predicate criminal acts enumerated by RICO." *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 184 (3d Cir. 2000). Here, as in the Southern District of Florida, Plaintiffs base their RICO claim on "predicate acts of wire fraud, money laundering, obstruction of justice, and witness tampering," as well as "witness retaliation." Compl. at 93–94 ¶ 31 (citation modified).

16

But the Complaint does not plead those predicates with the detail Rule 8 requires, let alone the particularity Rule 9(b) requires for fraud-based predicates. *See PTI Servs., Inc. v. Quotron Sys., Inc.*, No. CIV. A. 94-2068, 1995 WL 241411, at *14 (E.D. Pa. Apr. 19, 1995) ("RICO counts predicated upon acts of fraud must fulfill the pleading requirements of Fed. R. Civ. P. Rule 9(b)."). In fact, Plaintiffs plead no facts at all at pages 93–94, leaving Defendants to guess at which facts in the preceding pages are meant to support their RICO claims.

As to wire fraud, Plaintiffs do not identify with precision the allegedly fraudulent wire communications, who made them, when they were made, what specific false or misleading representation each contained, who received them, or how the CITGO Defendants used interstate wires in furtherance of a fraudulent scheme. *See Camiolo v. State Farm Fire & Cas. Co.*, 334 F.3d 345, 364 (3d Cir. 2003) (explaining that establishing wire fraud requires allegations showing a "scheme or artifice to defraud," which must include "some sort of fraudulent misrepresentations or omissions reasonably calculated to deceive persons of ordinary prudence and comprehension"). The Complaint instead points generally to payment flows, FARA filings, and media activity and then labels them "wire fraud," without pleading the who, what, when, where, and how of a fraud claim. *See Ottilio v. Valley Nat'l Bancorp*, 591 F. App'x 167, 168 (3d Cir. 2015) (affirming dismissal of RICO claim where plaintiff "alleged mail or wire fraud as a predicate act," but "did not provide any specificity regarding the purpose of the wires or mailings; nor did he allege who sent them, when they were sent, or how they fit into the purported fraudulent scheme"). In addition, wire fraud requires that the purported misconduct be for the purpose of "obtaining money or property," but there are no allegations that Plaintiffs were defrauded or were asked for "money or property." *See CollegeSource, Inc. v. AcademyOne, Inc.*, 597 F. App'x 116, 126 (3d Cir. 2015). Finally, the Complaint's other allegations sound in defamation, and "[c]ourts routinely reject the contention

17

that a defamation scheme can establish wire fraud." *Freites S.D. Fla.*, 2025 WL 1425491, at *7 (collecting cases).

Similarly, Plaintiffs have not alleged facts plausibly satisfying the elements of a money laundering offense. *Freites S.D. Fla.*, 2025 WL 1425491, at *11 ("The Court finds that Plaintiffs' money laundering allegations are too vague to constitute predicate acts necessary to establish their RICO claim.").[8] Plaintiffs identify transfers, disbursements, and supposed blocked-property activity, but they do not allege facts plausibly suggesting that any defendant conducted a qualifying financial transaction with the statutorily required criminal proceeds, knowledge, and intent. "That conclusory allegation is wholly insufficient to establish money laundering as a predicate act." *Freites S. D. Fla.*, 2025 WL 1425491, at *11.

The other predicates fare no better. Obstruction of justice, witness tampering, and witness retaliation all require concrete factual allegations showing that a particular defendant corruptly endeavored to obstruct a judicial proceeding, used threats or intimidation to influence testimony or participation, or caused "bodily injury or damage to tangible property" in retaliation for testimony given. *See CollegeSource*, 597 F. App'x at 126 (affirming dismissal of RICO claim predicated on obstruction of justice for failure to allege defendants committed "acts *directly* affecting parties, witnesses or jurors"); *Gratz v. Ruggiero*, 822 F. App'x 78, 84 (3d Cir. 2020) (affirming dismissal of RICO claim predicated on witness tampering for failure to allege conduct that "rise[s] to the level of intimidation, a threat, corrupt persuasion, or harassment"); *Curtin v. Tilley Fire*

---

[8] *United States v. Omoruyi*, 260 F.3d 291, 294–95 (3d Cir. 2001) ("[T]he four elements of a money laundering offense[] [are] (1) an actual or attempted financial transaction; (2) involving the proceeds of specified unlawful activity; (3) knowledge that the transaction involves the proceeds of some unlawful activity; and (4) either an intent to promote the carrying on of specified unlawful activity or knowledge that the transactions were designed in whole or in part to conceal the nature, location, source, ownership, or control of the proceeds of specified unlawful activity.").

18

*Equip. Co.*, No. CIV. A. 99-2373, 1999 WL 1211502, at *5 (E.D. Pa. Dec. 14, 1999) (dismissing RICO claim predicated on witness retaliation where plaintiff did "not allege that he suffered any physical or property damage"). As the Southern District of Florida court explained, Plaintiffs' allegations of online publication, documentaries, reputational attacks, FARA activity, and general litigation hostility do not satisfy these requirements. *Freites S.D. Fla.*, 2025 WL 1425491, at *9 & n.14 (explaining that "defamation is not a predicate act under RICO" and that the alleged disclosure of sealed Delaware materials "amounts to litigation activity" best dealt with through a court's supervisory powers, not racketeering activity).[9]

### 3. Plaintiffs Have Not Plausibly Pleaded a Pattern of Racketeering Activity

Even if the Complaint pleaded a predicate act (it does not), it does not plead a "pattern" of racketeering activity. By Plaintiffs' own design, every operative predicate post-dates May 16, 2025, and the alleged acts (wire transfers, FARA filings, a directorship appointment, documentary financing, social-media publications, and a newspaper column) all serve a single asserted objective: discrediting and deterring a handful of identified plaintiffs in connection with one underlying controversy. Compl. at 92–93 ¶¶ 27, 30. A single alleged scheme, directed at a small and fixed set of victims over roughly a year, and tethered to the life of particular litigation, establishes neither closed-ended continuity over a substantial period nor any plausible threat of indefinitely continuing criminal activity. *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1413 (3d Cir. 1991) (affirming denial of leave to amend complaint alleging RICO claim because alleged scheme was

---

[9] Plaintiffs' vague allegations of sanctions violations also do not supply RICO predicate acts. Alleged violations of Executive Order 13884, the International Emergency Economic Powers Act ("IEEPA"), or OFAC's implementing regulations are not among the predicate acts enumerated in 18 U.S.C. § 1961(1).

"short-lived and directed at a limited number of people," and "this court has required some further indication that the defendant's fraudulent activities are likely to continue").

### 4. Plaintiffs Have Not Plausibly Pleaded RICO Injury or Proximate Cause

The Complaint also does not allege cognizable RICO injuries proximately caused by the alleged enterprise. A "plaintiff may satisfy the cognizable injury component under § 1964(c) of RICO only by allegations and proof of actual monetary loss, i.e., an out-of-pocket loss." *Parker v. Learn the Skills Corp.*, 530 F. Supp. 2d 661, 678 (D. Del. 2008) (citation modified). "Claimed losses to 'goodwill' and 'business reputation,' in addition to being highly speculative, are not the type of injuries compensable under RICO." *Id.* Here, Plaintiffs' purported injuries are personal, reputational, and emotional. *See* Compl. 61–68 ¶¶ 40–47A. They are not out-of-pocket losses. The Complaint promises to particularize Plaintiffs' lost "employment, consulting, advisory, banking, editorial, and litigation-position opportunities" in a future amendment, Compl. at 93 ¶ 28, but again, such promises do not satisfy Rule 8.

### B. Plaintiff's RICO Conspiracy Claim, 18 U.S.C. § 1962(d) (Count II), Falls with Count I

Because Plaintiffs' RICO claim fails, their § 1962(d) conspiracy claim must fail as well. *Hlista v. Safeguard Properties, LLC*, 649 F. App'x 217, 222 (3d Cir. 2016) ("[W]hen the pleadings do not state a substantive RICO claim, the RICO conspiracy claim must fail."). In addition, the Complaint pleads no facts plausibly suggesting the CITGO Defendants agreed to participate in racketeering: no communications, no meetings, no decisions, and no defendant-specific conduct from which an agreement could be inferred. *Knit With v. Knitting Fever, Inc.*, 625 F. App'x 27, 39 (3d Cir. 2015) (RICO conspiracy claims dismissed where the allegations "do not permit the inference that [defendant] agreed to conduct or participate in the activities of a racketeering enterprise").

### C.   Plaintiffs Have Not Plausibly Pleaded Federal Witness Intimidation, 42 U.S.C. § 1985(2) (Count III)

As the Southern District of Florida held, Plaintiffs' witness-intimidation conspiracy claim is not plausibly pleaded. The Complaint does not allege facts showing an agreement to deter testimony or any force, intimidation, or threat.[10] Plaintiffs rely on the same allegations of online publication, documentaries, reputational attacks, social-media postings, and generalized hostility to the Delaware litigation, but those allegations do not amount to concrete threats directed at attendance or truthful testimony in a federal proceeding. *See Freites S.D. Fla.*, 2025 WL 1425491, at *2, *13–14.

Nor do Plaintiffs allege facts plausibly suggesting that the CITGO Defendants entered into an agreement to deter any witness, what each of them supposedly agreed to do, when that agreement was formed, or what threatening act each undertook in furtherance of it. Instead, the Complaint again pleads through collective, conclusory labels like "Defendants" and "the Enterprise," infers agreement from corporate roles and alleged affiliation, and attempts to transform a broad narrative of defamation and litigation-related conflict into a federal witness-intimidation conspiracy. That is insufficient. *See supra* Part III.A.1 (describing paucity of allegations regarding alleged conduct by the CITGO Defendants); *Iqbal*, 556 U.S. at 682–83 (while the complaint alleged "that various other" persons might have violated the plaintiff's rights, the plaintiffs could not state a claim against certain defendants before the Court where the "only factual allegation against [them]" did "not show, or even intimate," that those defendants were liable for the alleged misconduct); *Abdullah v. Briggs*, No. 4:24-CV-00225, 2024 WL 2902328, at *7 (M.D. Pa. June 10, 2024)

---

[10] The elements "of a 1985(2) claim of witness intimidation are (1) a conspiracy between two or more persons (2) to deter a witness by force, intimidation or threat from attending court or testifying freely in any pending matter, which (3) results in injury to the plaintiffs." *Rode v. Dellarciprete*, 845 F.2d 1195, 1206 (3d Cir. 1988).

("[Plaintiff] repeatedly states, in conclusory fashion, that Defendants . . . 'orchestrated' a conspiracy. Such talismanic phrases do not suffice[.]") (citation modified); *see also Freites Del.*, D.I. 128 at 3 ¶ 5 (court finding that Plaintiffs failed to show that PDVH, CITGO Holding, or CITGO violated the sealing order); Compl. at 27 ¶ 17A (Plaintiffs' "accept[ance]" of Court's finding).

### D. Plaintiffs' Equal-Protection Conspiracy Claim, 42 U.S.C. § 1985(3) (Count IV), and Neglect to Prevent § 1985 Conspiracy Claim, 42 U.S.C. § 1986 (Count V) Fail as a Matter of Law

Plaintiffs' equal-protection conspiracy claim fails because the Complaint does not plausibly plead racial or otherwise class-based invidiously discriminatory animus. *See Lake v. Arnold*, 112 F.3d 682, 685 (3d Cir. 1997), *as amended* (May 15, 1997).[11] The primary class alleged, "Venezuelan nationals," fails because the Complaint pleads no facts suggesting that any defendant acted out of animus toward Venezuelans as such: the alleged wrongdoers are themselves Venezuelan nationals and organizations owned or affiliated with Venezuela or Venezuelan nationals, and the motive the Complaint actually pleads is control of corporate assets and hostility to Plaintiffs' litigation, not nationality. The alternative "diaspora political dissenters" class fares no better, as the Southern District of Florida held in rejecting the same theory advanced by these same Plaintiffs. *Freites S.D. Fla.*, 2025 WL 1425491, at *12-15. Nor have Plaintiffs alleged facts plausibly suggesting the CITGO Defendants were involved in any conspiracy. *See supra* Parts III.A.1, III.C.

Section 1986 "constitutes an additional safeguard for those rights protected under 42 U.S.C. § 1985, and transgressions of § 1986 by definition depend on a preexisting violation of § 1985." *Clark v. Clabaugh*, 20 F.3d 1290, 1295 (3d Cir. 1994) (citation modified).

---

[11] To state a claim under § 1985(3), "a plaintiff must allege: (1) a conspiracy; (2) motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons to the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States." *Lake*, 112 F.3d at 685.

"Thus," where, as here, "the elements of the § 1985 conspiracy are missing, a § 1986 cause of action is properly dismissed[.]" *Id.* at 1295 n.5. In addition, a defendant has no duty to prevent such a conspiracy even if one existed absent "actual knowledge" of the conspiracy and "the power to prevent or aid in preventing the commission of [the] § 1985 violation." *Id.* at 1295. Plaintiffs have not plausibly pleaded any knowledge or power on the part of the CITGO Defendants relating to any conspiracy to deprive Plaintiffs of equal protection out of race- or class-based animus.

      E.     **Plaintiffs' Torture Victim Protection Act Claim Against the Individual CITGO Defendants (Count VI) Fails**

Plaintiff Freites also fails to sufficiently plead his claim against the Individual CITGO Defendants under the Torture Victim Protection Act ("TVPA"), 28 U.S.C. § 1350.[12] In support of this claim, Freites points only to the alleged disclosure of his asylum status, which purportedly exposed him to threats. Compl. at 96 ¶ 36. This does not approach the statutory definition of "torture," nor does it supply facts showing the "intentional[]" infliction of harm or "custody or physical control" over Freites—the former of which cannot be satisfied by Plaintiffs' willful blindness allegations elsewhere in the Complaint,[13] and the latter of which is irreconcilable with Freites' theory of the claim. Compl. at 53–54 ¶ 30A, 111 ¶ 218. Nor does the Complaint allege the requisite "threat of imminent death." 28 U.S.C. § 1350 note (Torture Victim Protection § 3(b)(2)(C)-(D)). In short, the alleged conduct bears no resemblance to the extreme brutality the TVPA targets. *See, e.g.*, *Jane W.*

---

[12] The TVPA permits recovery from an individual who, "under actual or apparent authority, or color of law, of any foreign nation," subjects another to "torture"—defined as "any act, directed against an individual in the offender's custody or physical control, by which severe pain or suffering . . . whether physical or mental, is intentionally inflicted" for purposes including punishment, intimidation, or coercion. 28 U.S.C. § 1350 note (Torture Victim Protection §§ 2(a), 3(b)).

[13] Plaintiffs' willful blindness allegations concern WWSC compensation flows—not any conduct directed at Freites—and in any event willful blindness does not satisfy the specific intent that the TVPA requires. *See* 28 U.S.C. § 1350 note (Torture Victim Protection § 3(b)(1)); Compl. at 80–83 ¶¶ 54, 56, 57. Plaintiffs' generic assertion that the Defendants committed intentional acts (Compl. at 53–54 ¶ 30A, 57–58 ¶ 30C) is conclusory and does not satisfy the statute's requirements.

*v. Thomas*, 560 F. Supp. 3d 855, 870, 882 (E.D. Pa. 2021) (soldiers firing on trapped civilians in a church); *Massie v. Gov't of the Democratic People's Republic of Korea*, 592 F. Supp. 2d 57, 60–68 (D.D.C. 2008) (prisoners beaten, starved, and held hostage for months).

Freites also fails to plausibly allege that the CITGO individual defendants acted under authority or color of law. While silent on authority, the Complaint concedes that existing color-of-law jurisprudence "most often involved actual military or government officers acting through formal state hierarchies" and admits the "officer-director apparatus" of the CITGO entities would be "a doctrinal extension rather than a direct factual application" of existing precedent. Compl. at 8 ¶ 4. The Complaint's admitted failure to plead color of law is fatal.[14]

### F.      Plaintiffs' First Amendment Retaliation and Federal Court-Access Interference Claims (Count IX) Fail as a Matter of Law.

Plaintiffs' First Amendment retaliation and federal court-access interference claims both fail for lack of state action. Both claims are brought under section 1983 and, like other actions for constitutional violations under section 1983, "require[] the conduct complained of to constitute state action." *Campbell v. Pa. Sch. Bds Ass'n*, 336 F. Supp. 3d 482, 494 (E.D. Pa. 2018) (citation modified), *aff'd on other grounds*, 972 F.3d 213 (3d Cir. 2020); *see also Brown v. Grabowski*, 922 F.2d 1097, 1113 (3d Cir. 1990) (a claim for federal court access interference likewise sounds in section 1983 and stems from the obligation of "state actors . . . to refrain from preventing

---

[14] Each case cited by Freites supports this conclusion. *See Filartiga v. Pena-Irala*, 630 F.2d 876, 878 (2d Cir. 1980) (an ATS case involving a paradigmatic state actor—a Paraguayan police inspector general who directed the victim's kidnapping and torture to death); *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1269–70 (11th Cir. 2009) (affirming dismissal of TVPA claims where plaintiffs alleged only that paramilitary co-conspirators acted with the "toleration" of the Colombian government), *overruled on other grounds by*, *Mohamad v. Palestinian Auth.*, 566 U.S. 449 (2012); *Doe v. Drummond Co.*, 782 F.3d 576, 607 n.43 (11th Cir. 2015) ("The likelihood that corporate officers acted under color of foreign law will be rare, and even assuming they did, pleading that fact as a plausible occurrence will be extraordinarily difficult . . . ." (quoting Roger P. Alford, *The Future of Human Rights Litigation After* Kiobel, 89 Notre Dame L. Rev. 1749, 1756 (2014)).

individuals from obtaining access to the civil courts"); *Krynicky v. Univ. of Pittsburgh*, 742 F.2d 94, 99 (3d Cir. 1984) (explaining "the state action requirement of section 1983").[15]

The Complaint does not allege facts showing any defendants were state actors under U.S. law. *See Gerritsen v. de la Madrid Hurtado*, 819 F.2d 1511, 1515 (9th Cir. 1987) (acts taken by a foreign government "cannot constitute conduct under color of state law."); *Tabaka v. Leyre*, No. 220CV06600BRMJAD, 2021 WL 5506910, at *2 (D.N.J. Nov. 24, 2021) (holding that § 1983 claims "do not apply to foreign government officials or foreign entities"). Plaintiffs' claims there-fore must be dismissed. *See, e.g.*, *Fultz v. Neighborhood Legal Servs.*, 654 F. Supp. 881, 884 (W.D. Pa. 1987) (dismissing First Amendment retaliation claim for failure to allege state action); *Jones v. Mirza*, 230 F. Supp. 3d 339, 343 (D. Del. 2017) (dismissing Section 1983 claim where complaint contained only conclusory allegations that private entity and its employee were state actors); *Lang-don v. Google, Inc.*, 474 F. Supp. 2d 622, 631 (D. Del. 2007) ("A conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim against the private entity." (citation omitted)). Nor does the Complaint allege facts plausibly suggesting that the CITGO Defendants were involved in or responsible for the underlying conduct the Plaintiffs point to as alleged retaliation or that they contend has interfered with their federal court access. *See supra* Parts III.A.1, III.C.

The Complaint's federal court access claim also fails because Plaintiffs identify no non-frivolous underlying claim that has been lost. *See Presbury v. Wetzel*, 789 F. App'x 294, 295 (3d Cir. 2020) ("An access to the courts claim is ancillary to the underlying claim, and, as such, a

---

[15] The elements of a First Amendment retaliation claim are: "(1) constitutionally protected con-duct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." *Mirabella v. Villard*, 853 F.3d 641, 649 (3d Cir. 2017) (citation modified).

plaintiff must identify a nonfrivolous, arguable underlying claim that was lost." (citation modified)). But Plaintiffs' claims have been litigated multiple times, without success. And Plaintiffs are now actively litigating claims in two actions in this Court and in Florida state court. Whatever else may be said of Plaintiffs' claims, Plaintiffs have not been prevented from pressing them.

### G. Plaintiffs' Tortious Interference and Aiding and Abetting Tortious Interference Claims (Counts X and XI) Fail as a Matter of Law

Plaintiffs' tortious interference claim with prospective business relations fails because Plaintiffs' alleged lost business opportunity—a litigation claim—is non-actionable as a matter of law.[16] The "mere hope" of recovery in a lawsuit is not a business opportunity at all, much less—given Plaintiffs' dim prospects of success—a reasonably probable one. *See, e.g.*, *Kroll OnTrack, Inc. v. Devon IT, Inc.*, Civ. No. 13-302 (DWF/TNL), 2015 WL 13766880, at *7 (D. Minn. Mar. 20, 2015) ("an expected outcome of a lawsuit" is "not a business relationship" and "is not the type of interest sought to be protected by this tort"). Moreover, Plaintiffs do not and cannot allege that the disclosure of their identities prevented them from recovering on their claims. Plaintiffs' suit has continued notwithstanding the alleged leak. *See Kimbleton v. White*, C.A. No. 12–974–GMS, 2014 WL 4386760, at *8 (D. Del. Sept. 4, 2014) (tortious interference claim failed where plaintiff had not "identified any specific contracts with potential home buyers that were lost as a result of" defendant's conduct); *Organovo Holdings, Inc. v. Dimitrov*, 162 A.3d 102, 123 (Del. Ch. 2017) (dismissing tortious interference claim where complaint "never specified any customer relationships … harmed").

---

[16] The elements of tortious interference with prospective business relations are: "(a) the reasonable probability of a business opportunity, (b) the intentional interference by defendant with that opportunity, (c) proximate causation, and (d) damages." *Grubbs v. Univ. of Del. Police Dep't*, 174 F. Supp. 3d 839, 862–63 (D. Del. 2016); *accord OptimisCorp v. Waite*, No. CV 8773-VCP, 2015 WL 5147038, at *76 (Del. Ch. Aug. 26, 2015), *aff'd*, 137 A.3d 970 (Del. 2016).

The Count fails on the remaining elements as well: the Complaint alleges no act of intentional interference by the CITGO Defendants directed at any identified opportunity (and the Court has already found that Plaintiffs failed to show that the CITGO entities were responsible for the purported leak), no wrongful means employed by any of the CITGO Defendants, and no nonspeculative damages proximately caused by them. *See supra* Parts III.A.1, III.C.

Delaware courts have not recognized a cause of action for aiding and abetting tortious interference. Even if such a cause of action exists, it would fail. "[A]iding and abetting is a derivative tort, there must be an actionable underlying wrong to which the claim of aiding and abetting can attach." *Cornell Glasgow, LLC v. La Grange Props., LLC*, No. CIV.A. N11C-05-016 JRS CCLD, 2012 WL 2106945, at *11 (Del. Super. Ct. June 6, 2012); Compl. at 16 ¶ 12(b)(3) (acknowledging derivative nature). Here, there is no underlying wrong because Plaintiffs have not plausibly pleaded their tortious interference claim. Nor have Plaintiffs plausibly alleged that the CITGO Defendants aided and abetted the underlying conduct Plaintiffs claim constitutes tortious interference. *See supra* Parts III.A.1, III.C.

### H.  Plaintiffs' Claim for Daños Morales Under Código Civil Articles 1185 and 1196 (Count XII) Fails as a Matter of Law

Plaintiffs attempt to plead a cause of action under Venezuelan *daños morales*. Compl. at 99 ¶ 42. But *daños morales* under Venezuelan law are "material" and "moral" damages, which are "economic and non-economic damages" recoverable for "pain and suffering." *Varas Casado ex rel. Varas v. Hilton Int'l Co.*, No. 05-22454-CIV, 2007 WL 9701182, at *6, 8 (S.D. Fla. Feb. 23, 2007) (citing Venezuelan case). No court in the United States appears to have treated *daños morales* as an independent cause of action. In any event, choice of law is governed by Delaware's most-significant-relationship test. *VSI Sales, LLC v. Int'l Fid. Ins. Co.*, No. CV 15-507-GMS, 2015 WL 5568623, at *2 (D. Del. Sept. 22, 2015). The conduct alleged (U.S. corporate decisions,

27

payments, filings, and publications) does not plausibly call for the application of Venezuelan law. Even if Venezuelan law applied, the Count alleges no facts plausibly suggesting an *hecho ilícito* (wrongful act) committed by the CITGO Defendants. *See Varas Casado*, 2007 WL 9701182, at *8; *supra* Parts III.A.1, III.C.

## I. Plaintiffs Have Not Plausibly Pleaded Defamation or Aiding and Abetting Defamation (Counts XIII And XIV)

Plaintiffs' defamation claim against PDVH and aiding and abetting defamation claim against PDVH and CITGO fail because Plaintiffs do not allege facts plausibly suggesting that PDVH or CITGO published or gave knowing, substantial assistance to the publication of any defamatory statements. *See supra* Parts III.A.1, III.C; *Red Dragon Partners, LLC v. TruthMD, LLC*, No. CV 24-450-JLH-SRF, 2025 WL 507520, at *6 (D. Del. Feb. 14, 2025) ("A cause of action for aiding and abetting requires a showing of knowing and substantial assistance to the person(s) who committed the wrongful act."), *report and recommendation adopted*, No. CV 24-450-JLH-SRF, 2025 WL 1123970 (D. Del. Apr. 16, 2025).[17] The Complaint's theory of vicarious liability "through Medina" and through a "FARA-disclosed . . . disbursement chain," Compl. at 100, ¶ 43, rests solely on labels: the Complaint pleads no facts establishing that Medina spoke as PDVH's agent in making any of the alleged statements, and "[t]here is no agency exception to the plausible-pleading requirement." *Migliore ex rel. Migliore v. Vision Solar LLC*, 160 F.4th 79, 87 (3d Cir. 2025). Likewise, the Complaint's allegations of "funding," "institutional financial-conduit provision," and "ratification" are labels, not facts. *See Red Dragon*, 2025 WL 507520, at *6.

---

[17] The elements of defamation are: "(1) a defamatory communication; (2) publication; (3) the communication refers to the plaintiff[;] (4) a third party's understanding of the communication's defamatory character and (5) injury." *Brodzki v. Fox Broad. Co.*, 868 F. Supp. 2d 386, 389 n.2 (D. Del. 2012). Defamation is "libel" if written, "slander" if oral. *BDO USA, LLP v. EverGlade Glob., Inc.*, No. N22C-12-063 KSM CCLD, 2023 WL 1371097, at *15 n.162 (Del. Super. Ct. Jan. 31, 2023). The distinction between defamation per se and defamation per quod applies only to slander, not to libel, and affects the requirements for proving damages. *Id.*

28

Moreover, the alleged publications by others that Plaintiffs label defamatory—allegedly describing them as "judicial terrorists," "*estafadores*," "false oppositors [sic]," "strikebreakers," "scammers," and "blackmailers," Compl. at 100 ¶ 43, are mere opinions and may not be "reasonably understood to imply defamatory and provably false facts" about Plaintiffs. *Cousins v. Goodier*, 283 A.3d 1140, 1158 (Del. 2022); *see, e.g.*, *Avas Sales Lead Servs., Inc. v. Doe*, No. CV 21-1005-MN-SRF, 2022 WL 4245531, at *3 (D. Del. Sept. 15, 2022) (statement that plaintiff is "very sneaky" cannot "reasonably be read to state or imply provably false and defamatory facts"), *report and recommendation adopted*, No. CV 21-1005 (MN), 2022 WL 5241911 (D. Del. Oct. 6, 2022); *Westmont Residential LLC v. Buttars*, 340 P.3d 183, 189 (Utah Ct. App. 2014) ("Exaggerated language used to express opinion, such as 'blackmailer,' 'traitor' or 'crook,' does not become actionable merely because it could be taken out of context as accusing someone of a crime." (citation modified)); *Fortson v. Colangelo*, 434 F. Supp. 2d 1369, 1380 (S.D. Fla. 2006) (agreeing with previous decision that "calling an individual a 'thug' is not defamatory"); *Ayyadurai v. Floor64, Inc.*, 270 F. Supp. 3d 343, 361–62 (D. Mass. 2017) ( "Language such as 'fraud,' 'snake-oil job,' 'rip-off,' and 'scam' is generally protected as hyperbolic speech." (citation modified)).

"Speech on public issues has always rested on the highest rung of the hierarchy of First Amendment values." *Novosel v. Nationwide Ins. Co.*, 721 F.2d 894, 899 (3d Cir. 1983) (citation modified). Delaware law offers special protection to such speech as well. Del. Code Ann. tit. 10, § 6002(b) (granting extra procedural protections to a defendant "in a civil action against a person based on the person's . . . (3) Exercise of the right of freedom of speech or of the press, the right to assemble or petition, or the right of association, guaranteed by the United States Constitution or Delaware's Constitution, on a matter of public concern"). Plaintiffs describe themselves "dissidents" and have commented extensively in public about this litigation and related issues. *See supra*

29

p. 2 & n.2. Any commentary by defendants on such public issues is precisely what the right to freedom of speech insulates from liability. *See, e.g.*, *McKee v. Cosby*, 236 F. Supp. 3d 427, 444–45 (D. Mass.), *aff'd,* 874 F.3d 54 (1st Cir. 2017) (where plaintiff accused defendant of misconduct in tabloid, defendant's public attacks on her credibility are protected opinion under the First Amendment).

Finally, because Plaintiffs have voluntarily thrust themselves into the public eye in relation to an issue of public importance, the First Amendment requires them to plead actual malice in addition to the normal elements of defamation. *Avins v. White*, 627 F.2d 637, 647 (3d Cir. 1980); *McKee*, 236 F. Supp. 3d at 453 n. 25. Plaintiffs have failed to plead any facts suggesting actual malice. *See* Compl. at 102 ¶ 215(A)(8) (conclusory allegation of "punitive damages under the actual-malice standard"). For these reasons, Plaintiffs' defamation claim must be dismissed.

## CONCLUSION

For all these reasons, the Complaint should be dismissed with prejudice, and Plaintiffs should be barred from filing any further actions against the CITGO Defendants or their affiliates, directors, officers, or employees without this Court's approval.

30

MORRIS NICHOLS ARSHT & TUNNELL

OF COUNSEL:

Nathan P. Eimer
Daniel D. Birk
Eimer Stahl LLP
224 South Michigan Avenue, Suite 1100
Chicago, Il 60604
(312) 660-7600
neimer@eimerstahl.com
dbirk@eimerstahl.com

Jonathan Breit
Eimer Stahl LLP
1999 South Bascom Avenue
Suite 1025,
Campbell, CA 95008
(408) 889-1670
jbreit@eimerstahl.com

*Attorneys for*
*CITGO Petroleum Corporation and*
*PDV Holding, Inc.*

WILLKIE FARR & GALLAGHER LLP
Michael J. Gottlieb
2049 Century Park East
Los Angeles, California 90067
(310) 855-3000

Samuel G. Hall
Kristin E. Bender
1875 K Street NW
Washington, DC 20006
(202) 303-1000

*Attorneys for Defendants*
*Carlos Jordá, Samuel Wilhelm, and*
*Fernando Vera*

Dated:  June 17, 2026

*/s/ Alexandra M. Cumings*
Alexandra M. Cumings (#6146)
Phillip Reytan (#7255)
Jonathan H. Lloyd (#7618)
1201 North Market Street
Wilmington, DE 19801
(302) 351-9284
acumings@morrisnichols.com
preytan@morrisnichols.com
jlloyd@morrisnichols.com

*Attorneys for Defendants*
*CITGO Petroleum Corporation,*
*PDV Holding, Inc., Carlos Jordá,*
*Samuel Wilhelm, and Fernando Vera*

31

## CERTIFICATE OF SERVICE

I hereby certify that on June 17, 2026, I electronically filed **Opening Brief in Support of Citgo Defendants' Joint Motion to Dismiss Plaintiffs' Complaint (the "Opening Brief")** with the Clerk of the Court using CM/ECF, which sent notification of such filing to all registered participants.

I further certify that on June 17, 2026, a copy of the foregoing **Opening Brief** was caused to be served upon the following by first class mail:

Jorge Alejandro Rodriquez Moreno          Ivan R. Freites C.
Michael Enrique Otero Castillo             Calle 20
Angel Moreno                               Casa Numero 12
Pedro O. Mora                              Santa Maria
Jesus A.M. Carrillo                        Santa Ana De Coro 4101
Eichholzstrasse 2                          Venezuela
Steinhausen 6312
Zug, Switzerland

/s/ Jonathan H. Lloyd
Jonathan H. Lloyd (#7618)

32