**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

JORGE ALEJANDRO RODRIGUEZ MORENO, *et al.*,

*Plaintiffs*,

v.

CITGO PETROLEUM CORPORATION, *et al.*,

*Defendants*.

C.A. No. 1:26-cv-00582-JLH

Related to: C.A. No. 1:23-cv-00989-JLH

# CITGO DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SANCTIONS

Dated: August 18, 2026

OF COUNSEL:
WILLKIE FARR & GALLAGHER LLP
Michael J. Gottlieb
2049 Century Park East
Los Angeles, California 90067
(310) 855-3000
mgottlieb@willkie.com

Samuel G. Hall
Kristin E. Bender
1875 K Street NW
Washington, DC 20006
(202) 303-1000
shall@willkie.com
kbender@willkie.com

*Attorneys for Defendants Carlos Jordá, Samuel Wilhelm, and Fernando Vera*

Alexandra M. Cumings (#6146)
Phillip B. Reytan (#7255)
Jonathan H. Lloyd (7618)
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
acumings@morrisnichols.com
preytan@morrisnichols.com
jlloyd@morrisnichols.com

*Attorneys for Defendants CITGO Petroleum Corporation, PDV Holding, Inc., Carlos Jordá, Samuel Wilhelm, and Fernando Vera*

EIMER STAHL LLP
Nathan P. Eimer
Daniel D. Birk
224 South Michigan Avenue
Suite 1100
Chicago, IL 60604
Tel: (312) 660-7600
neimer@eimerstahl.com
dbirk@eimerstahl.com

Jonathan Breit
1999 South Bascom Avenue
Suite 1025,
Campbell, CA 95008
Tel: (408) 889-1670
jbreit@eimerstahl.com

*Attorneys for Defendants CITGO Petroleum Corporation and PDV Holding, Inc.*

# TABLE OF CONTENTS

**Page**


NATURE AND STAGE OF PROCEEDINGS ....................2

A. Plaintiffs File and Publicize Their Initial Vexatious Lawsuit in Delaware ....................2

B. Plaintiffs File and Publicize Additional Vexatious Lawsuits in Florida ....................6

C. Plaintiffs Orchestrate Harassing Correspondence Targeting Defendants. ....................9

D. Plaintiffs Pursue the Threatened Instant Lawsuit and a Parallel State Action in Florida, and Defendants Serve a Rule 11 Safe Harbor Motion on Plaintiffs. ....................11

LEGAL STANDARD ....................12

ARGUMENT ....................13

I. The Court Should Issue Rule 11 Sanctions to Check and Deter Plaintiffs from Their Improper Purpose and Baseless Claims. ....................14

A. The Complaint Was Filed for Improper Purposes. ....................14

B. Plaintiffs' Legal Contentions Are Not Warranted by Existing Law. ....................16

C. Plaintiffs' Factual Allegations Lack Evidentiary Support. ....................17

II. The Court Should Issue a Pre-Filing Injunction Pursuant to the All Writs Act and Its Inherent Authority to Preclude Plaintiffs from Further Vexatious Conduct. ....................18

A. The Court Should Issue a Pre-Filing Injunction under the All Writs Act. ....................18

B. The Court May Issue a Pre-Filing Injunction under Its Inherent Authority. ....................20

CONCLUSION ....................20

## TABLE OF CITATIONS

**Cases** **Page(s)**

*Arunchalam v. Int'l Bus. Machs. Corp.*,
No. 20-1020 (VAC), 2022 WL 3443169 (D. Del. June 23, 2022) ........................................20

*Cooter & Gell v. Hartmarx Corp.*,
496 U.S. 384 (1990)........................................................................................................12

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*,
No. 17-mc-151 (D. Del. June 28, 2024) ..........................................................................3, 9

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*,
No. 25-3323 (3d Cir. June 5, 2026) ..................................................................................9

*Danihel v. Off. of President*,
640 F. App'x 185 (3d Cir. 2016) ..................................................................................12, 19

*Davis v. State of Tx.*,
No. 15-377-SLR, Civ. No. 15-384-SLR, 2015 WL 4477701 (D. Del. July 22, 2015) .........................................................................................................................20

*Doering v. Union Cnty. Bd. of Chosen Freeholders*,
857 F.2d 191 (3d Cir. 1988)...........................................................................12, 14, 18

*Egnotovich v. Greenfield Twp. Sewer Auth.*,
304 F. App'x 94 (3d Cir. 2008) .......................................................................14, 15, 17

*Emrit v. Univ. of Va. Darden Sch. of Bus.*,
2024 WL 1533953 (D. Del. Apr. 9, 2024).......................................................................13

*Ford Motor Co. v. Summit Motor Prods., Inc.*,
930 F.2d 277 (3d Cir. 1991)..............................................................................................12

*Freites C. v. CITGO Holding, Inc.*,
No. 1:23-cv-00989-JLH, 2025 WL 3654006 (D. Del. Dec. 17, 2025)............................ *passim*

*Freites C. v. Viera-Blanco*,
No. 1:24-cv-24176, 2025 WL 4741662, (S.D. Fla. Jan. 28, 2025)...............................6, 15, 16

*Freites v. Medina*,
No. 25-cv-20465-BB, 2025 WL 1425491 (S.D. Fla. May 16, 2025) ............................. *passim*

*Gaiardo v. Ethyl Corp.*,
835 F.2d 479 (3d Cir. 1987)..............................................................................................12

*Gambrell v. Hess*,
777 F. Supp. 375 (D.N.J. 1991) .........................................................................................15

*Garrett v. Petroleos de Venezuela*,
No. 24-cv-380 (D. Del. Dec. 17, 2025) ....................................................................8, 9

*In re Hussain*,
532 F. App'x 196 (3d Cir. 2013) ..........................................................................14

*Inst. for Motivational Living, Inc. v. Doulos Inst. for Strategic Consulting, Inc.*,
110 F. App'x 283 (3d Cir. 2004) ......................................................................13, 20

*In re Intel Corp. Microprocessor Antitrust Litig.*,
562 F. Supp. 2d 606 (D. Del. 2008).......................................................................20

*Kamdem-Ouaffo v. Fein Such Kahn & Sheppard, P.C.*,
No. 23-2089, 2024 WL 5244699 (3d Cir. Dec. 30, 2024).......................................19

*Lawrence v. Cherry Creek Sch. Dist. No. 5*,
No. 1:24-cv-00678-DDD-KAS, 2025 WL 4356719 (D. Colo. Oct. 9, 2025) ..........................15

*Lawrence v. Cherry Creek Sch. Dist. No. 5*,
No. 24-cv-00678-DDD-KAS, 2025 WL 4356721 (D. Colo. Aug. 25, 2025) ..........................15

*Lopenza v. PDVSA et al.*,
No. 1:25-cv-25796-DSW (Dec. 8, 2025)..................................................................8, 9

*Loving v. Pirelli Cable Corp.*,
11 F. Supp. 2d 480 (D. Del. 1998)..........................................................................17

*Loving v. Pirelli Cable Corp.*,
178 F.3d 1279 (3d Cir. 1999).................................................................................17

*Martin v. Farmers First Bank*,
151 F.R.D. 44 (E.D. Pa. 1993)...............................................................................17

*In re Oliver*,
682 F.2d 443 (3d Cir. 1982)...................................................................................13

*In re Packer Ave. Assocs.*,
884 F.2d 745 (3d Cir. 1989)...................................................................................13

*Rodriguez M. v. CITGO Petroleum Corp.*,
No. 2026-CA-004418-O (Fla. 9th Jud. Cir.)...........................................................11

*Scott v. Vantage Corp.*,
64 F.4th 462 (3d Cir. 2023) ...................................................................................15

*Shaikh v. State of N.J.-Dep't of Banking & Ins.*,
2026 WL 172963 (3d Cir. Jan. 22, 2026) ...............................................................18

*Sofaly v. Portfolio Recovery Assocs., LLC*,
155 F.4th 289 (3d Cir. 2025) ....................................................................................15

*In re Stimwave Techs. Inc. Perryman v. Province, LLC*,
No. 22-10541 (TMH), No. 24-199 (JLH), 2024 WL 4626221 (D. Del. Oct. 30, 2024) ....................................................................................13, 20

*Thomas v. Conn. Gen. Life Ins. Co.*,
No. Civ.A. 02–MC–136, 2003 WL 22953189 (D. Del. Dec. 12, 2003)................................20

*Toll v. Am. Airlines, Inc.*,
166 F. App'x 633 (3d Cir. 2006) ....................................................................12, 18

*Vehicle Operation Techs. LLC v. Am. Honda Motor Co. Inc.*,
67 F. Supp. 3d 637 (D. Del. 2014)....................................................................16

*White v. Gen. Motors Corp.*,
126 F.R.D. 563 (D. Kan. 1989)....................................................................15

*White v. Gen. Motors Corp., Inc.*,
908 F.2d 675 (10th Cir. 1990) ....................................................................15

**Statutes**

18 U.S.C. § 1962(c) .................................................................................... *passim*

18 U.S.C. § 1962(d) ....................................................................................16

28 U.S.C. § 1350....................................................................................16

28 U.S.C. § 1608....................................................................................4, 5

28 U.S.C. § 1651....................................................................................2, 12

28 U.S.C. § 1927....................................................................................19

42 U.S.C. § 1985....................................................................................6, 16

42 U.S.C. § 1985(2) ....................................................................................16

42 U.S.C. §§ 1985(3) ....................................................................................16

**Other Authorities**

Fed. R. Civ. P. 5....................................................................................12

Fed. R. Civ. P. 11.................................................................................... *passim*

Fed. R. Civ. P. 11(b) ....................................................................................14

Fed. R. Civ. P. 11(b)(1).......................................................................................................14, 15

Fed. R. Civ. P. 11(b)(1)–(3)..........................................................................................................12

Fed. R. Civ. P. 11(b)(2).......................................................................................................16, 17

Fed. R. Civ. P. 11(b)(3)...............................................................................................................17

Fed. R. Civ. P. 11(c)(2)...............................................................................................................12

Ivan R. Freites (@IvanRFreites), TWITTER (Jan. 29, 2024, 3:55 PM) https://x.com/IvanRFreites/status/1752088080746451263?s=46.............................................3

Ivan R. Freites (@IvanRFreites), TWITTER (Nov. 25, 2024, 7:58 AM), https://x.com/IvanRFreites/status/1861046700002992605?s=46;............................................4

Jorge Alejandro Rodriguez Moreno, *La paja, el trigo y un libreto* [The Chaff, the Wheat, and a Script], TALCUAL (2018), https://talcualdigital.com/la-paja-el-trigo-y-un-libreto-por-jorge-alejandro-rodriguez-moreno/ (last visited Jul 24, 2026). .......................................................................................................................2

*Trabajadores petroleros presentaron acción judicial contra Citgo y Horacio Medina*, EL NACIONAL (2024), https://www.elnacional.com/2024/11/trabajadores-petroleros-presentaron-accion-judicial-contra-citgo-y-horacio-medina/ (last visited Jul 24, 2026)..............................4

Plaintiffs are serial litigators who have filed at least six actions across three states based on repeatedly discredited allegations against the CITGO Defendants[1] and others. None of the actions has progressed beyond the pleadings, and three have already been dismissed—one for fraud on the court after Plaintiffs forged co-plaintiffs' signatures, another with prejudice as an impermissible shotgun pleading, and a third as futile after this Court found that "most" of its 319 paragraphs were "irrelevant to any claims that could possibly be asserted against CITGO." Despite judicial rebukes for their "defiance" of orders, "fraud" on the court, and "irrelevant" or "vexatious" conduct, Plaintiffs continue to multiply litigation and waste judicial resources at an extraordinary pace.

This case is the latest in Plaintiffs' harassment campaign. On the heels of their threats to file suit and make unfounded government referrals unless the CITGO Defendants agreed to settle—and after counsel's warning that sanctions could follow—Plaintiffs expressly waived the Rule 11 safe harbor period and filed this action against the CITGO Defendants and eight others. Like the ones before it, and as the CITGO Defendants have shown in their pending motion to dismiss, Plaintiffs' Complaint is shotgun, deficient, and deserving of prompt dismissal with prejudice. But dismissal alone will not stop Plaintiffs from advancing new lawsuits repeating variations of the same allegations and claims that multiple courts already have found to be baseless.

The Court has multiple tools to address this situation, including Federal Rule of Civil Procedure 11. Plaintiffs filed the Complaint for the improper purpose of harassing the CITGO Defendants through their touted "multi-front litigation" strategy to obtain publicity and extract payment from meritless claims. Their legal contentions are unwarranted by existing law, having been rejected in multiple prior proceedings. Likewise, the Complaint's central factual allegations,

[1] The CITGO Defendants are PDV Holding, Inc. ("PDVH") and CITGO Petroleum Corp. ("CITGO"), together with PDVH and CITGO officers and/or directors Carlos Jordá, Samuel Wilhelm, and Fernando Vera (the "Individual CITGO Defendants").

including the so-called "Delaware Leak," lack evidentiary support and have been expressly found unsubstantiated by this Court. Sanctions in the form of fees are warranted to deter this abuse.

Further, the Southern District of Florida has already issued Plaintiffs a "final warning" that continued filings would result in "serious consideration" of a pre-filing injunction. Plaintiffs responded by filing two more baseless lawsuits, including this one. Under the All Writs Act, 28 U.S.C. § 1651(a), and judicial inherent authority, this Court and others in the Third Circuit have regularly imposed pre-filing injunctions to stop this sort of duplicative and vexatious litigation.

The CITGO Defendants therefore request that the Court order Plaintiffs to pay the CITGO Defendants' fees and expenses incurred in this litigation and enter a pre-filing injunction requiring Plaintiffs to obtain leave of court before filing—themselves or by proxies—further lawsuits in the federal courts against the CITGO Defendants arising from the same recurring, baseless allegations.

## NATURE AND STAGE OF PROCEEDINGS[2]

### A. Plaintiffs File and Publicize Their Initial Vexatious Lawsuit in Delaware

On September 7, 2023, Plaintiffs, proceeding pro se, filed under seal *Freites C. v. Petroleos de Venezuela, S.A.*, later captioned *Freites C. v. CITGO Holding, Inc.*, No. 1:23-cv-00989-JLH (D. Del.) ("*Freites Delaware*") against PDVH, CITGO, CITGO Holding, Inc. ("CITGO Holding"), Petróleos de Venezuela, S.A. ("PDVSA"), and two others.[3] *See Freites Delaware*, No. 1:23-cv-

[2] Exhibit A to the Declaration of Kristin E. Bender ("Bender Declaration") is a chart of the various legal actions. As shown there, the actions involved one or more of the Plaintiffs—with the participation of Plaintiffs Freites and Otero in all but the *Lopenza* action—or one or more of the CITGO Defendants. For purposes of this Motion, "Plaintiffs" refer to the plaintiffs associated with each corresponding Delaware and Florida federal and state court action and the instant action.

[3] Although Plaintiff Rodriguez is a longtime public critic of the Maduro regime and of PDVSA, he and three other plaintiffs asserted that disclosure of their participation in the suit could expose them or their families to retaliation by the Maduro regime. D.I. 10 ¶ 5; *see, e.g.*, Jorge Alejandro Rodriguez Moreno, Editorial, *La paja, el trigo y un libreto* [The Chaff, the Wheat, and a Script], TALCUAL (Apr. 19, 2018), https://talcualdigital.com/la-paja-el-trigo-y-un-libreto-por-jorge-alejandro-rodriguez-moreno/. Freites expressly "waive[d] the identity protection request" in the

00989-JLH, 2025 WL 3654006, at *1 (D. Del. Dec. 17, 2025), D.I. 146. Plaintiffs sought tens of millions of dollars in damages based on their alleged termination by PDVSA over 20 years earlier and on alleged persecution by the Chávez and Maduro regimes in Venezuela, asserting claims for breach of contract, various torts, "[p]recedent causes of action," and "[e]quity-related causes of action." *Id.* at *1–5. Plaintiffs went on to file a sealed amended complaint (D.I. 10), a motion for leave to file a 136-page second amended complaint (D.I. 18), and a motion for leave to file a "sprawling 155-page, 319-paragraph," further amended complaint (D.I. 31). *See Freites Del.*, 2025 WL 3654006, at *1. Plaintiffs also filed a motion for relief from judgment in the *Crystallex* sale process and a motion for reconsideration, both of which Judge Stark denied, and an appeal that the Third Circuit dismissed for failure to timely prosecute. *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, No. 17-mc-151 (D. Del. June 28, 2024), D.I. 1200, 1218, 1219, 1226, 1235, 1264. Judge Stark also ordered that all further filings by Plaintiffs be treated as correspondence on which no action need be taken. *Id.*, D.I. 1226.

Plaintiffs' procedural abuses plagued *Freites Delaware* from the outset. Despite seeking to keep the case under seal, Plaintiffs, including Rodriguez, who claimed to fear disclosure of his identity, discussed the case and the contents of their sealed complaint with the press. *See, e.g.*, *Freites Del.*, D.I. 34-1 at 8–10.[4] For instance, Rodriguez publicized his own participation in the lawsuit by "invit[ing] his 'friends at PDVSA'" to join the action. *Id.* at 18–20. Meanwhile, Plaintiffs repeatedly filed pleadings with redactions or under seal without leave of Court or in violation of express directions, attempted to communicate with the Court ex parte, and failed to

FAC, D.I. 10 ¶ 1, and although Otero initially kept his identity sealed, he also waived identity protection in the Second Amended Complaint, D.I. 31-1 ¶ 2.

[4] *See also, e.g.*, Ivan R. Freites (@IvanRFreites), TWITTER (Jan. 29, 2024, 3:55 PM), https://x.com/IvanRFreites/status/1752088080746451263?s=46 (content from sealed complaint).

serve their filings on the defendants—prompting repeated orders to serve the defendants, which Plaintiffs disregarded. *See Freites Del.*, D.I. 64; *id.*, D.I. 85. They violated other Court rules and orders as well, including by not signing the Complaint and other pleadings, *see id.*, D.I. 7, and providing incorrect addresses for service (all Plaintiffs other than Freites listed Rodriguez's Switzerland address, to which mail was undeliverable, *see, e.g.*, *id.*, D.I. 40–44, D.I. 46–51).[5]

Plaintiffs had little interest in litigating their claims and were using the action to garner publicity in Venezuela. Both the Court and the CITGO Defendants repeatedly notified Plaintiffs that they had not properly served any defendant, and the Court made clear that the case could not proceed until PDVSA was properly served under the Foreign Sovereign Immunities Act.[6] Instead, Plaintiffs spent their time promoting the case in the press (including in Otero's newspaper *El Nacional*) and on social media,[7] and deluging the Court and the CITGO Defendants with more than 20 vexatious motions (often labeled "emergency") for sanctions and other tangential relief. *See Freites Del.*, D.I. 54, 59–61, 67–69, 73, 79, 83, 84, 86–88, 97–100, 103, 104, 110, 122.

Plaintiffs' many sanctions requests centered on the baseless claim that the CITGO Entity Defendants and others retaliated against Plaintiffs for filing the lawsuit by leaking the sealed

[5] *See also Freites Del.*, D.I. 85 at 3 n.4 (Plaintiffs still had not complied with the Court's order to file a pseudonymous third amended complaint); *id.*, D.I. 95 at 2 (Plaintiffs had not complied with local rule requiring attaching amended pleading to motion for leave to file amended complaint). In addition, Plaintiff Angel Moreno's Application to Proceed In Forma Pauperis was signed "J. Rodriguez." *Id.*, D.I. 4, at 5.

[6] Sixteen months into the action, the CITGO Entity Defendants filed a motion to dismiss for want of prosecution, as Plaintiffs still had not served any defendant with process. The Court denied the motion without prejudice but ordered Plaintiffs, on pain of dismissal, to serve the CITGO Entity Defendants and describe their efforts to serve PDVSA.

[7] *See, e.g.*, *Oil workers filed suit against Citgo and Horacio Medina*, EL NACIONAL (Nov. 22, 2024), https://www.elnacional.com/economia/trabajadores-petroleros-presentaron-accion-judicial-contra-citgo-y-horacio-medina/ (article from publication run by Plaintiff Miguel Enrique Otero); Ivan R. Freites (@IvanRFreites), TWITTER (Nov. 25, 2024, 7:58 AM), https://x.com/IvanRFreites/status/1861046700002992605?s=46; *see also* D.I. 114.

Plaintiffs' identities and Freites's asylum status,[8] and orchestrating a defamation campaign against the Plaintiffs. *See id.*, D.I. 103, at 3; *id.*, D.I. 110, at 1–3. The Court denied the motions after Plaintiffs failed to present a single piece of evidence substantiating their accusations in any of their ***at least 31 briefs and other papers***.[9] *Id.*, D.I. 128, at 3.

On March 20, 2025, Plaintiffs voluntarily dismissed PDVSA, the Ad Hoc Board, and PDVH, *id.*, D.I. 130, and later dismissed CITGO Petroleum, *id.*, D.I. 135, leaving CITGO Holding as the sole defendant. On December 17, 2025, the Court dismissed Plaintiffs' Second Amended Complaint for failure to state a claim. *Freites Del.*, 2025 WL 3654006, at *1, *5. The Court held that the complaint failed to plausibly allege that CITGO Holding could be liable for PDVSA's termination of Plaintiffs or the alleged persecution by the Chavez and Maduro regimes. The Court added that "Plaintiffs have already had ample opportunities to plead their claims against CITGO" without success and that "further amendment appears to be futile, especially since the Operative Complaint already includes over 300 paragraphs, most of which are irrelevant to any claims that could possibly be asserted against CITGO." *Id.* at *5.

The Court nevertheless allowed Plaintiffs to renew their request for leave to amend, *id.*, and Plaintiffs filed a renewed motion for leave to file a Third Amended Complaint on January 16, 2026. *See Freites Del.*, D.I. 147; *id.*, D.I. 147-1 ("TAC"). The proposed TAC abandons all of Plaintiffs' previous claims for a new set—civil RICO under 18 U.S.C. § 1962(c), tortious interference with prospective economic advantage, intentional infliction of emotional distress, and

[8] Freites never explained what was sensitive about his asylum status or how it might prejudice him to have it publicized. Nor did he attempt to show that his asylum status had been disclosed to the defendants under seal (or at all). In fact, Freites himself alleged in the public FAC that "Freites has lived in exile from his homeland since December 2020" and is "[c]urrently domiciled in the U.S." FAC at 115.

[9] *Id.*, D.I. 54, 56, 58, 59, 65–70, 75, 78, 79, 81, 83, 84, 86, 91, 99, 100, 102–04, 108–11, 117, 122, 126, 137.

aiding and abetting persecution under the Alien Tort Statute—and theories based largely on Plaintiffs' conclusory accusations, previously rejected by this Court as unsubstantiated in denying the sanctions motions, that CITGO Holding orchestrated a leak of Plaintiffs' sealed identities on social media to retaliate against them for filing their lawsuit. While the motion is pending, Plaintiffs have filed seriatim "notices" of purported new and supplemental facts. *Id.*, D.I. 150; *id.*, D.I. 154.

**B. Plaintiffs File and Publicize Additional Vexatious Lawsuits in Florida**

On October 28, 2024, Plaintiffs filed an action in the Southern District of Florida against a different slate of defendants based on the same retaliation and defamation allegations underlying their sanctions motions in *Freites Delaware*. *See Freites C. v. Viera-Blanco*, No. 1:24-cv-24176 (S.D. Fla.) ("*Viera-Blanco*"). Plaintiffs asserted twelve claims, ranging from violations of the Racketeer Influenced and Corrupt Organizations Act (RICO) and civil-rights conspiracy under 42 U.S.C. § 1985 to witness tampering, interstate stalking, and defamation. *Id.*, ECF No. 1 at 12–18.

Judge Altonaga dismissed Plaintiffs' complaint in that action as an impermissible shotgun pleading and found Plaintiffs' pleadings deficient. *Id.*, ECF No. 5. Plaintiffs filed an amended complaint, which was dismissed for fraud on the court and other violations given that one or more of the plaintiffs had forged the other plaintiffs' signatures on their filings. *Viera-Blanco*, 2025 WL 4741662, at *1 (S.D. Fla. Jan. 28, 2025).[10] The dismissal was without prejudice, however, so that those capable of litigating on their own behalf could do so. *Id.* at *4.

Several of the Plaintiffs re-filed their claims in a new action, again asserting RICO claims premised on alleged wire fraud, witness tampering, and obstruction of justice, along with

---

[10] *See also id.* at *2 (Freites's fraud on the court by misrepresentations in a notarized affidavit); *id.* at *3 (Plaintiffs failed to appear and secure interpreter as ordered); *id.* ("The Court is left perplexed and without explanation behind the litigants' ongoing failure to comply with the Court's Orders and the Federal Rules."); *id.* at *4 (despite repeated instructions on "clear, non-negotiable requirements, reinforced multiple times to ensure Plaintiffs understood their responsibilities . . . at every turn, Plaintiffs defied the Court's rules and Orders, culminating in a fraud upon the Court").

overlapping tort, conspiracy, and civil-rights claims. *See Freites v. Medina*, No. 25-cv-20465-BB (S.D. Fla.) ("*Medina*"), ECF No. 1 at ¶¶ 69–325.[11] On May 16, 2025, Judge Bloom dismissed Plaintiffs' complaint and ordered the case closed. *See Medina*, No. 25-CV-20465, 2025 WL 1425491, at *1 (S.D. Fla. May 16, 2025), *appeal dismissed*, 2025 WL 2638566 (11th Cir. Aug. 27, 2025), *motion for relief from judgment denied*, 2026 WL 92829 (S.D. Fla. Jan. 13, 2026). The court held that the amended complaint was an impermissible shotgun pleading and that Plaintiffs' federal claims were deficient as a matter of law. *Id.* at *3–19. The court dismissed all federal claims with prejudice and declined to exercise supplemental jurisdiction over the state-law claims. *Id.* at *1, 19 (Plaintiffs "repeatedly filed shotgun pleadings with deficient claims based on the same facts.").

After the case was closed and while their ultimately unsuccessful first appeal was pending, Plaintiffs resumed their pattern of cluttering the docket with what the Magistrate Judge characterized as "dozens of documents, including many motions."[12] *Medina*, ECF No. 347, at 4.

---

[11] *See also, e.g.*, *id.*, ECF Nos. 20 (Mot. to Compel Disclosure of Third-Party Funding, Representation Scope, Jurisdictional Clarifications, Def. Viera-Blanco's Residency Status, and Failure to Maintain Corporate Records), 25 (Mot. to Stay Ruling on Def.'s Mot. to Dismiss Pending Disc.), 30 (Mot. to Disqualify Diaz Reus on Conflict of Interest), 29 (Mot. for Expedited Disc. and Temporary Inj.), 31 (Mot. to Stay Proceedings Pending Resolution of Mot. to Disqualify Counsel and Pending Disc. Issues), 35 (Mot. for Leave to File a Preemptive Opp'n to Def's Mot. to Dismiss), 70 (Mot. for Evid. Hr'g, Strike of Exhibits, Inferences and Sanctions), 110 (Expedited Mot. to Strike Mot. to Stay Disc. and for Sanctions), 111 (Mot. for Leave to file Letter to the FBI Under Seal), 144 (Expedited Mot. for Evidentiary Hr'g and Mot. to Disqualify).

[12] Among them: an Expedited Post-Judgment Motion for Sanctions, Grievance Committee Referral, and Formal Ruling on Disqualification (ECF No. 172), an Expedited Post-Judgment Motion for Sanctions Due to Perjury (225), an Additional Post-Judgment Motion for Sanctions (233), an Additional Post-Judgment Motion for Additional Sanctions (235), a Motion for Sanctions Pursuant to the Court's Inherent Authority (301), an Expedited Motion for Evidentiary Hearing and Relief from Final Judgment (218), a Motion for Preliminary Injunctive Relief to Enjoin Improper Coordination Between Defense Counsel (261), and a Motion for Indicative Ruling on Pending Motions (227); *see also, e.g.*, ECF Nos. 193 (Motion to Vacate All Orders Entered Since March 19, 2025 as Void for Lack of Service and Violation of Due Process), 195 (Notice of Non-Docketing of Timely Filed Document), 200 (Emergency Motion for Expedited Ruling on Pending Post-Judgment Motions and Request for Evidentiary Hearing), 203 (another Emergency Motion for Expedited Ruling on Pending Post-Judgment Motions and Request for Evidentiary Hearing),

The court denied each of Plaintiffs' sanctions motions, finding that they had engaged in (at best) questionable litigation conduct, including that submitted sworn testimony was false. *See id.* at 32–33 (Rodriguez affidavit had "false statements under oath" recanted in cross-examination); *see also id.* at 52 (faulting Plaintiffs for "wasting judicial resources, if not vexatious multiplication of the litigation"). The court denied Defendants' requests for a pre-filing injunction yet admonished: "But let this be Plaintiffs' *final warning*: if they continue to file motions and other documents at the same pace and those motion[s] continue to be denied, the Court will give serious consideration to Defendants' next request for a pre-filing injunction." *Id.* at 55 (emphasis in original).

Plaintiffs also apparently recruited shadow litigants to amplify their baseless litigation. On December 10, 2025, Ysidra Lopenza, the corporate secretary of a group called Petroamigos de Venezuela, filed a putative *pro se* class action in the Southern District of Florida against PDVSA, the Ad Hoc Board, and CITGO, alleging wrongful termination, blacklisting, and nonpayment of severance and pension benefits, and seeking recovery of money allegedly misappropriated from a PDVSA employee pension trust. *Lopenza v. PDVSA et al.*, No. 1:25-cv-25796-DSW (S.D. Fla. Dec. 8, 2025) ("*Lopenza*"). Petroamigos had previously pursued compensation on behalf of terminated PDVSA employees through serial *pro se* plaintiff Leroy Garrett, with whom this Court is familiar. *See* Mem. Order, *Garrett v. Petroleos de Venezuela*, No. 24-cv-380 (D. Del. Dec. 17, 2025) D.I. 57 (dismissing Garrett's amended complaint). As with Plaintiffs here, Judge Stark ultimately ordered, after an endless stream of repetitive and meritless motions, that any further filings by Garrett be treated as correspondence on which no action need be taken. *See* Oral Order,

---

211 (Notice of Filing Relevant Authority and Request for Judicial Notice in Support of Post-Judgment Relief), 263–65 (Notices of Filing Supplemental Authorities), 283 (Emergency Motion to Supplement the Record for Sanctions), 287 (Emergency Reply and Cross Motion to Supplement the Record for Sanctions), 336 (Independent Verified Motion for Writ of Replevin, Motion for Temporary Restraining Order to Prevent Spoliation of Evidence and Severance of Parties).

*Crystallex Int'l Corp v. Bolivarian Republic of Venezuela*, 17-mc-151 (D. Del. Feb. 10, 2026), ECF No. 2644. Garrett's abusive filings also drew ire from the Third Circuit, which stated "he could face the imposition of filing restrictions and/or other sanctions, including monetary penalties, in this Court if he continues to bring repetitive and/or meritless challenges related to the [*Crystallex*] proceedings." Order at 2–3, *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, No. 25-3323 (3d Cir. June 5, 2026), Dkt. 38.

Lopenza's complaint bears a striking resemblance to Plaintiffs' proposed Third Amended Complaint in *Freites Delaware*, including the same unique headings.[13] Like Plaintiffs, Lopenza moved to proceed pseudonymously and seal her identity and address, repeating Plaintiffs' baseless claim that "agents associated with the Defendants leaked the true names of the anonymous plaintiffs [in the action filed in the District of Delaware] to the public" and that this was an "act of 'doxing.'" *Lopenza*, ECF No. 3, at 2–3. The court denied the motion and unsealed the case given Lopenza's publicizing her role with Petroamigos and lawsuits against PDVSA and CITGO, including on social media, and public submission of declarations with her name and address. *Id.*, ECF No. 20, at 1, 4–6; *id.*, ECF No. 10 at 6–8. Like Plaintiffs, Lopenza has repeatedly filed or attempted to file amended oppositions, requests for judicial notice, and "notices" of supplemental facts while CITGO's motion to dismiss remains pending. *See* ECF Nos. 19, 27, 30, 34, 35, 36.

**C. Plaintiffs Orchestrate Harassing Correspondence Targeting Defendants.**

Throughout these matters, Plaintiffs have been working with Petroamigos to harass the CITGO Defendants in and out of court. On October 29, 2025, Freites and two Petroamigos officials

[13] *Compare Freites Del.*, D.I. 147-1 at 2 (alleging CITGO Holding's "central role in a twenty-year transnational criminal enterprise"); *id.* ("The Gravamen—The 'Delaware Leak' and Witness Intimidation"); *id.* at 3 ("The Beachhead of Repression"); *id.* at 6 ("The Trap"), *with Lopenza*, ECF 1, at 3 ("The 'Delaware Leak' Precedent"); *id.* at 6 ("CITGO's 'Beachhead' and Transnational Repression"); *id.* ("The Trap"); *id.* ("The Theft of the 'Nest Egg'").

sent an 18-page joint demand letter to PDVSA, the Ad Hoc Board, CITGO, and others threatening to file a class action lawsuit in the Southern District of Florida on behalf of approximately 28,000 former PDVSA employees allegedly dismissed and persecuted "since the politically motivated purge of 2002–2003" absent settlement negotiations and other demands. Ex. B, (Oct. 29, 2025 Letter from Plaintiff Freites) at 1–2. Then, on November 11, 2025, Emilio Venuti also sent a "pre-litigation demand" letter to PDVSA, the Ad Hoc Board, CAPA (Consejo de Administración y Protección de Activos), and CITGO threatening the same, followed by form demand letters from 14 purported former PDVSA employees. Ex. C (Nov. 11, 2025 Letter from Emilio Venuti).

On April 8, 2026, Plaintiffs Freites, Otero, and Rodriguez wrote to Carlos Jordá, CITGO Petroleum's Chief Executive Officer. *See* Ex. D (Apr. 8, 2026 Email to Carlos Jordá). The email claimed that the Ad Hoc Board violated unidentified ethical and disclosure obligations by appointing Carlos Sardi, counsel to certain non-PDVSA-affiliated defendants in *Medina*, to the PDVH Board of Directors. *Id.* § I. The email also alleged that $261,360 in "Legal services fees" disclosed in PDVSA's FARA filings had been paid by a PDVSA consultant to entity Worldwide Strategic Consultants, which Plaintiffs claimed had "no verifiable legal existence …." *Id.* § II.

The email stated that "[r]eferrals to the DOJ National Security Division / FARA Enforcement Unit are . . . under active consideration if corrective action is not taken by April 26, 2026." *Id.* § III. Among the corrective actions Plaintiffs proposed was for CITGO and PDVH to "explore whether the underlying disputes . . . can be addressed through a negotiated resolution [in "the Delaware proceedings"] rather than continued multi-front litigation," *i.e.*, to settle with them. *Id.* § IV. Plaintiffs gave the companies "thirty (30) days" before they would exercise their "expressly reserve[d] . . . right" to make the referrals and threatened new lawsuits against the companies and certain directors and officers in Florida state court and the District of Delaware. *Id.*

On May 19, 2026, CITGO Defendants' counsel responded, rejecting Plaintiffs' accusations as "false and malicious," explaining that the supposedly nonexistent entity "is registered as a Delaware limited liability company, a fact publicly accessible on the Delaware Division of Corporations website," and rejecting Plaintiffs' reckless threats. *See* Ex. E (May 19, 2026 Letter from N. Eimer), at 1–2. Counsel warned that if Plaintiffs filed the threatened actions, the CITGO Defendants would seek sanctions. *Id.* at 2. Plaintiffs did not withdraw, instead waiving the Rule 11 safe harbor period and filing suit days later. *Id.*

### D. Plaintiffs Pursue the Threatened Instant Lawsuit and a Parallel State Action in Florida, and Defendants Serve a Rule 11 Safe Harbor Motion on Plaintiffs.

On April 24, 2026, Plaintiffs made good on their threats, filing a parallel action in Florida state court alleging the same coordinated campaign of retaliation and defamation underlying this case, and bringing twelve claims ranging from Florida civil RICO to civil theft, cyberstalking, and defamation per se. *See Rodriguez M. v. CITGO Petroleum Corp.*, No. 2026-CA-004418-O (Fla. 9th Jud. Cir.), Compl., Filing No. 246762620. Plaintiffs admit that the Florida state action arises from the same "common factual predicate" as this case. Compl. at 3–4 ¶ 0A. Plaintiffs filed an Amended Complaint on May 12, 2026. *Id.*, Filing No. 247947147.

On May 21, 2026, Plaintiffs filed this action against CITGO, PDVH, the Individual CITGO Defendants, and eight other defendants in a winding, 117-page complaint asserting fourteen causes of action. As in the Freites Delaware TAC and in the Florida actions, Plaintiffs allege that the defendants participated in a broad RICO enterprise that used corporate transactions, media activity, and alleged disclosure of sealed identities to retaliate against Plaintiffs for pursuing the *Freites Delaware* litigation and to interfere with their economic and reputational interests. D.I. 1. On June 17, 2026, the CITGO Defendants filed a joint motion to dismiss the Complaint, which remains pending. *See* D.I. 17. On July 24, 2026, counsel for CITGO Defendants served this motion on

Plaintiffs, demanding that they withdraw their frivolous and improper Complaint. *See* Bender Decl. ¶ 9; Fed. R. Civ. P. 5, 11(c)(2). On August 14, 2026, Plaintiffs responded by letter transmitted via email and expressly declined to withdraw the Complaint. *See* Bender Decl. ¶¶ 10–11.

## LEGAL STANDARD

Federal Rule of Civil Procedure 11 serves "to deter baseless filings in district court and thus . . . streamline the administration and procedure of federal courts." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990). In filing a complaint, an "attorney or unrepresented party" certifies that: (1) the pleading "is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation"; (2) "the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument" for changing existing law; and (3) "the factual contentions have evidentiary support, or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(1)–(3). The rule applies to represented and pro se parties alike. *See id.*; *Toll v. Am. Airlines, Inc.*, 166 F. App'x 633, 637 (3d Cir. 2006).

Rule 11 imposes an objective standard: whether, at the time of filing, the claims were "well-grounded in law and fact." *Ford Motor Co. v. Summit Motor Prods., Inc.*, 930 F.2d 277, 289 (3d Cir. 1991). Litigants may not rely on a "pure heart and empty head," but must "stop, think, investigate and research" before filing. *Gaiardo v. Ethyl Corp.*, 835 F.2d 479, 482 (3d Cir. 1987) (citation modified). Sanctions are appropriate where "a claim or motion is patently unmeritorious or frivolous," and no finding of bad faith is required. *Doering v. Union Cnty. Bd. of Chosen Freeholders*, 857 F.2d 191, 194 (3d Cir. 1988).

"The All Writs Act, 28 U.S.C. § 1651(a) permits district courts to issue filing injunctions to preclude abusive, groundless and vexatious litigation." *Danihel v. Off. of President*, 640 F. App'x 185, 190 (3d Cir. 2016) (citation modified). "If a district court determines that a litigant's past and

current lawsuits constitute a continuous pattern of 'groundless and vexatious litigation,' the All Writs Act permits the court, under 'exigent circumstances,' to grant an Order enjoining the litigant from filing further actions without permission of the Court." *Emrit v. Univ. of Va. Darden Sch. of Bus.*, 2024 WL 1533953, at *3 (D. Del. Apr. 9, 2024) (quoting *In re Oliver*, 682 F.2d 443, 445–46 (3d Cir. 1982)); *see In re Packer Ave. Assocs.*, 884 F.2d 745, 747 (3d Cir. 1989).

Additionally, "[f]ederal courts may exercise their inherent power to impose sanctions on both litigants and attorneys to regulate their docket, to promote judicial efficiency and to deter abuse of judicial process." *In re Stimwave Techs. Inc. Perryman v. Province, LLC*, 2024 WL 4626221, at *3 (D. Del. Oct. 30, 2024) (citation modified). The Third Circuit has held that "district courts are expressly empowered to address the vexatious actions of *pro se* litigants, even if such vexatious conduct does not fall squarely under a specific statute or federal rule, through exercise of their inherent powers." *Id.* (citing *Inst. for Motivational Living, Inc. v. Doulos Inst. for Strategic Consulting, Inc.*, 110 F. App'x 283, 286-287 (3d Cir. 2004)).

## ARGUMENT

The procedural record details Plaintiffs' extensive history of vexatious litigation, and their Complaint in this action perpetuates that pattern. Without court intervention, Plaintiffs will continue to multiply litigation repeating their discredited allegations. These circumstances warrant sanctions in the form of attorney's fees under Rule 11 (Part I), as well as a pre-filing injunction under the All Writs Act and the Court's inherent powers (Part II).[14]

---

[14] The CITGO Defendants believe that the requested relief may serve to deter Plaintiffs' sanctionable conduct, and therefore are not seeking relief at this time with respect to the resource-draining conduct undertaken by Plaintiffs in the other cases discussed *supra* at §§ A–B.

## I. The Court Should Issue Rule 11 Sanctions to Check and Deter Plaintiffs from Their Improper Purpose and Baseless Claims.

Plaintiffs have violated Rule 11(b) in three respects: (1) the Complaint was filed for improper purposes; (2) its legal contentions are not warranted by existing law; and (3) its factual allegations lack evidentiary support. The Court should therefore order payment of the CITGO Defendants' fees and expenses associated with the motion to dismiss, any reply, and this Motion.

### A. The Complaint Was Filed for Improper Purposes.

In assessing whether a pleading was filed for an improper purpose under Rule 11(b)(1), a court may consider "the degree of willfulness of the violation" and whether the filing "was used to harass or punish the non-offending party." *Doering*, 857 F.2d at 197 n.6. This Court has issued, and the Third Circuit has affirmed, sanctions where plaintiffs "filed the lawsuit in bad faith and for the purpose of harassment," including where the plaintiff "resorted to federal court in an impermissible attempt to collaterally attack validly obtained" prior rulings. *See Egnotovich v. Greenfield Twp. Sewer Auth.*, 304 F. App'x 94, 98 (3d Cir. 2008); *In re Hussain,* 532 F. App'x 196, 197–98 (3d Cir. 2013) (affirming Rule 11 injunction given "vexatious legal tactics in bad faith").

The procedural record here evinces Plaintiffs' purpose of harassment, using litigation to garner publicity rather than to vindicate claims, and needlessly increasing the cost of litigation that never should have been filed. Indeed, Plaintiffs and their proxies have now filed six separate actions in this District, the Southern District of Florida, and Florida state court—all arising from the same repeatedly discredited allegations. Three of those actions have already been dismissed,[15] and Plaintiffs have never progressed beyond the pleadings stage, let alone obtained relief. Instead, courts have repeatedly admonished Plaintiffs for bringing largely "irrelevant" allegations, making

---

[15] *Viero-Blanca,* 2025 WL 4741662; *Medina,* 2025 WL 1425491; and *Freites Del.,* 2025 WL 3654006.

impermissible shotgun pleadings, "def[ying] the Court's rules and Orders," engaging in fraud on the court, and "wasting judicial resources, if not vexatious multiplication of the litigation." *Freites Del.*, 2025 WL 3654006, at *5; *Viera-Blanco*, 2025 WL 4741662, at *4; *Medina*, ECF No. 347, at 52. Plaintiffs' extrajudicial conduct confirms their strategy: they have promoted the litigation in the press and on social media rather than diligently pursue it in the courtroom.

This lawsuit is likewise improper: it arises out of Plaintiffs' threats to initiate lawsuits, including this one, as part of their touted "multi-front litigation" absent settlement discussions. *Supra* § C. The Third Circuit has made clear that the filing of complaints for the purpose of forcing settlement or otherwise harassing defendants with incessant litigation is improper under Rule 11(b)(1). *See Scott v. Vantage Corp.*, 64 F.4th 462, 473 (3d Cir. 2023) (complaints filed for improper purposes where investors stated the purpose was to force settlement); *Sofaly v. Portfolio Recovery Assocs., LLC*, 155 F.4th 289, 293–94 (3d Cir. 2025) (improper purpose where complaints rested on "misrepresentations and half-truths to harass [defendant], increase its litigation costs, and gin up attorneys' fees"). Further, making threats to coerce settlement and filing suit when the threat fails—as Plaintiffs have done here, *supra* § C—is prohibited under Rule 11. *See Egnotovich*, 304 F. App'x at 98 (awarding Rule 11 sanctions for lawsuit filed in bad faith and for harassment); *see also Gambrell v. Hess*, 777 F. Supp. 375, 384–85 (D.N.J. 1991) (awarding Rule 11 sanctions where plaintiff's repeated filings were designed to harass defendants).[16]

[16] *See also, e.g.*, *White v. Gen. Motors Corp.*, 126 F.R.D. 563, 567 (D. Kan. 1989), *aff'd in part, vacated in part*, 908 F.2d 675, 680 (10th Cir. 1990) ("[P]laintiffs' threats to publicize [] baseless claims and their subsequent filing of the lawsuit were improper and in violation of Rule 11"); *Lawrence v. Cherry Creek Sch. Dist. No. 5*, 2025 WL 4356721, at *6 (D. Colo. Aug. 25, 2025), *report and recommendation adopted*, 2025 WL 4356719 (D. Colo. Oct. 9, 2025) (restricting filings given plaintiff's efforts "to extort a quick settlement").

**B. Plaintiffs' Legal Contentions Are Not Warranted by Existing Law.**

Sanctions are appropriate under Rule 11(b)(2) where a litigant fails to "make a reasonable inquiry into the factual and legal legitimacy of the pleading." *Vehicle Operation Techs. LLC v. Am. Honda Motor Co. Inc.*, 67 F. Supp. 3d 637, 649 (D. Del. 2014). Plaintiffs' failure to conduct any such inquiry is obvious given the repeated dismissal of the same claims in numerous other actions.

The Complaint asserts fourteen causes of action against the CITGO Defendants, along with eight other defendants, including civil RICO claims under 18 U.S.C. §§ 1962(c)–(d), civil rights claims under 42 U.S.C. §§ 1985(2)–(3), and claims under the Torture Victim Protection Act. Compl. at 1–2. These same claims, based on the same allegations, have already been dismissed in other suits: Plaintiffs asserted RICO, wire-fraud, and § 1985 civil-rights-conspiracy claims premised on the alleged "Delaware Leak" and retaliation narrative in the Florida federal actions. *See* Compl. at 1–2; *Viera-Blanco*, D.I. 1 at 12–18; *Medina*, ECF No. 1 ¶¶ 69–325. Both actions were dismissed for failure to state a claim, more recently with prejudice and with the recognition that Plaintiffs "have repeatedly filed shotgun pleadings with deficient claims based on the same facts." *Medina*, 2025 WL 1425491, at *19; *see also Freites Del.*, 2025 WL 3654006, at *1, *5 (dismissing complaint and noting that "further amendment *appears to be futile*, especially since the Operative Complaint already includes over 300 paragraphs, most of which are irrelevant to any claims that could possibly be asserted against CITGO" (emphasis added)).

Despite this history, the instant Complaint alleges the same "Sanctions-Evasion and Witness-Suppression Enterprise," relies on the same "Delaware Leak," and pursues the same defamation theory this Court already found unsubstantiated. *See* Compl. at 1, 91, ¶¶ 1, 25–26; D.I. 17 at 7. Plaintiffs just added in new defendants—including Messrs. Jordá, Wilhelm, and Vera—and recycled legal theories.

Rule 11 required Plaintiffs, at a minimum, to consider whether courts have rejected the theories they wish to assert. *See, e.g.*, *Vehicle Operation Techs.*, 67 F. Supp. 3d at 651–52 (imposing sanctions where plaintiffs "turned a blind eye" to evidence that would foreclose their claims); *Loving v. Pirelli Cable Corp.*, 11 F. Supp. 2d 480, 493 (D. Del. 1998), *aff'd*, 178 F.3d 1279 (3d Cir. 1999) (finding no reasonable inquiry under Rule 11 where "an hour or two of research" would have foreclosed plaintiff's legal theories). Plaintiffs did not. No objectively reasonable litigant, aware of multiple prior adverse rulings, could conclude that filing the same baseless claims and theories was "warranted by existing law." Fed. R. Civ. P. 11(b)(2). As the Third Circuit has recognized, and as applies here, a litigant who "ignore[s] the outcome of [previous] actions, and the reasons why they lost," and instead files an action "in an impermissible attempt to collaterally attack validly obtained" prior rulings, violates Rule 11. *Egnotovich*, 304 F. App'x at 98; *see Martin v. Farmers First Bank*, 151 F.R.D. 44, 47–48 (E.D. Pa. 1993) (sanctioning pro se plaintiffs who modeled their complaint on a dismissed predecessor).

**C. Plaintiffs' Factual Allegations Lack Evidentiary Support.**

Rule 11(b)(3) requires that "the factual contentions have evidentiary support." Fed. R. Civ. P. 11(b)(3). Given Plaintiffs' history, it is unsurprising that the Complaint's central factual contentions are demonstrably false and wholly unsupported.

Plaintiffs allege that the CITGO Defendants orchestrated the "Delaware Leak" of Plaintiffs' sealed identities to retaliate against them—a central allegation of their Complaint. Compl. at 91 ¶ 26. That theory has already been investigated and rejected. In *Freites Delaware*, Plaintiffs submitted at least 31 filings pressing this accusation yet presented no evidence to substantiate it. *See supra* n.7. The court denied all of Plaintiffs' sanctions motions, holding that Plaintiffs failed to establish that Defendants violated the Court's sealing order. *Freites Del.*, D.I. 128, at 3. The Complaint nevertheless rests on this debunked premise, Compl. at 27 ¶ 17A, without any new

evidence and, as to the "Delaware Leak," in the face of this Court's prior ruling. That is the opposite of the "evidentiary support" Rule 11 requires. In such circumstances, courts award attorneys' fees against the offending party, including pro se parties, as is appropriate here. *See, e.g.*, *Toll*, 166 F. App'x at 637; *Doering*, 857 F.2d at 197.

## II. The Court Should Issue a Pre-Filing Injunction Pursuant to the All Writs Act and Its Inherent Authority to Preclude Plaintiffs from Further Vexatious Conduct.

Since receiving the Southern District of Florida's "*final warning*" that it would give "serious consideration to Defendants' next request for a pre-filing injunction," Plaintiffs have threatened and filed two more frivolous lawsuits with the same spurious allegations. *Medina*, ECF No. 347 at 55 (emphasis in original). To prevent further abuse, the Court should impose a narrow, pre-filing injunction under the All Writs Act and its inherent authority requiring Plaintiffs to obtain leave before filing any further lawsuits in the federal courts against the CITGO Defendants relating to the relevant proceedings.

### A. The Court Should Issue a Pre-Filing Injunction under the All Writs Act.

"A court may impose an injunctive order on a litigant if: (1) the litigant has been continuously abusing the judicial process; (2) the court provides notice and an opportunity to respond; and (3) the scope of the injunction is narrowly tailored to fit the particular circumstances of the case before the District Court." *Shaikh v. State of N.J.-Dep't of Banking & Ins.*, 2026 WL 172963, at *2 (3d Cir. Jan. 22, 2026) (citation modified). The requirements are satisfied here.

First, Plaintiffs have abused, and absent relief will continue to abuse, the judicial process. Plaintiffs have proposed or filed 12 complaints—all relating to the same baseless allegations—across six different cases in federal and state courts in three states. Plaintiffs' complaints have been repeatedly dismissed, failing even to progress beyond the complaint stage, and they have received mounting reprimands from numerous courts. *Supra* §§ A–B. Even so, Plaintiffs have made clear

that they will continue expanding their "multi-front" litigation strategy to keep themselves in the Venezuelan press and extract settlement on baseless claims. See Exs. D; B, at 1–2; C.

Second, the CITGO Defendants' requested injunction is narrowly tailored to the circumstances. The requested order would require Plaintiffs to obtain leave before filing—directly, through, or in collaboration with proxies or associates—any further federal lawsuit against the CITGO Defendants relating to or arising out of the cases already filed, including the operative facts alleged in those complaints. That relief would strike at the heart of Plaintiffs' strategy of opening multiple fronts of litigation without indiscriminately barring them from court as Plaintiffs could still make filings in this case (until properly dismissed with prejudice). An injunction covering all federal district court filings is consistent with analogous orders from courts in the Third Circuit.[17] *See, e.g.*, *Danihel*, 640 F. App'x at 188–90 (affirming an order enjoining a pro se litigant from "commencing any new civil matters against the named Defendants that relate, or could relate, to the subject matter of [that] action without leave of Court" where the litigant had engaged in a "relentless barrage of meritless filings").

Third, Plaintiffs had notice, from the Southern District of Florida and from counsel's earlier correspondence, that a pre-filing injunction or sanctions would likely result if they furthered their vexatious filings or initiated this litigation. *See Medina*, ECF No. 347 at 55–56; Ex. E, at 2. Plaintiffs pursued this litigation anyway. Plaintiffs also received notice through the Rule 11 safe harbor process, *supra* § D, and declined multiple chances to withdraw their Complaint.

---

[17] The CITGO Defendants may separately seek a pre-filing injunction for repeated and frivolous filings within this case, along with other sanctions including under Rule 11 and 28 U.S.C. § 1927, if Plaintiffs engage in such conduct, as they have done repeatedly elsewhere. *See supra* §§ A–B; *Kamdem-Ouaffo v. Fein Such Kahn & Sheppard, P.C.*, 2024 WL 5244699, at *3 (3d Cir. Dec. 30, 2024) (pre-filing injunction following "excessive" and "inordinate" filings).

In these circumstances, courts have relied on the All Writs Act to support pre-suit injunctive relief. *See, e.g.*, *Arunchalam v. Int'l Bus. Machs. Corp.*, 2022 WL 3443169, at *3 (D. Del. June 23, 2022) (sua sponte enjoining serial litigant from filing, without leave, any complaint relating to same set of facts); *Davis v. Texas*, 2015 WL 4477701, at *3 (D. Del. July 22, 2015) (imposing sanction under the All Writs Act preventing pro se plaintiff from further filings in action because she "continues, unabated, to reiterate her misguided theories, despite court rulings to the contrary"); *Thomas v. Conn. Gen. Life Ins. Co.*, 2003 WL 22953189, at *1–3 (D. Del. Dec. 12, 2003) (enjoining pro se suit in federal court absent leave because, "when a litigant uses the limited resources of the judicial system as a conduit for a campaign of harassment, she must be stopped").

**B. The Court May Issue a Pre-Filing Injunction under Its Inherent Authority.**

This is also a textbook case for the exercise of this Court's inherent authority. Federal courts possess inherent power to manage their dockets, protect the integrity of judicial proceedings, and prevent court filings from being used as instruments of harassment. *In re Stimwave Techs., Inc.*, 2024 WL 4626221, at *3. Courts in this District have invoked that authority to enjoin exactly this sort of vexatious litigation. *See, e.g.*, *Inst. for Motivational Living, Inc.*, 110 F. App'x at 287 (affirming inherent-authority sanctions against pro se litigant who defied court orders and unreasonably and vexatiously multiplied the proceedings); *see also In re Intel Corp. Microprocessor Antitrust Litig.*, 562 F. Supp. 2d 606, 608 (D. Del. 2008) (imposing sanctions for "willfully vexatious" conduct that wasted judicial resources). This Court should do the same.

## CONCLUSION

For the reasons stated above, the Court should sanction Plaintiffs before this Court pursuant to Federal Rule of Civil Procedure 11 and grant Defendants' motion for a pre-filing injunction pursuant to the All Writs Act and its inherent authority.

Dated: August 18, 2026

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Alexandra M. Cumings*

Alexandra M. Cumings (#6146)
Phillip B. Reytan (#7255)
Jonathan H. Lloyd (7618)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
acumings@morrisnichols.com
preytan@morrisnichols.com
jlloyd@morrisnichols.com

*Attorneys for Defendants CITGO Petroleum Corporation, PDV Holding, Inc., Carlos Jordá, Samuel Wilhelm, and Fernando Vera*

OF COUNSEL:

WILLKIE FARR & GALLAGHER LLP
Michael J. Gottlieb
2049 Century Park East
Los Angeles, California 90067
(310) 855-3000
mgottlieb@willkie.com

Samuel G. Hall
Kristin E. Bender
1875 K Street NW
Washington, DC 20006
(202) 303-1000
shall@willkie.com
kbender@willkie.com

*Attorneys for Defendants Carlos Jordá, Samuel Wilhelm, and Fernando Vera*

EIMER STAHL LLP
Nathan P. Eimer
Daniel D. Birk
224 South Michigan Avenue
Suite 1100
Chicago, IL 60604
Tel: (312) 660-7600
neimer@eimerstahl.com
dbirk@eimerstahl.com

Jonathan Breit
1999 South Bascom Avenue
Suite 1025,
Campbell, CA 95008
Tel: (408) 889-1670
jbreit@eimerstahl.com

*Attorneys for Defendants CITGO Petroleum Corporation and PDV Holding, Inc.*

**CERTIFICATE OF SERVICE**

I, Alexandra M. Cumings, hereby certify that on August 18, 2026, I electronically filed the CITGO Defendants' Memorandum of Points and Authorities in Support of Motion for Sanctions with the Clerk of the Court using CM/ECF, which sent notification of such filings to all the registered participants.

I further certify that on August 18, 2026, a copy of the foregoing Memorandum of Points and Authorities in Support of Motion for Sanctions was caused to be served upon the following by UPS mailing and email:

Jorge Alejandro Rodriquez Moreno
Michael Enrique Otero Castillo
Angel Moreno
Pedro O. Mora
Jesus A.M. Carrillo
Eichholzstrasse 2
Steinhausen 6312
Zug, Switzerland

Ivan R. Freites C.
Calle 20
Casa Numero 12
Urb. Santa María
Coro
Estado Falcón, 4101
Venezuela

freites.usdcsf.1.25.cv.20465.bb@gmail.com

Dated: August 18, 2026

*/s/ Alexandra M. Cumings*
Alexandra M. Cumings (#6146)